ACCEPTED
03-15-00121-CR
5475449
THIRD COURT OF APPEALS
AUSTIN, TEXAS
5/29/2015 3:22:17 PM
JEFFREY D. KYLE
CLERK

NO. 03-15-00121-CR

IN THE COURT OF APPEALS
FOR THE THIRD JUDICIAL DISTRICT OF TEXAS
AT AUSTIN, TEXAS

FILED IN
3rd COURT OF APPEALS
AUSTIN, TEXAS
5/29/2015 3:22:17 PM
JEFFREY D. KYLE
Clerk

TOM BENSON, Appellant

v.

THE STATE OF TEXAS, Appellee

Appealed from the County Court at Law No. 7,
Travis County, Texas, Cause No. C-1-CV-14-002294

**APPELLEE'S BRIEF**

Tim Labadie
Assistant Travis County Attorney
State Bar No. 11784853
P.O. Box 1748
Austin, Texas 78767
(512) 854-5864
(512) 854-9316 (fax)
tim.labadie@traviscountytx.gov

Attorney for the State of Texas, Appellee

**ORAL ARGUMENT REQUESTED**

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................i

INDEX OF AUTHORITIES.......................................................................ii

I.     STATEMENT REGARDING ORAL ARGUMENT ................................1

II.    STATEMENT OF FACTS.....................................................................2

III.   SUMMARY OF THE ARGUMENT ..........................................................4

IV.   ARGUMENT .........................................................................................5

     A. Standard of Review and the Applicable Law .....................................5

     B.  Tom Benson did not present any evidence that Brian
        Whipple returned to Travis County after his failure to appear .......6

IV.   PRAYER .............................................................................................14

CERTIFICATE OF SERVICE .................................................................15

# INDEX OF AUTHORITIES

Page

## CASES

*Armadillo Bail Bonds. v State,*
  802 S.W.2d 237 (Tex. Crim. App. 1990.......................................................8

*Burns v. State,*
  861 S.W.2d 878 (Tex. Crim. App. 1993) ...................................................5, 6

*Ex parte Reis,*
  117 Tex. Crim. 123, 33 S.W. 2d 435 (1930) ................................................9

*Ex parte Vasquez,*
  558 S.W.2d 477 (Tex. Crim. App. 1977) .....................................................9

*Gramercy Insurance Co.  v State,*
  834 S.W.2d 379 (Tex. App.-San Antonio 1992, no pet.)...................10, 13

*Grimes County Bail Board v. Ellen,*
  267 S.W.3d 310 (Tex. App.-Houston [14th Dist.] 2008, pet. denied.) .10

*KPMG Peat Marwick  v. Harrison County Housing Fin. Corp.,*
  988 S.W.2d 746 (Tex. 1999)........................................................................6

*Kubosh v. State,*
  177 S.W.3d 156 (Tex. App.-Houston [1st Dist.] 2005, pet. ref'd)............5

*Lyles v State,*
  850 S.W.2d 497 (Tex. Crim. App. 1993) .....................................................8

*McKenna v State,*
  247 S.W.3d 716 (Tex. Crim. App. 2008) ...................................................13

*Mendez v. State,*
    No. 03-12-00200-CV, 2013 Tex. App. LEXIS 13278, 2013 WL 5914142,
    (Tex. App. –Austin Oct. 25, 2013, no pet.)(mem.op) ..............................5

*Nixon v. Mr. Property Management, Co.,*
    690 S.W.2d 546 (Tex. 1985)..............................................................5

*Safety National Casualty Corp. v State,*
    273 S.W.3d 157 (Tex. Crim. App. 2008) ..........................................7, 8, 9

*State v Matyastik,*
    811 S.W.2d 102 (Tex. Crim. App. 1991) ..........................................8

## STATUTES, RULES AND OTHER

TEX. CODE CRIM. PROC. art. 17.01 ..........................................................9

TEX. CODE CRIM. PROC. art. 17.02 ..........................................................9

TEX. CODE CRIM. PROC. art. 17.08 ..........................................................9

TEX. CODE CRIM. PROC. art. 22.10 ..........................................................5

TEX. CODE CRIM. PROC. art. 22.13 .......................................................8, 11

TEX. CODE CRIM. PROC. art. 22.13(a)(1).................................................11

TEX. CODE CRIM. PROC. art. 22.13(a)(2).................................................11

TEX. CODE CRIM. PROC. art. 22.13(a)(3).................................................11

TEX. CODE CRIM. PROC. art. 22.13(a)(4).................................................11

TEX. CODE CRIM. PROC. art. 22.13(a)(5).................................8, 9, 10, 13

TEX. CODE CRIM. PROC. art. 22.13(a)(5)(A)...............................3, 4, 6, 7

iii

TEX. CODE CRIM. PROC. art. 22.13(b) ................................................4, 7, 9, 10, 11

TEX. CODE CRIM. PROC. art. 22.16 ...............................................................8, 12

TEX. CODE CRIM. PROC. art. 22.16(a) ................................................................11

TEX. CODE CRIM. PROC. art. 22.16(b) ................................................................12

TEX. CODE CRIM. PROC. art. 22.17 .................................................................12, 13

TEX. CODE CRIM. PROC. art. 22.17(a) ................................................................12

TEX. CODE CRIM. PROC. art. 44.42 ...................................................................5

TEX. CODE CRIM. PROC. art. 44.44 ...................................................................5

TEX. R. CIV. P. 166a(c) .................................................................................5

SENATE COMM. ON CRIMINAL JURISPRUDENCE, BILL ANALYSIS,
Tex. S.B. 1336, 78th Leg., R.S. (2003) .................................................................9

NO. 03-15-00121-CR

IN THE COURT OF APPEALS
FOR THE THIRD JUDICIAL DISTRICT OF TEXAS
AT AUSTIN, TEXAS

_____

TOM BENSON, Appellant

v.

THE STATE OF TEXAS, Appellee

_____

Appealed from the County Court at Law No. 7,
Travis County, Texas, Cause No. C-1-CV-14-002294

_____

**APPELLEE'S BRIEF**

_____

TO THE HONORABLE THIRD COURT OF APPEALS:

The State of Texas, Appellee, files this brief in support of the trial

court's judgment and would respectfully show the Court the following.

## I.    STATEMENT REGARDING ORAL ARGUMENT

The State of Texas requests oral argument because the issue

presented by this case (i.e., what are the elements of a surety's defense

based on the incarceration of the principal) is extremely important to bond forfeiture jurisprudence in Texas and has yet to be directly considered by any Texas court. The courts are not frequently called upon to address issues considering bond forfeitures because the State does not have the right to appeal adverse judgments in bond forfeiture suits. At oral argument, the Court would be able to draw upon the experience and knowledge of both the State's attorney and the bondsman in order to better understand the inner workings of bail bonds, the law applicable to bail bonds, and the impact the Court's decision will have on this integral part of our criminal justice system.

## II. STATEMENT OF FACTS

On August 29, 2013, Brian Whipple, as Principal, and Tom Benson, as Surety, executed an appearance bond payable to the State of Texas in the amount of $5,000.00.[1] This bond was conditioned on Mr. Whipple's personal appearance on a misdemeanor charge pending in Travis County.[2] On February 14, 2014, Brian Whipple failed to appear when this case was

---

[1] CR 4,5.
[2] CR 4,5.

called for trial.[3] Thereafter, Mr. Whipple's name was called distinctly at the door of the courthouse and he was given a reasonable time after which to appear.[4] Brian Whipple, however, failed to appear and the bail bond was forfeited.[5]

In answering the bond forfeiture suit, Tom Benson did not deny the making and the forfeiture of the bond. Instead, he asserted that Mr. Whipple was incarcerated in Las Vegas, Nevada within 180 days of his failure to appear in Travis County, claiming that this provided him a defense to liability under article 22.13(a)(5)(A) of the Texas Code of Criminal Procedure.[6] Mr. Benson did not allege that Mr. Whipple was ever returned to Travis County.

On December 4, 2014, Plaintiff's Motion for Summary Judgment was filed and set for hearing on January 21, 2015.[7] In response, Mr. Benson asked the court to deny the motion, claiming he had raised a fact issue on each element of his defense based on article 22.13(a)(5)(A) of the Texas Code of Criminal Procedure. Mr. Benson asserted that these elements are

---

[3]     CR 4.
[4]     CR 4.
[5]     CR 4.
[6]     CR 14.
[7]     CR 9-13.

incarceration of the principal within any jurisdiction in the United States within 180 days from the failure to appear on a misdemeanor charge.[8]

The trial court granted the State's motion and rendered judgment against Brian Whipple and Tom Benson for the full amount of the bond ($5,000.00) plus court costs.[9]

## III.   SUMMARY OF THE ARGUMENT

The elements of the exoneration defense under article 22.13(a)(5)(A) are not, as Tom Benson asserts, simply that a person charged with a misdemeanor is incarcerated in any jurisdiction in the United States within 180 days after the principal's failure to appear. Another element, found in article 22.13(b), is that the principal must return to the county in which the misdemeanor case is pending. Since Mr. Benson did not provide the trial court with any evidence that Mr. Whipple returned to Travis County after his failure to appear, the trial court was right to grant summary judgment for the State.

---

[8]     CR 16-23.
[9]     CR 24-25.

## IV. ARGUMENT

### A. Standard of Review and the Applicable Law

Bond forfeiture suits, while criminal in nature, are subject to the rules of civil procedure and the rules of civil appellate procedure. Tex. Code Crim. Proc. articles 22.10, 44.42 and 44.44. *Kubosh v. State*, 177 S.W.3d 156, 160 (Tex. App.–Houston [1st Dist.] 2005, pet. ref'd); *Mendez v. State*, No. 03-12-00200-CV, 2013 Tex. App. LEXIS 13278, *3, 2013 WL 5914142, *2 (Tex. App.–Austin Oct. 25, 2013, no pet.) (mem. op.). The standard for reviewing a traditional summary judgment, which is what the State obtained in this case, is whether the movant carried its burden of showing there is no genuine issue of material fact and judgment should be granted as a matter of law. Tex. R. Civ. P. 166a(c); *Nixon v. Mr. Property Management, Co.*, 690 S.W.2d 546, 548-49 (Tex. 1985).

In order to be entitled to a forfeiture of a bail bond, the State has the burden to show that (1) a valid bond was executed by the principal and surety; (2) the principal's name was distinctly called at the courthouse door; and (3) the principal failed to appear within a reasonable time of that call. *Burns v. State*, 861 S.W.2d 878, 888 (Tex. Crim. App. 1993). The bond establishes the first element of the State's bond forfeiture suit and the

Judgment Nisi is prima facie proof of the second and third elements. *Burns v. State*, 861 S.W.2d at 887. Attached to the State's motion were certified copies of the bond and the Judgment Nisi. Thus, the State established as a matter of law that there are no genuine issues of material fact as to any of the elements of the State's cause of action, as Mr. Benson admits.[10]

Thus, to avoid a summary judgment, Mr. Benson was required to present summary judgment evidence sufficient to raise an issue of fact on each element of his defense. *KPMG Peat Marwick v. Harrison County Housing Fin. Corp.*, 988 S.W.2d 746, 750 (Tex. 1999).

> **B.     Tom Benson did not present any evidence that Brian Whipple returned to Travis County after his failure to appear**

To determine whether Tom Benson met his burden to defeat the State's summary judgment, the Court must first determine what are the elements of his defense. Tom Benson pleaded a defense based on article 22.13(a)(5)(A) of the Texas Code of Criminal Procedure, which provides:

> (a) The following causes, and no other, will exonerate the defendant and his sureties, if any, from liability upon the forfeiture taken:
>
> .     .     .
>
>> 5. The incarceration of the principal in any jurisdiction in the United States:

---

[10]     Appellant's Brief at p. 5.

(A) in the case of a misdemeanor, at the time of or not later than the 180th day after the date of the principal's failure to appear in court[.]

Tex. Code Crim. Proc. article 22.13(a)(5)(A).

Mr. Benson argues that the elements of this defense are that Mr. Whipple was charged with a misdemeanor and that he was incarcerated in any jurisdiction in the United States within 180 days from his failure to appear in court. However, there is another element to this defense: the principal must be returned to the county of prosecution. This element is found not in article 22.13(a)(5)(A), but in article 22.13(b), which provides:

> (b) **A surety exonerated under Subdivision 5, Subsection (a), remains obligated to pay** costs of court, **any reasonable and necessary costs incurred by a county to secure the return of the principal**, and interest accrued on the bond amount from the date of the judgment nisi to the date of the principal's incarceration.

Tex. Code Crim. Proc. article 22.13(b) (emphasis added). When read together, these provisions limit a surety's liability if the principle, who is charged with a misdemeanor, is incarcerated within 180 days of his failure to appear and is returned to the county of prosecution.

While no court has directly delineated the elements of this defense, the Texas Court of Criminal Appeals has provided guidance on this issue in *Safety National Casualty Corp. v. State*, 273 S.W.3d 157 (Tex. Crim. App.

2008). The main issue in *Safety National* was whether article 22.13(a)(5) violates the separation of powers provision in the Texas Constitution.[11] However, in its attempt to convince the Court that article 22.13(a)(5) can work an unjust result, the State intimated "that Article 22.13(a)(5) is triggered by the defendant's incarceration, whether or not he is returned, and the he will be exonerated without ever appearing in court[.]"*Safety National Casualty Corp. v. State*, 273 S.W.3d at 163. The Court found this reading of article 22.13(a)(5) "simply incorrect," because article 22.13(a)(5) is limited to those situations where the principal's return to the county of prosecution is certain. *Id.*

---

[11] The State argued that article 22.13.(a)(5) is unconstitutional because it effectively prohibits the entry of a judgment for 180 days (or 270 days for a felony). To fully understand and appreciate the issue facing the Court, one must know a bit of the history of articles 22.13 and 22.16. Prior to June 2003, article 22.13 listed four situations, not including incarceration, in which the principal and the surety would be completely exonerated from liability for a bond forfeiture. Article 22.16, on the other hand, provided five situations, including the principal's incarceration, where the surety's liability would be limited to court costs, return costs, and interest on the bond. Article 22.16 also placed time constraints on a court entering judgment in the bond forfeiture suit (9 months for a misdemeanor, 18 months for a felony). In Armadillo Bail Bonds v. State 802 S.W.2d 237 (Tex. Crim. App. 1990), State v. Matyastik, 811 S.W.2d 102 (Tex. Crim. App. 1991), and Lyles v. State, 850 S.W.2d 497 (Tex. Crim. App. 1993), the Court held that these time constraints violated the separation of powers provision of the Texas Constitution. Even so, the Legislature did not attempt to fix the problem until 2003, at which time it removed the time constraints from article 22.16 and moved to article 22.13 the limitation on liability because of the principal's incarceration. In this context, the State in *Safety National* argued that the 180/270 day provisions of article 22.13 were similar to the 9/18 month provisions that had been ruled unconstitutional. The Court disagreed finding no requirement in article 22.13 that the court wait any amount of time before taking a judgment. *Safety National Cas. Corp. v. State*, 273 S.W.3d at 164.

Also instructive to the determination of the elements of this defense are the Legislature's reasons for adding subsections (a)(5) and (b) to article 22.13 in 2003:

> . . . *the state is more interested in having the defendant appear* than in receiving forfeited bond money. Setting time limits on when bonds would be forfeited would result in *more defendants ultimately appearing in court* because bondsmen would have a *financial incentive to produce the principal* many weeks after he or she originally failed to appear in court . . . [and] would give bondsmen consistency for principals who were incarcerated, while allowing a judge to adjust the time period as needed in a particular case. SENATE COMM. ON CRIMINAL JURISPRUDENCE, BILL ANALYSIS, Tex. S.B. 1336, 78th Leg., R.S. (2003).

Quoted in *Safety National Casualty Corp. v. State*, 273 S.W.3d at 162-63 (emphasis added).

In these few words, the Legislature encapsulates the role of article 22.13(a)(5) in fulfilling the primary purpose of a bail bond, which is to ensure that the principal will appear and answer the charges brought against him or her.[12] This purpose is not abrogated by the principal's

---

[12]  Ex parte Vasquez, 558 S.W.2d 477, 479 (Tex. Crim. App. 1977); Ex parte Reis, 117 Tex. Crim. 123, 127, 33 S.W.2d 435, 437 (1930). *See also,* Tex. Code Crim. Proc. art. 17.01 (bail is defined as "the security given by the accused that he will appear and answer before the proper court the accusation brought against him."); *id.* art. 17.02 ("A 'bail bond' is a written undertaking [by the principal and surety] for the appearance of the principal . . . to answer a criminal accusation."); *id.* art. 17.08 (a bail bond must contain a

failure to appear; the State would still rather have the principal appear than collect on a forfeited bond, as the Legislature noted above.[13] Indeed, the presence of a bail bond encourages the surety's participation in the return of the principal. *Grimes County Bail Bond Board v. Ellen*, 267 S.W.3d 310, 317 (Tex. App.–Houston [14th Dist.] 2008, pet. denied).

The principal's return is, of course, important to the State so that the criminal case against the principal can be resolved. To help fulfill this purpose, the Legislature, in articles 22.13(a)(5) and (b), has given the surety financial incentive to bring the principal back to court after the principal's failure to appear – and the quicker the better for the surety. To reward the surety with very limited liability when the principal is incarcerated but not returned to the prosecuting county does not fulfill the primary purpose of a bail bond.

The incarceration exoneration under article 22.13(a)(5) is but one of several mechanisms available to the surety to minimize its bond forfeiture liability. Like article 22.13(a)(5), most of these contemplate the return of the

_____

promise by the principal and surety promise that the principal will appear before the proper court to answer the accusation against him).

[13] *See also*, Gramercy Insurance Co. v. State, 834 S.W.2d 379, 381-82 (Tex. App.–San Antonio 1992, no pet.) (a bail bond is not intended to function as a revenue device for the government).

principal to the county of prosecution.[14] For example, a surety is completely exonerated from liability if the principal was prevented from appearing because he was sick or because of an uncontrollable circumstance, provided that the principal had no fault in causing the situation that prevented his appearance. Tex. Code Crim. Proc. art. 22.13(a)(3). However, before the surety can take advantage of this exoneration, the principal must "appear before final judgment on the bond to answer the accusation against him, or show sufficient cause for not so appearing." Tex. Code Crim. Proc. art. 22.13(a)(3).

Additionally, if, before a final judgment is rendered in the bond forfeiture suit, the principal is arrested and released on a new bond or the criminal case in which the forfeited bond was made is dismissed, the surety's liability is reduced to court costs, interest on the bond akin to prejudgment interest, and, just like article 22.13(b), "any reasonable and necessary costs to the county for the return of the principal." Tex. Code Crim. Proc. art. 22.16(a). This same reduction of liability can also be given

_____

[14] There are three causes for exoneration under article 22.13 that do not require the return of the principal: when the bond is invalid and not binding (article 22.13(a)(1)), when the principal dies before the forfeiture occurs (article 22.13(a)(2)), and when an indictment or information is not presented timely and the prosecution is not continued (article 22.13(a)(4)).

to the surety by the court "for other good cause shown." Tex. Code Crim. Proc. art. 22.16(b).[15] By retaining the surety's liability for return costs, both provisions contemplate the return of the principal.

A surety has been given another avenue for reducing its liability if the principal is returned to the county of prosecution. However, unlike the ones discussed above, this one can be utilized any time within two years *after* a final judgment is rendered. This mechanism is known as the special bill of review and is governed by article 22.17 of the Code of Criminal Procedure.

A surety can file a special bill of review to request, "on equitable grounds, that the final judgment be reformed and that all or part of the bond amount be remitted to the surety, after deducting the costs of court, **any reasonable costs to the county for the return of the principal**, and the interest accrued on the bond amount form the date of forfeiture." Tex. Code Crim. Proc. art. 22.17(a) (emphasis added). Because this statute does not specify the equitable grounds that would justify a reformation of the

---

[15] The main difference between the two subsections of article 22.16, other than the basis for reducing the surety's liability, is that subsection (a) provides a mandatory reduction ("the court shall"), while subsection (b)'s reduction is discretionary ("the court in its discretion may").

judgment, the courts have fashioned several factors for trial courts to consider. One of these factors is whether the surety participated in the re-arrest of the principal. Another factor is the cost and inconvenience to the State in regaining custody of the principal. *McKenna v. State*, 247 S.W.3d 716, 719 (Tex. Crim. App. 2008); *Gramercy Insurance Co. v. State*, 834 S.W.2d 379, 382 (Tex. App.–San Antonio 1992, no pet.)

Thus, the question under article 22.17 is not if the principal returned to the county of prosecution, but whether the surety helped get the principal arrested and how much did it cost the State to return the principal to the county of prosecution. Since the surety remains liable for return costs under both article 22.17 and article 22.13(a)(5), the principal's return to the county of prosecution is an element of the incarceration exoneration just as it is an element of an equitable special bill of review.

Thus, in order to avoid summary judgment, Mr. Benson was required to raise a fact issue on Mr. Whipple's incarceration within 180 days of his failure to appear and Mr. Whipple's return to Travis County. He failed to meet this burden because he did not present any evidence that Mr. Whipple was ever returned to Travis County. Thus, summary judgment was proper.

## IV.  PRAYER

The State established as a matter of law that Brian Whipple and Tom Benson made a $5,000.00 appearance bond, which forfeited after Mr. Whipple failed to appear in the court in which his misdemeanor case is pending. Tom Benson does not dispute these facts. Instead, he tried to defeat summary judgment by providing evidence that Brian Whipple was arrested in Nevada within 180 days of his failure to appear in the Travis County misdemeanor case. However, this defense is limited to those situations where the principal is returned to the county of prosecution. Since Tom Benson did not provide the trial court any evidence that Mr. Whipple ever returned to Travis County after the bond forfeited, the trial court correctly rendered summary judgment in favor of the State.

Accordingly, the State of Texas respectfully requests that this Court affirm the judgment of the trial court.

Respectfully submitted,

DAVID A. ESCAMILLA
TRAVIS COUNTY ATTORNEY

By:  */s/ Tim Labadie*
Tim Labadie
Assistant Travis County Attorney
State Bar No. 11784853

-14-

P.O. Box 1748
Austin, Texas 78767
(512) 854-5864
(512) 854-9316 (fax)
tim.labadie@traviscountytx.gov

Attorneys for the State of Texas, Appellee

## CERTIFICATE OF COMPLIANCE

By my signature below, pursuant to Tex. R. App. P. 9.4(i)(3), I hereby certify that the foregoing Appellee's Brief contains 3,163 words and is compliant as to form pursuant to Tex. R. App. P. 9.4.

*/s/ Tim Labadie*

## CERTIFICATE OF SERVICE

I hereby certify that on May 29, 2015, and in accordance with Texas Rule of Appellate Procedure 9.5, a true and correct copy of the foregoing was emailed to Mr. Tom Benson at tomrbenson@gmail.com.

*/s/ Tim Labadie*

# APPENDIX



## ARMADILLO BAIL BONDS, Appellant v. THE STATE OF TEXAS, Appellee

### No. 1049-89

### COURT OF CRIMINAL APPEALS OF TEXAS

### *802 S.W.2d 237*; *1990 Tex. Crim. App. LEXIS 198*

### December 5, 1990, Delivered

**PRIOR HISTORY:** [**1] Petition for Discretionary Review from the Fifth Court of Appeals; Dallas County.

**COUNSEL:** Attorneys for appellant: G. P. (Pat) Monks, Houston, Texas, Randy Adler, Dallas, Texas.

Attorneys for State: John Vance, D. A. & Alec B. Stevenson, III & Michael J. Watts, Asst. D. A's., Dallas, Texas, Robert Huttash, State's Attorney, Austin, Texas.

**JUDGES:** En Banc. Campbell, Judge. Judges Teague & Miller dissent without opinion. Sturns, Judge not participating.

**OPINION BY:** CAMPBELL

**OPINION**

[*238] OPINION ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

In this criminal bail bond forfeiture case, we granted Armadillo Bail Bonds' petition for discretionary review, pursuant to Texas Rule of Appellate Procedure 200(c)(4), in order to determine whether *Article 22.16(c)(2) of the Texas Code of Criminal Procedure* violates the separation of powers provision of the Texas Constitution. See *Tex. Const. art. 2, § 1*. Having found the statute unconstitutional, we will affirm the judgment of the court of appeals.

Alejandro de Jesus Carreon, charged in Dallas County with a felony, failed to appear for trial on November 19, 1987. On that date the trial court rendered judgment *nisi* for the State [**2] and against de Jesus Carreon and his surety, Armadillo Bail Bonds, jointly and severally, in the amount of de Jesus Carreon's bond. Nine months later, on August 15, 1988, at a hearing before the trial court, Armadillo was given an opportunity to show good cause for de Jesus Carreon's failure to appear for

trial. No such cause was shown, and the judgment of forfeiture was made final the next day. Armadillo then moved for a new trial on the basis of *Tex. Code Crim. Pro. art. 22.16(c)(2)*, which provides that "[a] final judgment may be entered against a bond not earlier than . . . 18 months after the date the forfeiture was entered, if the offense for which the bond was given is a felony." Armadillo's motion for new trial was denied, and the Fifth Court of Appeals affirmed on the ground that Article 22.16(c)(2) is invalid under the Texas Constitution's separation of powers provision. *Armadillo Bail Bonds v. State, 772 S.W.2d 193 (Tex.App. -- Dallas 1989).*

In its petition for discretionary review, Armadillo contends that Article 22.16(c)(2) "is a valid enactment of law to regulate the trial court's . . . power to grant [a] certain type of relief, a final judgment." Appellant's [**3] Brief at 18. Armadillo argues further that the statute is constitutional because it "does not prevent the courts from managing their affairs . . .; it only controls the type of relief a court can grant at certain times." Appellant's Brief at 12. The State responds that "by ordering trial courts not to enter bond forfeiture judgments until the expiration of . . . eighteen months in a felony case, . . ., the legislature is usurping a judicial function. This is certainly violative of [the separation of powers provision] of the Texas Constitution." State's Brief at 7.

A proper understanding of the issue presented requires an examination of the complete text of Article 22.16(a) and (c):

(a) After forfeiture of a bond and *before the expiration of the time limits set by Subsection (c) of this article the court shall, on written motion, remit to the surety the amount of the bond* after deducting the costs of court, any reasonable costs to the county for the return of the principal, and the interest accrued on the bond amount . . . if:

(1) the principal is incarcerated in the county in which the prosecution is pending;

(2) the principal is incarcerated in another jurisdiction and [**4] the incarceration is verified . . .;

(3) the principal is released on new bail in the case;

(4) the principal is deceased; or

(5) the case for which bond was given is dismissed.

* * *

(c) *A final judgment may be entered against a bond not earlier than:*

[*239] (1) nine months after the date the forfeiture was entered, if the offense for which the bond was given is a misdemeanor; or

(2) *18 months after the date the forfeiture was entered, if the offense for which the bond was given is a felony.*

(Emphasis added.)

It seems probable that Article 22.16(c), enacted in 1987, resulted from our decision in *Williams v. State, 707 S.W.2d 40 (Tex.Cr.App. 1986).* [1] In *Williams* we held unconstitutional a statute that entitled the surety to an automatic ninety-five percent remittitur if the defendant appeared within two years after a final judgment and the surety claimed responsibility for the return. We concluded that the automatic remittitur provision impermissibly interfered with judicial power by requiring the modification of a final judgment. It appears the Legislature has tried to circumvent the *Williams* holding by denying the courts the authority to [**5] render a final judgment for a set period of time.

1    See Senate Comm. on Crim. Juris., Bill Analysis, Tex. S.B. 185, 70th Leg., R.S. (1987) (discussing *Williams v. State, 707 S.W.2d 40 (Tex.Cr.App. 1986)).*

*Article 2, § 1 of the Texas Constitution* provides:

The powers of the Government of the State of Texas shall be divided into three distinct departments, each of which shall be confided to a separate body of magistracy, to wit: Those which are Legislative to one, those which are Executive to another, and those which are Judicial to another; and no person, or collection of persons, being of one of these departments, shall exercise any power properly attached to either of the others, except in the instances herein expressly permitted.

This separation of powers provision reflects a belief on the part of those who drafted and adopted our state constitution that one of the greatest threats to liberty is the accumulation of excessive power in a single branch of government. The provision also has the [**6] incidental effect of promoting effective government by assigning functions to the branches that are best suited to discharge them. *See* H. Bruff, *Separation of Powers Under the Texas Constitution, 68 Texas L. Rev. 1337, 1341 (1990).*

We have held repeatedly that the separation of powers provision may be violated in either of two ways. First, it is violated when one branch of government assumes, or is delegated, *to whatever degree,* a power that is more "properly attached" to another branch. *Ex parte Giles, 502 S.W.2d 774, 780 (Tex.Cr.App. 1973).* The provision is also violated when one branch *unduly* interferes with another branch so that the other branch cannot *effectively* exercise its constitutionally assigned powers. *Rose v. State, 752 S.W.2d 529, 535 (Tex.Cr.App. 1987)*; *Meshell v. State, 739 S.W.2d 246, 252 (Tex.Cr.App. 1987)*; see 16 C.J.S. *Constitutional Law* § 112 (1984). The undue interference test

takes the middle ground between those who would seek rigid compartmentalization and those who

would find no separation of powers violation until one branch completely disrupted another branch's ability to function. The rigid compartmentalization [**7] theory undermines the efficiency of government and undervalues the availability of checks and balances. The other extreme looks only for the completed coup and underestimates the incremental effect of interbranch intrusions.

N. McCabe, *Four Faces of State Constitutional Separation of Powers:*

*Challenges to Speedy Trial and Speedy Disposition Provisions,* 62 Temple L. Rev. 177, 218 (1989).

The State argues, and the court of appeals held in effect, that Article 22.16(c)(2) unduly interferes with the courts' exercise of the "judicial" power. Our inquiry must begin, then, with the nature of this power and the extent to which the Legislature may inject itself into this arena.

The Texas Constitution explicitly vests the judicial power of the state in the courts. *Tex. Const. art. 5, § 1.* The core of this judicial power embraces the power (1) to hear evidence; (2) to decide the issues [*240] of fact raised by the pleadings; (3) to decide the relevant questions of law; (4) *to enter a final judgment on the facts and the law;* and (5) to execute the final judgment or sentence. *Kelley v. State, 676 S.W.2d 104, 107 (Tex.Cr.App. 1984).* On the other hand, the constitution [**8]

explicitly grants the Legislature ultimate authority over judicial "administration," *Tex. Const. art. 5, § 31*; *Meshell v. State, 739 S.W.2d at 255*, although this authority does not permit the Legislature "to infringe upon the substantive power of the Judicial department under the guise of establishing 'rules of court,' thus rendering the separation of powers doctrine meaningless." *Meshell v. State, 739 S.W.2d at 255*. Given these constitutional provisions, it is no simple task to determine whether any given legislative action that affects the exercise of judicial power is a violation of the separation of powers provision.

Helpful to our inquiry in this case, we believe, is the Montana Supreme Court's decision in *Coate v. Omholt, 203 Mont. 488, 662 P.2d 591 (Mont. 1983).* There, the court held unconstitutional, as violations of the separation of powers principle, two Montana statutes that placed time limits on district and supreme court cases and imposed financial sanctions on judges for failure to comply. Although the facts of *Omholt* are different from those in the case before us today, we believe the reasoning of the decision is instructive and sound:

. . . We [**9] conclude that, based on the separation of powers clause of our state constitution, the question of when cases shall be decided and the manner in which they shall be decided, is a matter solely for the judicial branch of government.

\* \* \*

By [the separation of powers] provision, each branch of government is made equal, coordinate, and independent. By this we do not mean absolute independence because "absolute independence" cannot exist in our form of government. It does mean, however, ". . . that the powers properly belonging to one department shall not be exercised by either of the others." With only one exception *( State ex rel. Emerald People's Util. v. Joseph (Ore. 1982), 292 Or. 357, 640 P.2d 1011*), the supreme courts of those states called on to answer the question have declared that the essential nature of a constitutional court encompasses the right to determine when a judicial decision will be made.

These holdings are best summarized in a law review article entitled, Legislative Control Over Judicial Rule-Making: A Problem in Constitutional Revision (1958), 107 U. Pa. L. Rev. 1, 31-32:

"What the holdings do suggest is that there is a third realm of judicial activity, [\*\*10] neither substantive nor adjective law, a realm of 'proceedings which are so vital to the efficient functioning of a court as to be beyond legislative power. 'This is the area of minimum functional integrity of the courts, 'what is essential to the existence, dignity and functions of the court as a constitutional tribunal and from the very fact that it is a court.' Any statute which moves so far into this realm of judicial affairs as to dictate to a judge how he shall judge or how he shall comport himself in judging or which seeks to surround the act of judging with hampering conditions clearly offends the constitutional scheme of the separation of powers and will be held invalid."

The courts have recognized, as the authors state, that certain judicial functions require that the courts alone determine how those functions are to be exercised. Even assuming the right under many state constitutions, and indeed, the need for the legislature to be involved in rule-making where the courts and the legislature have concurrent rule-making power, the authors state:

"Grant the necessity for concurrent jurisdiction in the field of procedure, immediately another problem presents itself. Should [\*\*11] there not be some realm of judicial administration entirely free from legislative supervision? Or shall the legislature be permitted to dictate to the courts every detail of their internal regimen: command appellate courts to issue written opinions in every case, declare within what time cases shall be heard, [\*241] deny to the court the power to issue its mandate until a prescribed period of time after judgment shall have passed? *There are spheres of activity so fundamental and so necessary to a court so inherent in its very nature as a court, that to divest it of its absolute command within these spheres is to make meaningless the very phrase*

*judicial power."* 107 U. Pa. L. Rev. at 29-30.

*662 P.2d at 594* (emphasis in original; some citations omitted). See also *Sands v. Albert Pike Motor Hotel, 245 Ark. 755, 434 S.W.2d 288 (Ark. 1968)*; *Holliman v. State, 175 Ga. 232, 165 S.E. 11 (Ga. 1932)*; *Waite v. Burgess, 69 Nev. 230, 245 P.2d 994 (Nev. 1952)*; *Schario v. State, 105 Ohio St. 535, 138 N.E. 63 (Ohio 1922)*; *Complaint Against Grady, 118 Wis. 2d 762, 348 N.W.2d 559 (Wis. 1984)* (all cases holding legislature may not dictate to judiciary when [**12] or how cases shall be decided).

Article 22.16(c)(2) requires that the Judiciary refrain from exercising a part of its core power for a period of a year and a half. If this requirement is, as Armadillo argues, a valid exercise of the Legislature's power over judicial administration, then, as the court of appeals noted, "nothing prevents the legislature from imposing an *interminable* delay in obtaining final judgment." *772 S.W.2d at 197* (emphasis added). In other words, if Article 22.16(c)(2) is valid, then the Legislature has the power to render the Judiciary impotent with respect to the entry of final judgments.

We adhere to our holdings in *Meshell* and *Williams* that the Legislature may not unduly interfere with the judicial function under the guise of establishing rules of court. We also agree with the *Omholt* court's reasoning that the

separation of powers principle necessarily contemplates a zone of judicial power which must be free of legislative interference. [2] The question in each case is whether the legislation in issue is grounded on the Legislature's own constitutionally assigned power and, if so, whether the legislation nevertheless unduly interferes, or [**13] threatens to unduly interfere, with the Judiciary's effective exercise of *its* constitutionally assigned power, and we so hold.

2 We should not be understood to approve the court of appeals' sweeping statement that "a statute which requires the judicial branch to act or refrain from acting within a specified time is [always] unconstitutional as an unwarranted encroachment by the legislative branch upon the prerogatives and functions of the judiciary." *772 S.W.2d at 196*. There are many instances where the Legislature may pass legislation that affects in some way how or when judicial power may be exercised.

In our view, Article 22.16(c)(2) unduly interferes with the Judiciary's effective exercise of its constitutionally assigned power. We hold, therefore, that the statute is invalid under *Article 2, § 1 of the Texas Constitution*. The judgment of the court of appeals is affirmed.

Teague and Miller dissent without an opinion.



**JOHN BURNS, Appellant v. THE STATE OF TEXAS, Appellee**

**No. 1111-91**

**COURT OF CRIMINAL APPEALS OF TEXAS**

***861 S.W.2d 878*; *1993 Tex. Crim. App. LEXIS 129***

**June 23, 1993, Delivered**

**SUBSEQUENT HISTORY:** [**1]
*861 S.W.2d 878 at 886.*

**PRIOR HISTORY:** Petition for Discretionary Review from the Fourteenth Court of Appeals. [HARRIS County]

Original Opinion of December 23, 1992, Reported at: *1992 Tex. Crim. App. LEXIS 248.*

**COUNSEL:** For Appellant: Stanley G. Schneider, Houston, Tx. W. Troy McKinney, Houston, Tx.

For Appellee: John B. Holmes, Jr., D. A. & Kathleen A. B. Braddock & Mark A. Font, Asst. D. A's., Houston, Tx. Robert Huttash, State's Attorney, Austin, Tx.

**JUDGES:** En Banc. Miller, Judge, McCormick, Presiding Judge & Overstreet, Judge, concur in the result

**OPINION BY:** MILLER

**OPINION**

[*886] ***OPINION ON STATE'S MOTION FOR REHEARING***

This appeal arose from a bond forfeiture. The trial judge granted summary judgment in favor of the State, and the surety, John Burns, appealed. [1] In the court of appeals, appellant raised nine points of error which the court overruled, and the judgment was affirmed. *Burns v. State, 814 S.W.2d 768* (Tex.App. - Houston [14th Dist.] 1991). This Court granted appellant's petition for discretionary review on the two grounds presented therein, *to-wit:* (1) "whether the court of appeals used the proper standard of review by failing to review the evidence [**2] in the light most favorable to appellant[,]" and (2) "whether a bond may be forfeited due to

a principal's failure to appear in court on a certain date absent proof of notice to the principal that he is to appear in court on that date when the principal has previously been ordered to appear at a date after the date on which the judgment nisi issued."

1    The principal in this cause, Pedro Alvarez, is not a party to this appeal.

On original submission, we found a substantial material fact regarding notice was presented which defeated summary judgment, and we therefore sustained appellant's second ground for review. *Alvarez & Burns v. State,*    S.W.2d (Tex.Crim.App. No. 1111-91, delivered December 23, 1992), slip op. at p. 8. [2] In its motion for rehearing, the State presents three reasons why this Court erred in finding a substantial material [*887] fact was presented which defeated summary judgment. The State alleges the opinion omits a material fact, omits and improperly recites [**3] the law applicable to summary judgment cases, and improperly applies the law to the facts.

2    Finding merit in appellant's second ground for review, we did not address his first ground for review. *Id.* at p. 9.

In order to address the State's contentions we must first articulate the appropriate standard of review in a summary judgment case. Rule 116a of the Texas Rules of Civil Procedure addresses summary judgment, so we find it useful to consult decisions from our sister court on this standard. The purpose of the summary judgment rule is to provide a method of summarily terminating a case when it clearly appears that only a question of law is involved and that no genuine issue of fact remains. *Gaines v. Hamman, 163 Tex. 618, 358 S.W.2d 557, 563 (Tex. 1962).* The issue in a summary judgment proceeding, therefore, is whether there is a genuine issue of fact in the case. *Id. at 562.* The party moving for summary judgment has the burden of showing that there is no such fact question and that he is entitled [**4] to judgment as a matter of law. *Nixon v. Mr. Property Management Company, Inc, 690 S.W.2d 546, 548 (Tex. 1985).* In deciding whether there is a disputed material fact issue precluding summary judgment, the court takes as true the evidence favorable to the non-moving party. *Id. at 548-49.* Every reasonable inference from the evidence must be indulged in favor of the non-movant, and any doubts resolved in its favor. *Id. at 549. See also Montgomery v. Kennedy, 669 S.W.2d 309 (Tex. 1984)*; *City of Houston v. Clear Creek Basin Authority, 589 S.W.2d 671 (Tex. 1979).* Hence, the applicable standard of review is to view the evidence in the light most favorable to the party opposing the summary judgment motion. *Gaines v. Hamman, 358 S.W.2d at 562.* [3]

3    In his first ground for review in his petition, appellant contended the court of appeals utilized an incorrect standard of review and viewed the evidence in the light most favorable to the movant, rather than the non-movant. Given our disposition of this motion for rehearing, we express no opinion on the merits of this ground for review, but only note that this is the proper standard to apply.

[**5]  We now review the elements of the State's cause of action in a bond forfeiture from which this summary judgment action arose. Bond forfeiture, although in the nature of a civil proceeding, [4] is governed by the *Code of Criminal Procedure. Article 22.02* directs the manner of taking a forfeiture and provides in pertinent part:

The name of the defendant shall be called distinctly at the courthouse door, and if the defendant does not appear within a reasonable time after such call is made, judgment shall be entered that the State of Texas recover of the defendant the amount of money in which he is bound, and of his sureties, if any, the amount of money in which they are respectively bound, which judgment shall state that the same will be made final, unless good cause be

shown why the defendant did not appear.

It is well-settled that the State's proof in a bond forfeiture proceeding consists of the bond and the judicial declaration of the forfeiture of the bond, which is the judgment nisi. *Tocher v. State, 517 S.W.2d 299, 301 (Tex.Crim.App. 1975).* The judgment nisi is prima facie proof that the statutory requirements of Art. 22.02 have been satisfied. *Id.* The [**6] burden then shifts to the defendant to affirmatively show otherwise. *Id.* Indeed, "the court will presume that the judgment nisi was taken in accordance with the statutory requirements, unless it affirmatively appear otherwise." *Id., citing Thompson v. State, 31 Tex. 166 (1868).* In moving for summary judgment in an appearance bond forfeiture case, the State must therefore establish as a matter of law that there are no genuine issues of material fact as to any of the elements of the State's cause of action, which are proved by the bond and the judgment nisi. *Deckard v. State, 615 S.W.2d 717, 718 (Tex.Crim.App. 1981)* (panel opinion).

4    *See Art. 22.10, V.A.C.C.P.*

With this review in mind, we now address the merits of the State's motion for rehearing which raises an issue regarding its burden of proof in this case. In its motion, the State argues *inter alia* that in our opinion on original submission we improperly assigned the

burden of proof in a summary judgment action [*888] on a bond [**7] forfeiture. In that opinion we stated:

Therefore, the fact issues which must be proven in a motion for summary judgment on a bond forfeiture are: (1) a valid bond executed by the surety (Article 17.08(5)); (2) failure of a defendant bound by bail to appear in a court in which his case is pending when his personal appearance is required under the Code (Article 22.01); (3) the name of the defendant shall have been called distinctly at the courthouse door (Article 22.02); and (4) no valid reason for the principal not appearing (Article 22.13).

*Alvarez & Burns,* slip op. at p 3; *see also Burns, 814 S.W.2d at 770*. The State contends this fourth issue is not a fact which it must prove in a bond forfeiture proceeding. A plain reading of Art. 22.02, along with the *Tocher* decision, reveals the State is correct.

Article 22.02 directs that the defendant's name be called "distinctly" at the courthouse door. The defendant is given a "reasonable time after such call is made" in which to appear. Upon his failure to do so, "judgment *shall* be entered" for the State on the bond forfeiture. Art. 22.02 (emphasis supplied). Thus, to be entitled to forfeiture of a bond [**8] the State need only show (1) a valid bond; (2) that the defendant's name was distinctly called at the courthouse door; and (3) the defendant failed to appear within a reasonable time of that call. At the risk of being redundant, we reiterate that the burden of proof on the second and third prongs is satisfied by the judgment nisi.

Article 22.02 further provides that this judgment will be made final *unless* "good cause be shown why the defendant did not appear." This proviso operates like an affirmative defense in that the defendant admits he failed to appear but asserts he has good cause which excuses his failure to do so. This burden is appropriately placed on the defendant.

The court of appeals, relying upon *Lopez v. State, 678 S.W.2d 197* (Tex.App. - San Antonio 1984, no pet.), recognized that there are only *four fact issues* in a motion for summary judgment on a bond forfeiture. *See Burns, 814 S.W.2d at 770*. Those issues, per Art. 22.02, are: whether there is a valid bond; whether the principal's name was called at the courthouse door; whether the principal failed to appear; and whether the principal had a valid reason for not appearing. While there are four [**9] fact issues under Art. 22.02, the State bears only the burden of proof on three of them. As the State points out in its motion for rehearing, this Court "inexplicably" stated these issues as the

State's burden of proof in our opinion on original submission. *See Alvarez & Burns,* slip op. at p. 4. We therefore sustain the State's ground for rehearing on this burden of proof issue.

In his second ground for review in his petition, appellant contended the State failed to establish as a matter of law that the principal had notice of the court setting and "that the summary judgment evidence created a substantial and genuine issue of material fact concerning notice to the principal, thus precluding summary judgment." On original submission we agreed with appellant and concluded "the amended affidavits of the principal's attorney and the affidavit of the surety which present evidence that the principal did not receive notice of the setting raises (sic) material facts reflecting the contradiction and inconsistency of the principal's lack of notice to defeat summary judgment." *Id.,* slip op. at p. 8. In its motion for rehearing, the State argues that we misapplied the law to the facts. [**10] The State asserts that the dispositive issue before this Court is whether the appellant, as non-movant, presented summary judgment evidence on every element of his defense, *viz:* his failure to appear was due to an uncontrollable circumstance pursuant to *Art. 22.13, V.A.C.C.P.* [5] We disagree with the State's argument.

> 5     *Article 22.13, V.A.C.C.P.*, provides an exclusive list of causes which will exonerate the principal

and his surety from liability upon the forfeiture taken. Allegedly germane to this cause is section (3) which provides:

> The sickness of the principal or some uncontrollable circumstance which prevented his appearance at court, and it must, in every such case, be shown that his failure to appear arose from no fault on his part. The causes mentioned in this subdivision shall not be deemed sufficient to exonerate the principal and his sureties, is any, unless such principal appear before final judgment on the bond to answer the accusation against him, or show sufficient cause for not so appearing.

Pursuant to the express terms of Art. 22.13, to controvert the State's prima facie proof, appellant must show (1) that some uncontrollable circumstance prevented the principal's appearance at court, (2) that the principal's failure to appear arose from no fault on his part, *and* (3) that the principal appeared before final judgment on the bond

to answer the accusation against him (or had sufficient cause for not so appearing).

In the motion for rehearing, the State asserts pursuant to Art. 22.13 that we omitted the fact that the record is wholly void of any evidence that, after forfeiture, the principal appeared prior to judgment in the forfeiture case. Hence the State argues that even though there may have been a lack of notice to appear, appellant has failed to meet his burden of proof on this affirmative defense by not presenting any evidence that, in the 23 months between forfeiture and judgment, he had been returned to custody in Harris County. *See Fernandez v. State, 516 S.W.2d 677 (Tex.Crim.App. 1974).*

[**11] [*889] In spite of statements in the court of appeals' opinion [6] and this Court's opinion on original submission, [7] appellant has not raised or argued an "uncontrollable circumstance" affirmative defense under Art. 22.13. The record reveals that citation issued on April 15, 1988, on the bond forfeiture. *See* Art. 22.10. Appellant filed an *answer* [8] generally denying the allegations and providing a laundry list of defenses, including "[appellant] is entitled to be exonerated under the provisions of Article 22.13 T.C.C.P." The State then filed its motion for summary judgment. Appellant filed his reply in response to this motion asserting "the State's entire motion for

summary judgment boils down to the allegation . . . that it is entitled to summary judgment 'as matter (sic) of law by virtue of the fact that no good cause exists for the Defendant-Principal's failure to appear.'" Appellant then asserts in his response that there are genuine issues of material fact which preclude the State's entitlement to summary judgment, including lack of notice to appear. Nowhere in his *response* (as opposed to his answer) does appellant assert he is entitled to exoneration of [**12] liability on the bond forfeiture via Art. 22.13.

6 *See Burns, 814 S.W.2d at 770.*
7 *See Alvarez & Burns,* slip op. at p. 5.
8 Specifically, appellant filed an original answer and two amended answers.

In his brief in the court of appeals appellant contended, *inter alia,* that the trial court erred in granting summary judgment because a fact issue existed concerning notice to the principal to appear. Again, appellant did not argue he was entitled to exoneration pursuant to Art. 22.13. [9] In his petition for discretionary review before this Court, appellant contended lack of notice was a fact issue in this case but not under Art. 22.13. Thus, the affirmative defense of an uncontrollable circumstance was not an issue before either the court of appeals or this Court, and any statements addressing that issue are dicta.

9      Appellant's only argument mentioning Art. 22.13 is in a constitutional challenge. Appellant's point of error states:

The trial court erred in granting summary judgment because if no actual notice is required, *TEX. CODE CRIM. PROC. ANN. art. 17.09* (Vernon 1977), *TEX. CODE CRIM. PROC. ANN. art 22.13* (Vernon 1989), and the bond are void as unconstitutional under the *Fourteenth Amendment of the United States Constitution* and Art. I, sec's. (sic) 13 and 19 of the Texas Constitution.

[**13]  The issue presented here is whether there is a material fact issue regarding notice which would preclude summary judgment. The State presented the bond and the judgment nisi to the trial court, thus making a prima facie case for the bond forfeiture. Appellant presented evidence concerning a lack of notice to appear and providing good cause for his failure to appear. *See* Art. 22.02. On original submission we held the evidence raised a material fact issue and the trial judge erred in granting summary judgment. In reviewing that holding on this motion for rehearing, we conclude our decision was correct.

The State's motion for rehearing is granted only to the extent that we corrected our statement of the State's burden of proof in a  [*890]  bond forfeiture case. *See* pp. 4-5, *supra.* The other grounds are denied.

Miller, J.

Delivered: June 23, 1993

En Banc

McCormick, PJ., and Overstreet, J., concur in result.



**Ex Parte Thomas Reis Alias Tommy Reis.**

**No. 14091**

**COURT OF CRIMINAL APPEALS OF TEXAS**

*117 Tex. Crim. 123*; *33 S.W.2d 435*; *1930 Tex. Crim. App. LEXIS 948*

**December 17, 1930, Delivered**

**SUBSEQUENT HISTORY:** [***1] Reported in *33 S.W.2d 435*.

**PRIOR HISTORY:** Appeal from the District Court of Galveston County. Tried below before the Hon. J. C. Canty, Judge.

Habeas corpus proceeding on the relation of Thomas Reis, alias Tommy Reis, who, after a hearing, was remanded to the custody of the sheriff.

Affirmed.

**DISPOSITION:** Affirmed.

**HEADNOTES**

**Habeas Corpus -- Bail.**

Where indictment against relator, charging a capital offense, was handed to the judge with numerous other indictments charging ordinary felonies, and without hearing the evidence, under the mistaken belief that the offense charged against relator was an ordinary felony, bail was granted as in case of ordinary offense, the court was authorized at the same term of court during which the order granting bail was entered to set aside the order and relator was properly remanded to the custody of the sheriff.

**Habeas Corpus.**

The court had the inherent power to deal with the person of relator in the manner manifested by the record, since the purpose of a bail bond is not only to effectuate the release from custody of a person accused of crime, but "to secure his presence in order that he may be tried upon the charge against him."

**Habeas Corpus.**

The court should not be deprived of its authority to correct a mistake of the character of the one here presented during the term at which the improper order was entered under a misapprehension of the true facts and conditions.

**COUNSEL:** Marsene Johnson, Jr., of Galveston, for appellant.

Lloyd W. Davidson, State's Attorney, of Austin, for the State.

**JUDGES:** Christian, Judge.

**OPINION BY:** CHRISTIAN

**OPINION**

[*123] [**436] CHRISTIAN, Judge. -- Upon a hearing on a writ of habeas corpus before the district court of Galveston County, relator was remanded to the custody of the sheriff. Hence this appeal. [*124] Relator is under indictment charging him with robbery with firearms, a capital offense. The indictment against him was returned into court with numerous other indictments charging ordinary felonies against various persons. As the indictments were handed to the judge of the district court he was advised by the county attorney, upon having made inquiry of him, that all of the indictments charged ordinary felonies. It being the custom of the judge to set the bond in cases of ordinary felony at five hundred dollars, he indorsed [***2] on each of the indictments such sum as the amount to be required as bail. Among the indictments upon which this indorsement appeared was that charging relator with the offense of robbery with firearms. Thereafter, during the same term of court at which the indictment was returned, the sheriff released relator on a bond in the sum of five hundred dollars. The matter having been brought to the attention of the trial judge, the order fixing bond was vacated and an alias capias issued upon which relator was arrested and incarcerated in jail. The vacating order was entered at the same term of court at which the indictment had been returned, and during that term relator sought to be released, upon a hearing on a writ of habeas corpus, under the bond he had theretofore executed in the sum of five hundred dollars. The testimony adduced upon the hearing was uncontroverted to the effect that relator entered the home of Mrs. Carrie Moeller, exhibited a pistol, bound and gagged her, struck her on the head with the pistol and robbed her of two thousand dollars.

It is relator's contention that the trial court was without authority to vacate the order granting bail, notwithstanding the fact that [***3] he acted upon a mistake of fact at the time bail was granted. He relies upon the holding in the cases of *Jenkins v. State, 45 Tex. Crim. 253, 76 S.W. 464, 77 S.W. 224*, and the announcement in *Augustine v. State, 33 Tex. Crim. 1, 23 S.W. 689*. In the latter case the accused was indicted for murder on the 21st of December, 1876. On the 29th of the same month the case was transferred to Bexar County. In December, 1882, the accused was admitted to bail in the sum of ten thousand dollars on account of sickness rendering it dangerous to longer confine

him. A month thereafter the prosecution was dismissed. In December, 1891, the accused was re-indicted for the same murder and the venue changed to Gonzales County, the facts supporting the charge being identical with those upon which the first indictment had been returned. After the second indictment, bail was refused. In reversing the judgment and granting bail, the court, speaking through Judge Davidson, held that "when bail is once granted after indictment found, it is beyond the power of the state to re-arrest for that offense, the right to bail being res adjudicata." Subsequently, in the case of *Jenkins v. State, 45* [***4] *Tex. Crim. 253, 76 S.W. 464*, Augustine's Case was cited in support of the rule in holding that when bail is granted after indictment it is beyond the [*125] power of the trial judge to increase the amount thereof. Again, in *Jenkins v. State, 77 S.W. 224*, the rule laid down in Augustine's Case was approved.

Looking to other jurisdictions, it is observed that the Supreme Court of Oklahoma, in the case of *State ex rel. Starritt v. Newman, 114 Okla. 228, 245 P. 999*, cited with approval the holding in the cases above discussed. Starritt was incarcerated on a charge of murder. Upon a proper application, he was granted bond in the sum of twenty-five thousand dollars. Thereafter he presented a bond in said sum in due form to the district judge, who declined to approve the bond, and entered an order setting aside and withdrawing the

order granting bail. Contending that when the district court granted him bail and the order thereof was spread of record, such order was final and conclusive and became res adjudicata in all subsequent proceedings in the case, and that the district judge was without power or authority to vacate or withdraw such order, Starritt filed an original [***5] action in the Supreme Court praying for a writ of mandamus. It appears that the order granting bail was vacated at the same term of the court at which it was made. It was the State's contention that the district judge had jurisdiction to vacate, withdraw, or set aside the order, even upon his own motion and without notice, at the same term of the court at which the order was made. In holding that the order granting bail was res adjudicata and final as to the State, and that the district judge had no authority to vacate it, it was said that the authorities supporting the right of the court to vacate or modify its own judgments or orders were not applicable, in that in such cases the court had under consideration property interests of the parties rather than the liberties of the citizens.

It is unquestionably the rule in civil cases that it is "within the power of the court at the same term, to revise or vacate any of its judgments, decrees, or orders." *Gulf C. and S. F. Ry. Co. v. Muse, District Judge, 109 Tex. 352, 207 S.W. 897.* [**437] Touching the power of the court in such matters in criminal cases, we quote from Bishop's New

Criminal Procedure2d Ed., vol. 2, sec. 1298, as follows: [***6] "The power of the court to alter its docket entries and records during the term wherein they are made, includes the right within such time to revise, correct and change its sentences, however formally pronounced, if nothing has been done under them. But steps taken under a sentence, -- for example, a substantial part execution thereof, -- will cut off the right to alter it even during the term."

It is obvious that the power of the court in the respect mentioned in criminal cases is not as broad as in civil cases. However, it is unnecessary at this time to discuss the limitations upon such power.

The cases relied upon by relator are distinguishable upon the facts from the case at bar. As reflected by the record in such cases, no mistake [*126] entered into the order granting bail. It was granted upon a proper and legal order duly entered after legal investigation and proper exercise of discretion upon the part of the judge. In the present case, being misinformed by the prosecuting attorney as to the nature of the offense, the court granted bail in a capital case, in the absence of an agreement on the part of the State that the case was bailable, and without an examination upon [***7] a writ of habeas corpus, or otherwise. In short, the record shows that there was no exercise of judicial discretion. The question decided in the cases relied upon by relator was not related to the power of the court to correct a mistake in granting bail in a capital case during the term of court at which the order was entered, but concerned the power to increase bail or deny bail after a proper order had been duly and legally entered fixing the amount of bond, or granting bail.

Without approving the doctrine announced by the Supreme Court of Missouri, in the case of *The State v. Eyermann, 172 Mo. 294, 72 S.W. 539*, it is observed that it was held that the court had the power at any time during the term at which the accused was let to bail, to alter, amend, cancel, or set aside any order made with respect thereto, notwithstanding the accused may have complied with its order fixing his bond.

Under our Constitution, bail is a matter of right, except in capital offenses when the proof is evident. *Section 11 of Art. 1, Constitution of Texas.* In determining whether a capital offense is bailable, the practice ordinarily pursued in this state is to hear the evidence upon a writ of habeas [***8] corpus. Upon a hearing the burden is upon the State to show that the accused is not entitled to bail. Otherwise he is entitled to bail as a matter of right. *Ex parte Powell, 107 Tex. Crim. 648, 298 S.W. 575*. Unless the evidence heard by the court is clear and strong, leading a well-guarded and dispassionate judgment to the conclusion that an offense has been committed, that the accused is the guilty agent, and that he would probably be punished capitally if the law is administered, bail is a matter of right. *Ex parte Alford, 97 Tex.*

*Crim. 410, 261 S.W. 1041*. If the learned trial judge had heard the evidence now reflected by the record before he had granted bail in the sum of five hundred dollars he would have been fully warranted in reaching the conclusion that the case was not bailable. If relator's contention be sustained, he is entitled to be enlarged on a bond in an amount generally required in cases of ordinary felony, notwithstanding a mistake of fact as to the character of the offense prevented the exercise of proper discretion on the part of the court.

In prohibiting the re-arrest of one granted bail after indictment, the statute provides that in "cases where, [***9] after indictment is found the cause of the defendant has been investigated on habeas corpus, and an order made, either remanding him to custody, or admitting him to bail, he [*127] shall neither be subject to be again placed in custody, unless when surrendered by his bail, nor shall he be again entitled to the writ of habeas corpus, except in the special cases mentioned in this chapter." Article 169, C. C. P. We mention this for the purpose of showing that it is the policy of the law that bail be not granted in capital cases until the facts have been properly investigated. Intention to hold that a proper agreement approved by the judge authorized to grant bail is invalid is disclaimed. Nothing in the statute referred to can properly be construed to prevent the re-arrest of one indicted for a capital offense under the facts manifested by this record. On the contrary, the statute might be susceptible of the construction that it is only in cases where bond has been granted after investigation on habeas corpus that the accused is exempt from being again placed in custody for the same offense.

We quote from Corpus Juris, vol. 6, page 952, as follows: "Upon admission to bail the accused [***10] is regarded as in the custody of his bail from the moment a bond or recognizance is executed until he is discharged or recommitted; but he is also in the custody of the law, and it does not deprive the court of its inherent power to deal with the person of the prisoner."

The purpose of a bail bond is not only to effectuate the release from custody of a person accused of crime, but "to secure his presence in order that he may be tried upon the charge against him." Tex. Jur., vol. 5, page 802. We think the court had the inherent power to deal with the person of relator in [**438] the manner manifested by the record. In *Ex parte Calloway, 98 Tex. Crim. 347, 265 S.W. 699*, this court sustained the action of the trial court in raising the amount of bail theretofore required after indictment in a felony less than capital on the ground that the accused had made threats that he would not be tried and had failed to appear on several occasions, with the result that several bonds had been forfeited. We think the principle upon which the decision rested relates to the inherent power to deal with the person of the

accused in order to secure his presence at the trial.

To deprive the court of the [***11] authority to correct a mistake of the nature in question during the term at which it was made would render it powerless to perform its constitutional and statutory functions. An inherent power would be destroyed. The administration of justice would be hampered, if not entirely defeated. We are constrained to hold that the action of the trial court should be sustained.

We have decided this case on its merits without reference to the statute (article 260, C. C. P.) under which the cases relied upon by appellant seem to have been decided. The soundness of such decisions is seriously questioned.

The judgment is affirmed.

*Affirmed.*

[*128] The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.



## Ex Parte Gilbert Vasquez

## No. 56,242

## The Texas Court of Criminal Appeals

## *558 S.W.2d 477*; *1977 Tex. Crim. App. LEXIS 1290*

## Nov. 30, 1977

**PRIOR HISTORY:** [**1] Habeas Corpus Application from Bexar County

**COUNSEL:** For Appellant: Thomas Rocha, Jr. - San Antonio, TX

For Appellee: Bill White, D.A. - San Antonio, TX

**OPINION BY:** ONION

**OPINION**

[*478] Onion, Presiding Judge

This appeal is taken from an order entered in a habeas corpus proceeding in the 227th District Court of Bexar County refusing to reduce bail.

The record reflects that on August 3, 1977 the appellant was indicted for capital murder. The said indictment charged that appellant intentionally and knowingly caused the death of Maria Guajardo by shooting her with a gun while in the course of committing and attempting to commit robbery. Bail was set at $100,000.

On August 9, 1977 appellant filed his petition for writ of habeas corpus seeking reduction of bail. A hearing on said petition was held on August 16, 1977, following which the court refused to reduce bail.

The twenty year old petitioner testified that he was in jail, that he was unable to make the amount of bond set, that he did not own any real estate, no stocks or bonds, had no money in the bank and no cash anyplace. He related he had a ten year old automobile, but he gave it to "another lawyer" and that [**2] it did not belong to him anymore. He testified he had made a $10,000 bond in an aggravated robbery case, [1]/ and could possibly make a $10,000 bond in [*479] the instant case. [2]/ He told the court he was paying his lawyer $35 [3]/ a week on his fee, and if released could find a job with an uncle at $80 or $85 a week.

1 The aggravated robbery apparently grew out of the same transaction as the instant case.

2 The record is somewhat confusing on this fact. When asked what kind of bond he, his family or friends could make, petitioner answered:

"A. I think that the same amount I had at first.

"Q. Do you mean another $10,000 or the same -- the original $10,000 bond?

"A. The original $10,000."

The witness was then passed.

3 The source of the $35 weekly payments was not revealed.

Petitioner testified he did not have a pistol inside the grocery store and did not shoot the deceased as alleged. On cross-examination he acknowledged that he drove co-defendant Magdalino Rodriquez [**3] to the grocery store, but stated he did not know Rodriquez was going to shoot anyone, that he did not give Rodriquez a gun, and that he did not wait for Rodriquez. He admitted he later saw Rodriquez running several blocks away from the store and inquired as to his running, but Rodriquez "didn't say nothing. He was afraid." Petitioner related that Rodriquez had no gun in his hand and no bag with money in it. He denied splitting the money with Rodriquez. When asked where he and Rodriquez went after he picked up Rodriquez, who had been running, the court sustained the objection to further interrogation by the State.

The State offered no evidence [4] and at the conclusion of the hearing the court refused to reduce bail. In its findings the hearing the court refused to reduce bail. In its findings the court found, among other things, that the petitioner had failed to show he is financially unable to make bond in the amount of $100,000. On the same date as the hearing the petitioner filed a pauper's oath for the purposes of obtaining a record on appeal of the habeas corpus proceedings. The court on the same date ordered the transcription furnished without cost, finding petitioner [**4] was a pauper.

4 The State has not filed a brief in this cause.

*Article 17.15, Vernon's Ann.C.C.P.*, provides:

"The amount of bail to be required in any case is to be regulated by the court, judge, magistrate or officer taking the bail; they are to be governed in the exercise of this discretion by the Constitution and by the following rules:

"1. The bail shall be sufficiently high to give reasonable assurance that the undertaking will be complied with.

"2. The power to require bail is not to be so used as to make it an instrument of oppression.

"3. The nature of the offense and the circumstances under which it was committed are to be considered.

"4. The ability to make bail is to be regarded, and proof may be taken upon this point."

The burden of proof is on petitioner for reduction in bail to show that bail set is excessive. *Ex parte August, 552 S.W.2d 169 (Tex.Cr.App. 1977)*; *Ex parte Clark, 537 S.W.2d 40 (Tex.Cr.App. 1976)*; *Holliman v. State, 485 S.W.2d 912 (Tex.Cr.App. 1972)*.

The primary [**5] object or purpose of an appearance bond is to secure the presence of the defendant in court upon the trial of the accusation against him. *Fly v. State, 550 S.W.2d 684 (Tex.Cr.App. 1977)*; *McConathy v. State, 528 S.W.2d 594 (Tex.Cr.App. 1975)*. While bail should be sufficiently high to give reasonable assurance that the undertaking will be complied with, the power to require bail is not to be used so as to make it an instrument of oppression. See Article 17.15(1) and (2), supra; *Ex parte Kerr, 549 S.W.2d 6 (Tex.Cr.App. 1977)*; *Ex parte Clark, supra.*

The evidence was meager, but did show that petitioner's home was in San Antonio and that he had a construction job with an uncle if he were to be released on bail. There was nothing to show that petitioner had a criminal record and no showing as to whether or not petitioner had a past history of failing to appear while on bond.

The nature of the offense was shown to be capital murder (V.T.C.A., *Penal* [*480] *Code, § 19.03*), which carries a penalty of life imprisonment or death (V.T.C.A., *Penal Code, § 12.31*). And when considering the nature of the offense in setting bail, the punishment permitted by law may be considered. [**6] *Ex parte Clark, supra*; *Ex parte Bufkin, 553 S.W.2d 116 (Tex.Cr.App. 1977)*. As to the circumstances under which the offense was committed, there was also little evidence offered. While the return of an indictment establishes probable cause as a matter of law, *Ex parte Branch, 553 S.W.2d 380 (Tex.Cr.App. 1977)*; *Ex parte Preston, 533 S.W.2d 820 (Tex.Cr.App. 1976)*; *Ex parte Sellers, 516 S.W.2d 665 (Tex.Cr.App. 1974)*; *Ex parte White, 486 S.W.2d 301 (Tex.Cr.App. 1972)*, the only testimony as to the circumstances under which the offense was committed came from the petitioner. He denied his guilt rf that he was implicated with Rodriquez, the apparent trigger man in the murder-robbery alleged. He did admit he drove Rodriquez to the grocery store and subsequently picked him up several blocks from the store. He stated he did not know that Rodriquez had a gun or had shot anyone and denied he split the money with Rodriquez. From the evidence offered, it would appear that petitioner's criminal responsibility, if any, would fall under the provisions of V.T.C.A., *Penal Code, § 7.01* and $7.02.

It appears to be undisputed that appellant was indigent, [5]/ and while he

indicated that [**7] he might be able to post a $10,000 bond, he did not reveal how he would be able to do so. Appellant's indigency is a circumstance to be considered, but it is not a controlling circumstance nor the sole criterion in determining the amount of bail. *Ex parte Sierra, 514 S.W.2d 760 (Tex.Cr.App. 1974)*; *Ex parte Runo, 535 S.W.2d 188 (Tex.Cr.App. 1976)*; *Ex parte Clark, supra*; *Ex parte McClellan, 545 S.W.2d 483 (Tex.Cr.App. 1977)*; *Ex parte Kerr, supra.*

5   While the trial court found that the petitioner had not shown he was financially unable to make a $100,000 bond, appellant's testimony as to his indigency was undisputed. On the same date as the habeas corpus hearing the court, upon petitioner's affidavit, found the petitioner a pauper for the purposes of appeal.

When appellant's indigency is considered along with the nature of the offense and the only testimony as to the circumstances under which the offense was committed which was offered, as well as all other testimony introduced, we conclude that the bail [**8] of $100,000 was excessive. The power to require bail is not to be used as an instrument of oppression. Article 17.15, supra; *Ex parte Bufkin, supra.* Bail is reduced and set in the sum of $20,000.

It is so ordered.



**GRAMERCY INSURANCE CO. D/B/A BEXAR COUNTY BAIL BONDS, Appellant v. STATE OF TEXAS, Appellee**

**Appeal No. 04-91-00536-CV**

**COURT OF APPEALS OF TEXAS, FOURTH DISTRICT, SAN ANTONIO**

***834 S.W.2d 379*; *1991 Tex. App. LEXIS 3287***

**May 6, 1991, Delivered**
**May 6, 1991, Filed**

**SUBSEQUENT HISTORY:** [**1] Motion for Rehearing Denied July 6, 1992. State's Petition for Discretionary Review Refused November 25, 1992.

**PRIOR HISTORY:** Appeal from the 227th District Court of Bexar County. Trial Court Nos. 91-CI-07569 and 89-SF-0209. Honorable Mike Machado, Judge Presiding.

**DISPOSITION:** AFFIRMED AS MODIFIED

**COUNSEL:** ATTORNEYS FOR APPELLANT: Hitchings, Barry P., HITCHINGS, POLLOCK & BERNARD, 512 Highland, Suite 200, San Antonio, TX 78210.

ATTORNEYS OF APPELLEE: Hilbig, Steven C., Criminal District Attorney, Rainey, Becky, Assistant Criminal District Attorney, Bexar County Justice Center, 300 Dolorosa, San Antonio, TX 78205.

**JUDGES:** Sitting: Alfonso Chapa, Justice, Fred Biery, Justice, Orlando Garcia, Justice

**OPINION BY:** FRED BIERY

**OPINION**

[*380] **OPINION**

Opinion by: Fred Biery, Justice

Gramercy Insurance Co. D/B/A Bexar County Bail Bonds, appellant, sought a remittitur from a bail bond forfeiture final judgment in the amount of $ 10,000. Notwithstanding the state's election not to pursue a $ 10,000 judgment on a separate and distinct $ 10,000 personal recognizance bond

signed by the same defendant arising out of the same criminal charge, the remittitur request related to the surety bond [**2] was denied. For the reasons stated below, we modify the trial court action and, as modified, on affirm the judgment.

A chronology of events is helpful:

April 17, 1989

Appellant (Bexar County Bail Bonds) executed a bail bond in the amount of $10,000 to secure the pretrial release from jail of the principal, Rudolfo Lira Gonzales.

October 25, 1989

Because of Gonzales' failure to appear, the trial court signed a judgment nisi.

November 28, 1989

Gonzales was arrested again and placed in the Bexar County jail.

December 1, 1989

Notwithstanding Gonzales' failure to appear pursuant to the terms of the surety bond, he was granted a $10,000 personal recognizance bond, again securing his release from jail.

January 16, 1990

Gonzales once again failed to appear and the personal recognizance bond was also forfeited.

June 27, 1990

The surety company learned that Gonzales was incarcerated at the Federal correctional Institution at Bastrop, Texas.

July 1990

An employee of the appellant bail bond company determined that Gonzales had been incarcerated in the Nueces county jail since February 1990. Bexar county authorities [**3] did not have this information until it was provided to them by appellant's employee.

July 20, 1990

Final judgment in the amount of $10,000 was granted against the appellant bail bond company.

[*381] January 16, 1991

For the first time, Bexar County placed a detainer on Gonzales with the United States Marshall's Office.

April 18, 1991

Gonzales was transferred to the Bexar County jail for disposition of his Bexar County indictment. He was convicted and sentenced to five years imprisonment in the Texas Department of Corrections.

June 14, 1991

A hearing was conducted concerning the appellant surety company's petition for a bill of review and special bill of review and a hearing was conducted on the amended judgment nisi forfeiting Gonzales' personal recognizance bond. Notwithstanding the disposition and conviction on Gonzales' criminal case and notwithstanding the state's insistence that the bail bond company pay $10,000

on the forfeiture of the surety bond, the state dismissed it's cause of action against Gonzales on the $ 10,000 personal recognizance bond, presumably because of an uncollectability factor. Appellant surety's petition [**4] for bill of review and special bill of review was denied.

The procedural vehicle by which the appellant surety sought relief is found in *article 22.17(a) of the Texas Code of Criminal Procedure:*

Not later than two years after the date a final judgment is entered in a bond forfeiture proceeding, the surety on the bond may file with the court a special bill of review. A special bill of review may include a request, on equitable grounds, that the final judgment be reformed and that all or part of the bond amount be remitted to the surety, after deducting the costs of court, any reasonable costs to the county for the return of the principal, and the interest accrued on the bond amount from the date of forfeiture. The court in its discretion may grant or deny the bill in whole or in part.

A surety also has a right to an equitable proceeding through the procedure of a general bill of review. *Williams v. State, 670 S.W.2d 717, 722* (Tex. App.--San Antonio 1984), *aff'd as modified 707 S.W.2d 40 (Tex. Crim. App. 1986).* An original petition for a general bill of review must be brought within four years after the date the cause

of action accrued. *TEX. CIV. PRAC. REM. CODE* [**5] *ANN. § 16.051* (Vernon 1986) (residual limitations period). A general bill of review proceeding requires a petitioner to prove (1) a meritorious defense, (2) which the party was prevented from making by the opposite party (3) unmixed with any fault or negligence of the petitioner's own. *Alexander v. Hagedorn, 148 Tex. 565, 568-69, 226 S.W.2d 996, 998 (1950).*

Apparently, the state convinced the trial judge that the general bill of review requirements must be applied to article 22.17, the statutory special bill of review. We are persuaded, however, that such is not the case and hold that a statutory bill of review petitioner under article 22.17 need not conform to the rules of the equitable practice applicable to bills of review and is not limited by those restrictions. *See Westchester Fire Ins. Co. v. Nuckols, 666 S.W.2d 372, 374-375* (Tex. App.--Eastland 1984, writ ref'd n.r.e.) (citing *Norton v. Cheney, 138 Tex. 622, 161 S.W.2d 73, 74 (1942))*; *see also Pure Oil Co. v. Reece, 124 Tex. 476, 479, 78 S.W.2d 932, 934 (1935).* Further, we presume the legislature intended to abrogate the *Alexander v. Hagedorn* general bill of review requirements when it passed article [**6] 22.17 in 1987. Accordingly, a petitioner under article 22.17 is not required to allege and prove the *Alexander v. Hagedorn* elements of a meritorious defense which could not be presented because of conduct by the

opposing party unmixed with any fault or negligence of the petitioner's own.

On the other hand, a special bill of review proceeding under article 22.17 should take into account that the object and purpose of bail is to secure the presence of the accused for disposition of the criminal charges against him and consider other factors including, but not necessarily limited to the following:

1) a bail bond is not punitive, nor is it intended to be a substitute for a fine or [*382] a revenue device to enrich the government's coffers. *See Carbo v. United States, 7 L. Ed. 2d 769, 82 S. Ct. 662, 665 (1962)*; *United States v. Bass, 573 F.2d 258, 260 (5th Circ. 1978)*; *Trammel v. State, 529 S.W.2d 528, 529 (Tex. Crim. App. 1975)*.

2) The government's cost and inconvenience in regaining custody.

3) The delay caused by the principal's failure to appear.

4) The willfulness of the principal's breach of the bond conditions. 5) The public [**7] interest in insuring the principal's appearance.

6) The participation of the surety in rearresting the principal. 7) The prejudice suffered by the government. [1]

1

*See, e.g., United States v. Cervantes, 672 F.2d 460, 461 (5th Cir. 1982)*; *United States v. Parr, 594 F.2d 440, 444 (5th Cir. 1979)*;

*United States v. Mizani, 605 F. 2d 739, 740 (4th Cir. 1979)*; *Johnson v. State, 172 Tex. Crim. 624, 361 S.W.2d 574, 575-76 (Tex. Crim. App. 1961), cert. denied, 371 U.S. 828, 9 L. Ed. 2d 66, 83 S. Ct. 20 (1962)*; *Ricard v. State, 171 Tex. Crim. 456, 350 S.W.2d 938, 938-40 (Tex. Crim. App. 1961)*; *Williams v. State, 159 Tex. Crim. 443, 265 S.W.2d 92, 94 (Tex. Crim. App. 1954)*.

In applying these factors to the case before us, the record reflects the following:

1) There is no evidence in the record regarding any cost or inconvenience to the state in regaining custody of Gonzales.

2) A brief thirty-four day delay was occasioned by Gonzales' failure to appear.

[**8] 3) There apparently was no evidence of any willfulness of the breach of conditions in view of the undisputed fact that Mr. Gonzales was given a personal recognizance bond three days after his rearrest and in view of the state's decision not to pursue a $ 10,000 judgment against Mr. Gonzales on his personal recognizance bond.

4) The public interest in law enforcement was served by Mr. Gonzales' quick reapprehension.

5) The government suffered no prejudice in prosecuting the criminal case against Mr. Gonzales and, in fact,

the appellant surety was the party who located Mr. Gonzales in the Nueces County Jail and informed Bexar County authorities.

We are also troubled by the apparent double standard of due process applied by the state to Mr. Gonzales and the appellant surety. On the same day that the state vigorously pursued the $ 10,000 judgment against the appellant surety, it filed a motion for nonsuit as to Mr. Gonzalez' $ 10,000 obligation and said:

Plaintiff [THE STATE] no longer desires to prosecute [its] suit against Rudolfo L. Gonzales, who is principal and surety on this [personal bond] as defendant Rudolfo L. Gonzales has been returned to custody [**9] and the case is closed, *therefore the purpose of the [personal bond] has been satisfied.* (emphasis added).

The rationale for not pursuing a $ 10,000 judgment against Mr. Gonzales could and should equally be applied to the appellant surety. The only apparent difference between the appellant surety and Mr. Gonzales is that the appellant

surety is able to pay the $ 10,000 to the government. We hold that equity, due process and basic concepts of fairness require that Chapter 22 of the Texas code of criminal Procedure be applied similarly to surety bonds and personal recognizance bonds alike.

Accordingly, we sustain the appellant surety's point of error. There is authority for the proposition that an appropriate remittitur can be ordered by the appellate court. *Johnson v. State, 361 S.W.2d at 575-76*; *Ricard v. State, 350 S.W.2d at 938-40*; *Williams v. State, 265 S.W.2d at 95*. Taking into account the requirements of article 22.17 concerning deduction for court costs, costs for returning Gonzales to Bexar county and the interest accrued on the bond from the date of forfeiture to the date of rearrest (thirty two days), we order that the judgment of the trial [**10] court be reformed to reflect a remittitur of $ 9,500. As modified, the judgment of the trial court is affirmed.

FRED BIERY,

Justice



**GRIMES COUNTY BAIL BOND BOARD, Appellant v.
SONNY ELLEN D/B/A SONNY ELLEN BAIL BONDS,
Appellee**

**NO. 14-06-00906-CV, NO. 14-06-00907-CV**

**COURT OF APPEALS OF TEXAS, FOURTEENTH
DISTRICT, HOUSTON**

**267 S.W.3d 310; 2008 Tex. App. LEXIS 5489**

**July 22, 2008, Judgment Rendered
July 22, 2008, Opinion Filed**

**SUBSEQUENT HISTORY:** Petition for review filed by, 10/15/2008

**PRIOR HISTORY:** [**1]
On Appeal From The 12th District Court, Grimes County, Texas. Trial Court Cause No. 30,088 and 30,140.
*Ellen v. Brazos County Bail Bond Bd., 127 S.W.3d 42, 2003 Tex. App. LEXIS 6159 (Tex. App. Houston 14th Dist., 2003)*

**COUNSEL:** For APPELLANTS: Jon Christopher Fultz, Anderson, TX.

For APPELLEES: Lane D. Thibodeaux, Bryan, TX.

**JUDGES:** Panel consists of Chief Justices Hedges, and Justices Brown and Boyce.

**OPINION BY:** William J. Boyce

**OPINION**

[*313] The Grimes County Bail Bond Board suspended and later revoked Sonny Ellen's bail bond surety license after he failed to disclose unpaid judgments for bail bond forfeitures in his license application. In a *de novo* appeal, the trial court found that Ellen had failed to pay judgments but nonetheless reinstated his license. Because Ellen had unpaid judgments at the time of trial, the trial court abused its discretion in reinstating his license. We therefore reverse the trial court's judgment and remand for further proceedings consistent with this opinion.

**BACKGROUND**

The Board issued a bail bond surety license to Sonny Ellen in April 2005. Two months later, the Board suspended Ellen's license for failing to pay or supersede 26 judgments and instructed him to pay all outstanding judgments to avoid license revocation. In 23 of those cases, Ellen filed special bills of review in which he sought to reduce the amounts owed. [1] On July 8, 2005, those special bills were denied. Ellen subsequently paid most -- but [**2] not all -- of the outstanding judgments.

1 Filing a special bill of review does not obviate the bondsman's obligation to pay or supersede a forfeiture judgment. *See Tex. Occ. Code Ann. § 1704.204(a)* (Vernon 2004); *In re Casteneda, No. 04-04-00152-CV, 2004 Tex. App. LEXIS 2552, 2004 WL 572355, at \*1 (Tex. App.--San Antonio March 24, 2004, orig. proceeding [mand. denied]) (mem. op.).*

The Board revoked Ellen's license on July 15, 2005 for failing to pay judgments pursuant to *Occupations Code sections 1704.204* [\*314] and *1704.252.* [2] Ellen appealed the Board's decision to the district court, which conducted a trial *de novo* on appeal. The court found that Ellen failed to pay judgments in accordance with *Occupations Code section 1704.204,* which is a stated reason for suspending or revoking a bail bond surety license. *See Tex. Occ. Code Ann. § 1704.252(8)* (Vernon 2004). The court interpreted *section 1704.252* to provide discretion to reinstate, which it employed to reinstate Ellen's license. The Board appealed. [3]

2 The Board also concluded that Ellen made a false statement on his license application. The trial court noted on the record that Ellen had answered a license application question incorrectly, but those comments were [**3] not reduced to a formal finding of fact; therefore, we will not consider them. *See Stevens v. Snyder, 874 S.W.2d 241, 243 (Tex. App.--Dallas 1994, writ denied).* The record does not demonstrate that the Board requested an additional finding of fact on this ground, and the trial court's lack of such finding therefore is not preserved for review. *See Robles v. Robles, 965 S.W.2d 605, 611 (Tex. App.-- Houston [1st Dist.] 1998, pet. denied).*

3 Ellen separately appealed the Board's rulings suspending and later revoking his license. The trial court consolidated those two *de novo* proceedings, and we resolve both together.

## STANDARD OF REVIEW

A bail bond licensee may appeal a board order suspending or revoking a license by filing a petition in the trial court. *Tex. Occ. Code Ann. § 1704.255(a)* (Vernon 2004). The trial court is to review the appeal "by trial de

novo in the same manner as an appeal from a justice court to a county court." *Tex. Occ. Code Ann. § 1704.256* (Vernon 2004). Therefore, in the district court both sides present evidence to the trial judge for a determination on the evidence introduced. *See Harris County Bail Bond Bd. v. Burns, 881 S.W.2d 61, 62 (Tex. App.--Houston [14th Dist.] 1994, writ denied).* [**4] The board's decision to revoke a license enjoys no deference during the *de novo* appeal. *See id.* Instead, the trial court is vested with full power to determine the issues and rights of all parties, and to try the case as though it had been filed originally in that court. *See Harris County Bail Bond Bd. v. Blackwood, 2 S.W.3d 31, 33 (Tex. App.--Houston [1st Dist.] 1999), rev'd on other grounds, 41 S.W.3d 123 (Tex. 2001).* [4]

> 4    Although the Texas Supreme Court reversed *Blackwood,* it nonetheless upheld the principle that a board's decision is entitled to no deference. *See Harris County Bail Bond Bd. v. Blackwood, 41 S.W.3d 123, 127 (Tex. 2001)* ("[I]n a de novo proceeding it was necessary that the [evidence] required by the statute be before the trial court, which was required to pass on [the license] application ***without regard to the Board's decision.***") (emphasis added).

We review the trial court's factual findings under the same standards that would be used in reviewing the legal or factual sufficiency of the evidence supporting a jury's answer to a jury question. *Blackwood, 2 S.W.3d at 33* (citing *Catalina v. Blasdel, 881 S.W.2d 295, 297 (Tex. 1994)).* In reviewing the trial court's conclusions [**5] of law, we will uphold on any legal theory supported by the evidence. *Burns, 881 S.W.2d at 62.*

**ANALYSIS**

The governing statute provides that "[a]fter notice and hearing, a board may revoke or suspend a license if the license holder ... fails to pay a judgment in accordance with *Section 1704.204.*" *Tex. Occ. Code Ann. § 1704.252(8). Section 1704.204* requires a bondsman to pay a final judgment on a bail bond forfeiture not later than the 31st day after the date of the final judgment unless such judgment [*315] has been appealed, in which case the bondsman must deposit with the court either cash or a supersedeas bond in the amount of the judgment. *See id. § 1704.204(a).*

In 1994, we examined the predecessor statute to *section 1704.252* and concluded that a trial court may not renew the license of a bondsman who has failed to pay or supersede judgments arising from bond forfeitures. *Burns, 881 S.W.2d at 64.* The only choices in that circumstance are revocation or suspension. *See generally id. at 64-65* (applying the grounds for revocation or suspension to license renewal). We rejected a suggested interpretation that would have allowed a board or trial

court to permit persons to work as bondsmen even though [**6] they were statutorily disqualified from doing so. *See id. at 63*. We concluded that such a statutory interpretation would defeat the legislative purpose of protecting the public's interest in securing the appearance of the accused. *See id.; In re Canales, 52 S.W.3d 698, 702 (Tex. 2001)* (orig. proceeding) (court may consider the statute's objectives and the consequences of a particular construction).

Almost a decade later, we concluded that *Burns* survived the Legislature's 1999 recodification of the bail bond act. *See Ellen v. Brazos County Bail Bond Bd., 127 S.W.3d 42, 47-48 (Tex. App.--Houston [14th Dist.] 2003, no pet.)*. We presume that the Legislature knew of our interpretation in *Burns* when it recodified the statute. *See Coastal Indus. Water Auth. v. Trinity Portland Cement Div., 563 S.W.2d 916, 918 (Tex. 1978)*. The recodified statute carried forward the same language we interpreted in *Burns,* thereby indicating a legislative adoption of our prior construction. *See id.*

Although *Burns* involved license renewal rather than suspension or revocation, the legal justifications for refusing to renew a license apply with equal force to suspension or revocation. *See id. at 64-65.* Ellen candidly [**7] acknowledges that, under *Burns's* interpretation of the bail bond act, the trial court could not reinstate his license; its only choices were to suspend or

revoke his license based upon the presence of unpaid, unsuperseded judgments. He urges us to overrule *Burns,* contending that the decision violates the Code Construction Act's definition of the term "may;" defeats the purpose of *de novo* appeal; and renders an accompanying statutory provision meaningless.

We decline the invitation to overrule *Burns,* and we re-affirm that the bail bond act gives a trial court discretion to choose between suspending or revoking the license of a bondsman who has unpaid judgments at the time of the *de novo* hearing. The trial court does not have discretion to reinstate a license because the statute does not provide this option under these circumstances. We reach this conclusion based not only on the continuing vitality of *Burns,* but also because of the statute's unambiguous language.

### A. Stare Decisis

Given *Burns,* a discussion of *stare decisis* is warranted at the outset. Our prior opinions have continuing authority, even when a party contends that a precedent was incorrectly decided. *See Guest v. Cochran, 993 S.W.2d 397, 404 n.6 (Tex. App.--Houston [14th Dist.] 1999, no pet.).* [**8] We generally adhere to our precedents pursuant to *stare decisis* because consistency promotes efficiency, fairness, and legitimacy. *See Weiner v. Wasson, 900 S.W.2d 316, 320 (Tex. 1995).* If we did not follow our own decisions we would

not be giving due consideration to the settled expectations of litigants because no issue could ever be considered truly resolved. *See id.* In addition, the legitimacy of the [\*316] judiciary rests in significant part "upon a stable and predictable decisionmaking process." *Id.*

*Stare decisis* is strongest in cases involving statutory construction because the Legislature may correct perceived construction errors through statutory amendment. *See Fiess v. State Farm Lloyds, 202 S.W.3d 744, 749-50 (Tex. 2006).* As noted above, the Legislature met after *Burns* was issued and recodified the bail bond act without substantive change. *See Tex. Occ. Code Ann. § 1.001* (Vernon 2004). We therefore presume that the Legislature intended the same construction to continue to apply. *See Fiess, 202 S.W.3d at 749-50.* This presumption underscores that *Burns* was correctly decided.

In light of Ellen's challenge to the correctness and wisdom of *Burns,* however, we do not rely solely upon *stare* [\*\*9] *decisis* in concluding that the trial court lacked discretion to reinstate Ellen's license in the face of unpaid judgments. We reach this decision because we adhere to our precedent, and because this result is dictated by legislative intent reflected in the operative statutory language.

### B. Statutory Construction

In construing a statute, our primary goal is to determine and effectuate legislative intent. *Canales, 52 S.W.3d at 702.* If a statute is clear and unambiguous, we need not resort to rules of construction. *Id.* We may consider, among other things, the statute's objectives and the consequences of a particular construction. *Id.* We read the statute as a whole and interpret it to effectuate every part. *See City of Houston v. Jackson, 42 S.W.3d 316, 319-20 (Tex. App.--Houston [14th Dist.] 2001, pet. dism'd w.o.j.).*

Ellen focuses on the word "may" in the phrase "may revoke or suspend" appearing in *section 1704.252.* Ellen argues that "may" is permissive rather than mandatory so as to give a trial court discretion to reinstate if it so chooses. Ellen stresses that the term "may" signifies "discretionary authority or grants permission or a power." *See Tex. Gov't Code Ann. § 311.016(1)* (Vernon [\*\*10] 2005). This is true as far as it goes -- but it does not go as far as Ellen contends.

The word "may" must be analyzed, but it must not be analyzed in isolation; statutory context must be considered. *See, e.g., Aaron Rents, Inc. v. Travis Cent. Appraisal Dist., 212 S.W.3d 665, 671 (Tex. App.--Austin 2006, no pet.)* ("[W]hether a statute requires the imposition of attorney's fees or vests the trial court with the discretion to decide does not depend exclusively on whether the statute uses the word 'may' or 'shall.'"); *BWI Cos. v. Beck, 910 S.W.2d 620, 623 (Tex. App.--Austin 1995, orig. proceeding [mand. overruled]).*

Additionally, the Code Construction Act does not elevate any particular rule over another. *See Tex. Gov't Code Ann. § 311.003* (Vernon 2005). We note that several other provisions of the *Code Construction Act* support our conclusion in this case, including:

. The entire statute is presumed to be effective. *Id.* § 311.021(2).

. A just and reasonable result is intended. *Id. § 311.021(3).*

. Public interests are favored over private interests. *Id. § 311.021(5).*

. The Court may consider the objects to be attained and the consequences of a particular construction. *Id. § 311.023.*

We agree [**11] that the word "may" vests the trial court with discretion, but that discretion does not encompass reinstatement.

*Section 1704.252*'s key language provides that "a board **may revoke or suspend** a license if the license holder ... fails to pay [*317] a judgment[.]" *Tex. Occ. Code Ann. § 1704.252(8)* (emphasis added). This language is unambiguous. It gives the trial court discretion to choose between revocation and suspension. It does not give the trial court discretion to choose a reinstatement option that is nowhere

mentioned in *section 1704.252*. The word "may" cannot be divorced from its surrounding language to change the statute's meaning, or to add an option the statute does not provide under these circumstances. *See Jones v. Liberty Mut. Ins. Co., 745 S.W.2d 901, 902 (Tex. 1988)*; *see also Morales v. Liberty Mut. Ins. Co., 241 S.W.3d 514, 517-18 (Tex. 2007)* (requiring that statutes be read in context).

*Section 1704.252*'s unambiguous language effectuates the statute's purpose. The bail bond act was intended to ensure the financial security and integrity of bondsmen, "whose business the Act deems to be in the public interest aimed at securing the appearance of the accused." *Burns, 881 S.W.2d at 63*; [**12] *Blackwood, 41 S.W.3d at 128.* Consistent with that purpose, the *Act* -- when read as a whole -- evinces a consistent legislative intent to prevent bondsmen with unpaid judgments from continuing to issue bail bonds. *See, e.g., Code Crim. Proc. Ann. art. 17.11, § 2* (Vernon 2005) (disqualifying defaulting sureties from signing as sureties on additional bonds). Accordingly, license applicants must disclose any unpaid judgments; until such judgments are paid, applicants are expressly barred from licensure. *See Tex. Occ. Code Ann. § 1704.154(b), (d).* Had Ellen disclosed the unpaid judgments, the Board would have been required to deny his application. *See Blackwood, 41 S.W.3d at 126* ("The Act therefore makes all application requirements mandatory.").

We will not embrace an interpretation of *section 1704.252* that ignores unpaid judgments foreclosing Ellen's licensure.

Enforcement of the bail bond act's unambiguous provisions is important for the proper functioning of the bail mechanism. Bail is the security a criminal defendant gives to evidence his promise that he will appear and answer the accusations brought against him. *Tex. Code Crim. Proc. Ann. art. 17.01* (Vernon 2005). The primary purpose [**13] of a bail bond is to secure the presence of the defendant in court for trial on the offense with which he has been charged. *McKenna v. State, 247 S.W.3d 716, 719 (Tex. Crim. App. 2008)*.

Bail bonds are contracts between the surety and the State of Texas. *Reyes v. State, 31 S.W.3d 343, 345 (Tex. App.--Corpus Christi 2000, no pet.)*. The contract consists of the surety's promise that the defendant will appear before the court. *See id. at 346*. Forfeiture judgments recognize that the State may incur costs or suffer inconvenience in re-arresting an accused who fails to appear. *See McKenna, 247 S.W.3d at 719*. While bail bonds are neither punitive nor a substitute for fines or revenue devices, they protect the public's interest by ensuring the defendant's appearance and encouraging the surety's participation in re-arrest when the defendant does not appear. *See Gramercy Ins. Co. v. State, 834 S.W.2d 379, 381-82 (Tex. App.--San Antonio 1992, no writ)*.

Consistent with this purpose, a proper bail bond must contain the surety's binder that the defendant will appear to answer the charges. *Tex. Code Crim. Proc. Ann. art. 17.08, § 2*. An officer who accepts a bail bond must verify the sufficiency of the [**14] security offered. *Id. art 17.11, § 1*; *art. 17.13*. Those who would act as sureties must pass several eligibility requirements, including possession of sufficient financial resources; experience in the bail bond business; and education from an accredited [*318] institution of higher learning. *See Tex. Occ. Code Ann. § 1704.152*.

After becoming licensed, a bondsman is prohibited from writing bail bonds totaling more than ten times the value of the deposited security. *Id. § 1704.203(a)*. Further, a bondsman may not execute additional bail bonds if the amount of liability on pending judgments nisi equals or exceeds twice the amount of the deposited security. *Id. § 1704.203(c)*. A bondsman must promptly pay all forfeiture judgments not later than the 31st day after the date of the judgment, unless superseded on appeal. *Id. § 1704.204(a)*. A licensing board that learns of unpaid final judgments must immediately notify the sheriff, who is prohibited from accepting any bonds from that surety until the judgments have been paid. *See id. § 1704.2535*. These enforcement provisions protect against a bondsman's insolvency. *Font v. Carr, 867 S.W.2d*

*873, 880 (Tex. App.--Houston [1st Dist.] 1993, writ dism'd w.o.j.).*

In [**15] light of this detailed structure, the existence of multiple unpaid judgments is no mere technicality. A bondsman's accumulation of unpaid judgments undermines the entire bail process. The Legislature consistently has spoken to prevent defaulting sureties from continuing to act as bail bondsmen. Interpreting *section 1704.252* to permit reinstatement in the face of unpaid judgments would eviscerate legislative intent to prevent bondsmen in default from continuing to issue bail bonds. *See Burns, 881 S.W.2d at 63.*

## C. Trial De Novo

Ellen contends that continued adherence to *Burns* is incompatible with judicial review of a board's decision by trial *de novo* in the district court. *See Tex. Occ. Code Ann. §§ 1704.255(a), 1704.256.* The basis for this contention is not clear. The district court's power to conduct a trial "de novo," that is, a "trial anew," vests the court with full power to determine the issues and parties' rights, and to try the case as though suit had been filed originally in that court. *See Lone Star Gas Co. v. State, 137 Tex. 279, 153 S.W.2d 681, 692 (Tex. 1941)*; *Blackwood, 2 S.W.3d at 33.* The trial court, as the trier of fact, weighs the evidence and assesses credibility. *See Jones v. Tarrant Util. Co., 638 S.W.2d 862, 866 (Tex. 1982).* [**16] The Board's factual findings, and ultimate

determination to revoke, therefore enjoy no deferential treatment. *See Burns, 881 S.W.2d at 62.*

But the power to try a case *de novo* does not confer unbridled discretion to pick an outcome the statute does not specify for a bondsman with unpaid judgments. *Section 1704.252* limits the trial court's options if it finds one of the enumerated statutory violations. *See id.* (providing that a license may be revoked or suspended if the bondsman is found to have committed one of the listed violations). The terms "revoke" and "suspend" are not interchangeable. A suspended license is subject to reinstatement if the violation that led to suspension can be cured. *See, e.g., Tex. Occ. Code Ann. § 1704.253(a)* (providing for reinstatement of a suspended license after the deposit of additional security). By contrast, a bondsman whose license has been revoked must reapply for a new license. *See, e.g., Austin v. Harris County Bail Bond Bd., 756 S.W.2d 65, 66 (Tex. App.--Houston [1st Dist.] 1988, writ denied).*

Allowing a trial court to re-hear the evidence and reach its own determination while confining its options within the boundaries of *section 1704.252* harmonizes [**17] statutory language with legislative intent to prevent sureties from issuing bail bonds while in default of forfeiture judgments. [*319] The trial court need not make the same ruling as the licensing board. For example, although a board may revoke a license for unpaid judgments, the trial

court may opt to consider mitigating factors and decide upon suspension pending payment of the outstanding judgments. Moreover, if the license holder can cure a *section 1704.252* violation at the time of the *de novo* hearing by paying outstanding judgments, the license **then** may be reinstated because *section 1704.252* no longer would require suspension or revocation. In short, our interpretation does not conflict with the concept of *de novo* review.

### D. Role of Section 1704.253

Ellen argues that our interpretation of *section 1704.252* is erroneous because it renders meaningless an accompanying provision, *section 1704.253*. We disagree.

*Section 1704.252* provides for "Discretionary License Suspension or Revocation," while *section 1704.253* provides for "Mandatory License Suspension or Revocation." [5] Ellen contends that interpreting *section 1704.252* to require suspension or revocation -- and to exclude reinstatement -- [**18] makes *section 1704.253* meaningless because this latter provision also requires suspension or revocation. This argument fails to recognize that *sections 1704.252* and *1704.253* address different circumstances.

---

5 The title of a section does not limit or expand the statute's meaning. *See Tex. Gov't Code Ann.*

§ *311.024*. Accordingly, we will not consider the title when interpreting the statute.

Under *section 1704.252(8)*, the board "may revoke or suspend a license" if the license holder fails to pay or supersede a judgment. Under *section 1704.253(a)*, the board "shall immediately suspend a license" if the license holder fails to maintain the aggregate security required under *section 1704.160*. Under *section 1704.253(b)*, the board "shall revoke a license" if the license holder fails to maintain the aggregate security required under *1704.160*, and also fails to pay or supersede a judgment.

*Section 1704.252(8)* vests the trial court with discretion to suspend or revoke a license if the bondsman fails to pay or supersede a judgment. *See Tex. Occ. Code Ann.* § *1704.252(8)*. In contrast, *section 1704.253(a)* gives the trial court no discretion if the bondsman fails to maintain the aggregate security required [**19] under *section 1704.160*; suspension is the only option. Similarly, *section 1704.253(b)* gives a trial court no discretion if the bondsman fails to pay or supersede a judgment, and also fails to maintain the aggregate security required under *section 1704.160*. In that latter circumstance -- which couples an unpaid and unsuperseded judgment with insufficient aggregate security -- revocation is the only option. *See id.* § *1704.253(b)*. Because *sections 1704.252* and *1704.253* address different circumstances, our interpretation of *section 1704.252* does not render *section*

*1704.253* meaningless. *See Helena Chem. Co. v. Wilkins, 47 S.W.3d 486, 493 (Tex. 2001)*.

**CONCLUSION**

*Section 1704.252* vests the trial court with the discretion to revoke or suspend a bondsman's license when there are unpaid judgments. Because the trial court found that Ellen had unpaid judgments but nevertheless reinstated his license, we must reverse. The Board asks that we render judgment in its favor. However, we believe that remand is appropriate. We remand these proceedings to the trial court for a determination as to whether Sonny Ellen still has unpaid judgments against him. If so, the trial court can decide [*320] whether to revoke [**20] Ellen's license or suspend it until all outstanding judgments have been paid.

Accordingly, we reverse the July 18, 2006 judgments in cause numbers 30,088 and 30,140, and remand to the trial court for further proceedings consistent with this Opinion.

/s/ William J. Boyce

Justice

Judgment Rendered and Opinion filed July 22, 2008.



## KPMG Peat Marwick, Petitioner v. Harrison County Housing Finance Corp., Respondent

### No. 97-0729,

### SUPREME COURT OF TEXAS

### *988 S.W.2d 746*; *1999 Tex. LEXIS 39*; *42 Tex. Sup. J. 428*

### October 20, 1998, Argued
### March 25, 1999, Delivered

**PRIOR HISTORY:** [**1] On Petition for Review from the Court of Appeals for the Sixth District of Texas.

**DISPOSITION:** Court of appeals' judgment reversed and judgment rendered that HCH take nothing.

**COUNSEL:** FOR PETITIONER: Mountz, Mr. Timothy W., Baker & Botts, Dallas, TX.

FOR RESPONDENT: Grajczyk, Mr. Gregory P., Boos Law Office, Milbank, SD.

**JUDGES:** Justice Enoch delivered the opinion of the Court.

**OPINION BY:** CRAIG T. ENOCH

**OPINION**

[*747] Justice Enoch delivered the opinion of the Court.

We are asked to decide whether Harrison County Housing Finance Corporation's (HCH) claims against KPMG Peat Marwick, LLP for violations of the Deceptive Trade Practices Act and negligence are barred by the two-year statute of limitations. The trial court granted summary judgment for Peat Marwick on all of HCH's claims. But the court of appeals reversed the trial court's summary judgment on the DTPA and negligence claims and remanded these for trial. [1]

1  *948 S.W.2d 941.*

Applying the discovery rule, the court of appeals held that neither claim was time-barred. It reasoned that Peat Marwick had not presented conclusive evidence that HCH discovered or in the exercise of reasonable diligence should have discovered the wrongful [**2] act

which allegedly caused its injury more than two years before HCH filed suit. [2]

2  *Id.at 947.*

To the contrary, we conclude that Peat Marwick has conclusively established that HCH's claims against Peat Marwick accrued more than two years before suit was filed. Accordingly, we reverse the court of appeals' judgment on both the DTPA and negligence claims and render judgment that HCH take nothing.

From 1980 to 1990, Peat Marwick provided accounting and auditing services to HCH for a series of bonds HCH had issued. In addition, Peat Marwick was to ensure that the trustee for the bonds, First Interstate Bank of California, complied with the trust indenture.

Under the trust indenture, one of First Interstate's duties as trustee was overseeing a capital reserve fund established to pay principal or to redeem bonds. And during the period of the auditing services, specifically in 1985, First Interstate hired, on its own behalf, a partner from Peat Marwick to prepare a special procedures report about the trust [**3] assets. But Peat Marwick did not tell HCH about this dual representation.

On February 1, 1993, HCH filed suit against First Interstate and one of its shareholders, alleging breach of fiduciary duty, breach of contract, negligence, and gross negligence. HCH

alleged that in February 1989, First Interstate prematurely sold assets in the capital reserve fund, resulting in a loss in excess of $ 621,000 when the bonds were refunded in December 1991. First Interstate and its shareholder moved for summary judgment on several grounds, including that the bank had not mismanaged the trust funds, that HCH was well informed of the bank's actions through monthly reports, and that HCH's claims were barred by the applicable [*748]  statutes of limitations. Without specifying the grounds, the trial court granted First Interstate's motion for summary judgment. HCH did not appeal.

On October 1, 1993, while the First Interstate lawsuit was still pending, HCH learned about Peat Marwick's 1985 agreement with First Interstate and that Peat Marwick's 1985 audit of First Interstate's records had revealed irregularities in First Interstate's accounting of the trust assets. According to HCH, Peat Marwick informed [**4] First Interstate but not HCH of the irregularities. HCH further claims it then discovered that Peat Marwick had advised First Interstate that the capital reserve fund could be set at an amount lower than what the trust indenture required. And HCH asserts that Peat Marwick did not report that advice to HCH.

HCH sued Peat Marwick in federal court on July 14, 1995, but the case was dismissed for lack of subject matter jurisdiction. HCH then filed suit in state

court. For this appeal, Peat Marwick concedes that July 14, 1995, is the applicable date to determine whether HCH's claims were barred when filed. [3]

> 3    **See***Tex. Civ. Prac. & Rem. Code § 16.064(a).*

In this case, HCH alleged that Peat Marwick, as the trust's auditor, either negligently or intentionally failed to disclose First Interstate's mismanagement of the trust. HCH further alleged causes of action for breach of warranty (which is not part of this appeal) and violations of the DTPA.

In support of its motion for summary judgment on limitations grounds,  [**5] Peat Marwick attached HCH's original petition in the suit against First Interstate. That petition sought recovery for the same injury -- the premature selling of the fund assets in 1989 resulting in a loss in excess of $ 621,000 -- that HCH alleges in this suit was caused by Peat Marwick's wrongful conduct. Peat Marwick contends that the petition against First Interstate demonstrates that HCH knew of its claim no later than February 1, 1993. Apparently in response, HCH amended its petition to allege that not until October 1, 1993, did it learn of Peat Marwick's role in the disputed financial irregularities. But it does not appear that HCH filed a formal response to Peat Marwick's motion for summary judgment or produced any evidence to defeat the motion. As mentioned, the trial court granted summary judgment.**I.**

**Summary Judgment Standard of Review** The standard for reviewing a summary judgment under *Texas Rule of Civil Procedure 166a(c)* is whether the successful movant at the trial level carried its burden of showing that there is no genuine issue of material fact and that judgment should be granted as a matter of law. [4] In conducting our review, we take as true all evidence favorable [**6]  to the nonmovant, and we make all reasonable inferences in the nonmovant's favor. [5]

> 4    **See, e.g., *Lear Siegler, Inc. v. Perez***, *819 S.W.2d 470, 471 (Tex. 1991)*; ***Nixon v. Mr. Property Management Co.***, *690 S.W.2d 546, 548-49 (Tex. 1985).*
> 5    **See *Nixon***, *690 S.W.2d at 548-49.*

A defendant moving for summary judgment on the affirmative defense of limitations has the burden to conclusively establish that defense. [6] Thus, the defendant must (1) conclusively prove when the cause of action accrued, and (2) negate the discovery rule, if it applies and has been pleaded or otherwise raised, by proving as a matter of law that there is no genuine issue of material fact about when the plaintiff discovered, or in the exercise of reasonable diligence should have discovered the nature of its injury. [7] If the movant establishes that the statute [**7]  of limitations bars the action, the nonmovant must then adduce summary

judgment proof raising a fact issue in avoidance of the statute of limitations. [8]

6 **See** *Velsicol Chem. Corp. v. Winograd*, 956 S.W.2d 529, 530 (Tex. 1997).

7 **See** *Burns v. Thomas*, 786 S.W.2d 266, 267 (Tex. 1990); *Woods v. William M. Mercer, Inc.*, 769 S.W.2d 515, 518 n.2 (Tex. 1988).

8 **See** *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678 (Tex. 1979).

## [*749] II. Accrual of HCH's DTPA Claim

A DTPA claim is subject to a two-year statute of limitations. The claim accrues when "the consumer discovered or in the exercise of reasonable diligence should have discovered [**8] the occurrence of the false, misleading, or deceptive act or practice." [9] Thus, the discovery rule applies to HCH's DTPA claim. [10] We note that effective September 1, 1995, the Legislature amended the DTPA to exempt professional services with some exceptions. But because this suit was originally filed before that date, the 1995 amendments do not apply. [11]

9 *Tex. Bus. & Com. Code § 17.565.*

10 **See** *Burns*, 786 S.W.2d at 267; **see also** *Murphy v. Campbell*, 964 S.W.2d 265, 271 (Tex. 1997).

11 **See** *Tex. Bus. & Com. Code § 17.49(c).*

Contending that during the relevant time period Peat Marwick had worked for First Interstate independently as well as for [**9] HCH, HCH argues that its claims against Peat Marwick did not accrue until October 1, 1993, when it learned through discovery in the First Interstate suit that Peat Marwick knew of financial irregularities in the bond issue but failed to report them to HCH. In agreeing with HCH, the court of appeals erroneously concluded that in recent decisions this Court employed a "new formulation" of the discovery rule. [12] The court of appeals held that under this "new formulation," a claim does not accrue until plaintiff knows not only of the injury, but the specific nature of each wrongful act that may have caused the injury. [13] This is incorrect. The rule in those cases was, as it is in this one, that accrual occurs when the plaintiff knew or should have known of the wrongfully caused injury. [14]

12 **See** *948 S.W.2d at 946* (citing *Diaz v. Westphal*, 941 S.W.2d 96, 99 (Tex. 1997); *S.V. v. R.V.*, 933 S.W.2d 1, 4 (Tex. 1996)).

13 See *948 S.W.2d at 947.*

[**10]

14 **See** *Murphy*, 964 S.W.2d at 271; *Diaz*, 941 S.W.2d at 99; *S.V.*, 933 S.W.2d at 4; **see also** *Childs v. Haussecker*, 974 S.W.2d 31, 40 (Tex. 1998); *Russell v. Ingersoll*

*Rand Co.*, 841 S.W.2d 343, 344 n.3 *(Tex. 1992)*; ***Moreno v. Sterling Drug, Inc.,*** *787 S.W.2d 348, 351 (Tex. 1990).*

The summary judgment evidence established that the wrongful injury HCH alleges it suffered is the loss of over $ 621,000 in December 1991 when it refunded the bonds following the premature sale in 1989 of the reserve fund assets. Significantly, HCH sued First Interstate over this precise injury in early 1993, less than two years later. Indisputably, HCH was aware by then of its injury and that its injury was caused by the wrongful conduct of another.

The loss from the premature sale of the fund assets should have caused HCH to investigate not only the possibility that First Interstate had mismanaged the fund assets, as HCH apparently did because it sued First Interstate, but also Peat Marwick's possible [**11] involvement in the mismanagement and loss. HCH had hired Peat Marwick to do annual trust asset audits, including the reserve fund, to ensure compliance with the trust indenture. Therefore, the loss should have caused HCH to also investigate why its auditor, Peat Marwick, did not discover or report the mismanagement.

As an independent ground to defeat summary judgment, HCH asserts that Peat Marwick fraudulently concealed its wrongful conduct, and limitations did not begin to run until HCH knew or should have known of its injury. HCH also asserts that its pleading is sufficient summary judgment evidence of the affirmative defense of fraudulent concealment to defeat Peat Marwick's summary judgment motion. In both respects, HCH is incorrect.

First, a party asserting fraudulent concealment as an affirmative defense to the statute of limitations has the burden to raise it in response to the summary judgment motion [15] and to come forward with summary judgment evidence raising a fact issue on each element of the fraudulent concealment defense. [16] A mere pleading does not satisfy either [*750] burden. [17] Thus, even assuming that HCH pled fraudulent concealment as an affirmative defense to Peat [**12] Marwick's answer pleading limitations, HCH still had to respond to Peat Marwick's summary judgment motion. There is no such response in the record. Therefore, HCH did not carry its burden to both plead the defense and support it with summary judgment evidence.

15   **See***Tex. R. Civ. P. 166a(c)*; ***Hudson v. Wakefield***, *711 S.W.2d 628, 630 n.1 (Tex. 1986)*; ***City of Houston***, *589 S.W.2d at 679.*

16   **See *American Petrofina, Inc. v. Allen***887 S.W.2d 829, 830 (Tex. 1994)*; ***Nichols v. Smith***, *507 S.W.2d 518, 521 (Tex. 1974).*

17   **See *City of Houston***, *589 S.W.2d at 678.*

Second, when a defendant has fraudulently concealed the facts forming the basis of [**13] the plaintiff's claim,

limitations does not begin to run until the claimant, using reasonable diligence, discovered or should have discovered the injury. [18] Because Peat Marwick's summary judgment evidence conclusively established that HCH discovered its injury more than two years before it sued Peat Marwick, Peat Marwick is entitled to summary judgment. As with the discovery rule, once HCH knew that it had been injured by fund mismanagement, it should have investigated why its auditor, Peat Marwick, had failed to discover or report the mismanagement to HCH. Accordingly, fraudulent concealment pleadings do not rescue HCH's DTPA claim.**III. Accrual of HCH's Negligence Claim**

18 **See *Computer Assocs. Int'l, Inc. v. Altai, Inc.*,** *918 S.W.2d 453, 455 (Tex. 1995);* ***Estate of Stonecipher v. Estate of Butts**, 591 S.W.2d 806, 809 (Tex. 1979).*

Under *Section 16.003 of the Civil Practice and Remedies Code*, negligence claims, including accounting malpractice, must be brought "not later than two years after [**14] the day the cause of action accrues." [19] Because the statute does not define or specify when accrual occurs, we look to the common law to determine when a cause of action accrues. [20]

19 *Tex. Civ. Prac. & Rem. Code § 16.003(a);* **see also *Murphy**, 964 S.W.2d at 270.*

20 **See *Childs**, 974 S.W.2d at 36;* ***Murphy**, 964 S.W.2d at 270.*

HCH argues that its negligence claim against Peat Marwick did not accrue until it learned through discovery in the First Interstate suit of Peat Marwick's wrongful conduct. We disagree.

This Court has never considered whether the discovery rule applies to auditing malpractice claims. Assuming without deciding that it does, however, the summary judgment evidence establishes that HCH knew or should have known of its negligence claim more than two years before it filed suit. HCH relies on the same wrongfully [**15] caused injury asserted in the DTPA cause of action to claim that Peat Marwick was negligent. And as we have mentioned, the evidence conclusively establishes that HCH knew of the reserve fund's mismanagement, at least, no later than when it filed the first suit against First Interstate, February 1, 1993. Consequently, HCH's negligence claim is also time-barred. Furthermore, as with HCH's DTPA claims, its fraudulent concealment pleadings do not rescue the negligence claim.

Peat Marwick has established the affirmative defense of limitations by conclusively showing that HCH's causes of action accrued more than two years before HCH filed suit. As a result, limitations bars HCH's claims for DTPA violations and negligence and Peat Marwick is entitled to summary judgment. Therefore, we reverse the

court of appeals' judgment and render judgment that HCH take nothing.

Craig T. Enoch, Justice

Opinion delivered: March 25, 1999



**FELIX MICHAEL KUBOSH, Appellant v. THE STATE OF TEXAS, Appellee**

**NO. 01-04-00268-CV**

**COURT OF APPEALS OF TEXAS, FIRST DISTRICT, HOUSTON**

*177 S.W.3d 156; 2005 Tex. App. LEXIS 948*

**February 3, 2005, Opinion Issued**

**SUBSEQUENT HISTORY:** petition for discretionary review dismd *In re Kubosh, 2005 Tex. Crim. App. LEXIS 1140 (Tex. Crim. App., July 27, 2005)* Petition for discretionary review refused by *In re Kubosh, 2005 Tex. Crim. App. LEXIS 1627 (Tex. Crim. App., Sept. 14, 2005)* Motion for rehearing on petition for discretionary review denied by *In re Kubosh, 2005 Tex. Crim. App. LEXIS 1846 (Tex. Crim. App., Oct. 26, 2005)*

**PRIOR HISTORY:** [**1] On Appeal from the 228th District Court. Harris County, Texas. Trial Court Cause No. 904739-A.

**DISPOSITION:** Affirmed.

**COUNSEL:** For Appellant: David A. Furlow, Stacy L. Kelly, Thompson & Knight L.L.P., Houston, TX; Paul Kubosh, Law Offices of Paul Kubosh, Houston, Tx.

For Appellee: Charles A. Rosenthal, Jr., District Attorney - Harris County, Houston, TX; Ms. Juliane Phillips Crow, Houston, TX.

**JUDGES:** Panel consists of Justices Nuchia, Jennings, and Alcala.

**OPINION BY:** Elsa Alcala

**OPINION**

[*157] Appellant, Felix Michael Kubosh, a surety on a bail bond executed for Gustavo Casas, Sr., challenges the trial court's final judgment in favor of the State for the full amount of a $ 75,000 bond plus costs of court, which resulted from Casas's failure to appear in court, as required by the bail bond. In four issues, Kubosh contends that the trial court

erred by rendering judgment in favor of the State. Kubosh contends that the bail bond was invalid as a contract under affirmative defenses recognized by the Rules of Civil Procedure, and therefore, that the agreement was invalid under *Chapter 22 of the Code of Criminal Procedure,* [1] which exonerates the surety from liability if "the bond is, for any cause, not a valid undertaking in law. [**2] " Kubosh also challenges the trial court's failure to order civil discovery concerning the bond forfeiture and the State's extradition policies and procedures. We affirm.

1 *See TEX. CODE CRIM. PROC. ANN. art. 22* (Vernon Supp. 2004-2005).

## Background

Casas was charged by indictment with felony possession of more than 2,000 pounds of marihuana. Kubosh, a licensed bail bondsman, and Raul Ruvalcaba executed a bail bond in the amount of $ 75,000, as sureties on the bond for Casas, the principal on the bond, to secure Casas's [*158] release from custody pending resolution of the charges. Casas failed to appear and answer the charge against him as required, and the State moved for bond forfeiture. The trial court signed a judgment of forfeiture (judgment nisi) for the full amount of the bond plus costs of court, and an alias capias was issued to arrest Casas.

Kubosh filed an amended answer that included a general denial and two "affirmative defenses authorized under *TEX. R. CIV. P. 94*: failure [**3] of consideration and legal excuse." [2] The premise underlying Kubosh's purported "affirmative defenses" was his contentions that, (1) after Casas failed to appear in court, the State failed to procure the Mexican government's timely issuance of a "provisional warrant," due to the Harris County District Attorneys Office's inadequate extradition policies concerning bail-jumping defendants, and that, (2) although Mexican officials knew where Casas was, he could not be arrested without the provisional warrant.

2 *Rule 94* states, "AFFIRMATIVE DEFENSES[:] In pleading to a preceding pleading, a party shall set forth affirmatively accord and satisfaction, arbitration and award, assumption of risk, contributory negligence, discharge in bankruptcy, duress, estoppel, failure of consideration, fraud, illegality, injury by fellow servant, laches, license, payment, release, res judicata, statute of frauds, statute of limitations, waiver, and any other matter constituting an avoidance or affirmative defense . . ."

Kubosh [**4] gave the State notice of intent to take the deposition of a Harris County District Attorney's office

employee, Kim Bryant, but the State moved to quash the deposition and for protection. The State also filed a motion to strike Kubosh's amended answer. Kubosh subsequently filed applications for subpoenas for witnesses and production of documents.

When the trial court began the bond-forfeiture bench trial on November 19, 2003, the State offered a certified copy of the judgment nisi. Kubosh objected to admitting this evidence by asserting that the State had not complied with his discovery requests. The trial was continued until December. In a hearing held on December 18, 2003, the trial court ruled that Kubosh's motions to compel discovery were untimely, and that the discovery he requested was irrelevant.

On December 22, 2003, the State again presented certified copies of the judgment nisi and the bail bond executed by Kubosh, Casas, and Raul Ruvalcaba. After the trial court admitted the State's exhibits over Kubosh's objections that the State had failed to comply with his discovery motions, the State rested. Kubosh attempted to offer exhibits related to the State's extradition policies, [**5] but the trial court ruled that the exhibits were inadmissible. The trial court ruled in favor of the State and signed a final judgment of forfeiture against Kubosh, Casas, and Ruvalcaba, jointly and severally, on the full amount of the bond plus costs of court. [3]

3 Neither the principal on the bond, Gustavo Casas Sr., nor cosurety, Raul Ruvalcaba, are parties to this appeal, although they were parties to the underlying proceedings.

## Exoneration From Liability Upon Forfeiture

Kubosh contends that he is exonerated from liability for Casas's failure to appear based on *Chapter 22 of the Code of Criminal Procedure*, which exonerates the defendant and his sureties if "the bond is, for any cause, not a valid undertaking in law." *TEX. CODE CRIM. PROC. ANN. art. 22.13(a)(1)* (Vernon Supp. 2004-2005). *Chapter 22* allows a surety to offer proof on the affirmative defense of exoneration to avoid liability for a bail bond under the following circumstances only:

[*159] (a) The following [**6] causes, and no other, will exonerate the defendant and his sureties, if any, from liability upon the forfeiture taken:

1. That the bond is, for any cause, not a valid and binding undertaking in law. If it be valid and binding as to the principal, and one or more of his sureties, if any, they shall not be exonerated from liability because of its being invalid and not binding as to another surety or sureties, if

any. If it be invalid and not binding as to the principal, each of the sureties, if any, shall be exonerated from liability. If it be valid and binding as to the principal, but not so as to the sureties, if any, the principal shall not be exonerated, but the sureties, if any, shall be.

2. The death of the principal before the forfeiture was taken.

3. The sickness of the principal or some uncontrollable circumstance which prevented his appearance at court, and it must, in every such case, be shown that his failure to appear arose from no fault on his part. The causes mentioned in this subdivision shall not be deemed sufficient to exonerate the principal and his sureties, if any, unless such principal appear before final judgment on the bond to answer the accusation against [**7] him, or show sufficient cause for not so appearing.

4. Failure to present an indictment or information at the first term of the court which may be held after the principal has been admitted to bail, in case where the party was bound over before indictment or information, and the prosecution has not been continued by order of the court.

*TEX. CODE CRIM. PROC. ANN. art. 22.13(a)* (Vernon Supp. 2004-2005); *see Spradlin v. State, 100 S.W.3d 372, 379 (Tex. App.--Houston[1st Dist.] 2002, no pet.).*

*Article 22.13(a)*'s four enumerated causes provide the sole bases by which a defendant and his sureties may be exonerated upon forfeiture of a bond. *See id.* (The following causes, *and no other.* . . .) (emphasis added); *Lyles v. State, 587 S.W.2d 717, 717 (Tex. Crim. App. 1979); Rodriguez v. State, 673 S.W.2d 635, 636 (Tex. App.--San Antonio 1984, no writ).*

When asked by the trial court whether he had a binding agreement with Casas, or whether he would be presenting any evidence that they did not have a binding agreement, Kubosh responded, "I'm not presenting any evidence on that issue, your honor. [**8] " When asked further if he would be presenting evidence on any of the three other affirmative defenses available under *article 22.13*, Kubosh responded, "no." We conclude that Kubosh presented no evidence of an affirmative defense that would exonerate himself from liability upon the forfeiture of the bond under *Chapter 22 of the Code of Criminal Procedure.*

Although Kubosh does not dispute that the State met the statutory requirements of the judgment nisi, he claims that he asserted defenses of failure of consideration and legal excuse, in accordance with *rule 94 of the Rules of Civil Procedure*, and that, because of these affirmative defenses, the bond is "not a valid undertaking in law" under *article 22.13(a)(1) of the Code of Criminal Procedure. TEX. CODE CRIM. PROC. ANN. art. 22.13(a)(1)* (Vernon Supp. 2004-2005). Kubosh further contends that civil law of contract applies <sup>4</sup> [*160] because the bail bond is a three-way contractual agreement among the State, the principal defendant, and the bail-bond surety, which requires that the State take reasonably timely steps to secure the issuance of provisional [**9] warrants for the arrest of bond-skipping defendants who flee the country.

4    We disagree with Kubosh's contention that the State is a party to the bail-bond contract. The bond is "a written undertaking entered into by the defendant and his sureties. . ." *TEX. CODE CRIM. PROC. ANN. art. 17.02* (Vernon 1977); *Rodriguez v. State, 673 S.W.2d 635, 640 (Tex. App.--San Antonio 1984, no writ).* The sureties agree to assume the bond obligation in return for consideration, usually a fee, paid by the principal. *Rodriguez, 673 S.W.2d at 640.* The State does not

release the principal because of contractual consideration between the State and the surety, but because of constitutional and statutory rights of the principal. *Id.; TEX. CONST. art. I, § 11; TEX. CODE CRIM. PROC. ANN. art. 1.07* (Vernon 1977).

After a forfeiture has been declared on a bond, the case is placed on the civil docket with the State of Texas as the [**10] plaintiff, and the defendant and any sureties as defendants. *TEX. CODE CRIM. PROC. ANN. art. 22.10* (Vernon Supp. 2004-2005). ==A bond forfeiture action is a criminal proceeding that utilizes the Rules of Civil Procedure==. *Id.* (stating that a bond-forfeiture case is governed by same rules governing other civil suits); *State v. Sellers, 790 S.W.2d 316, 321 (Tex. Crim. App. 1990).* The civil rules apply procedurally, however, and not substantively. *See Sellers, 790 S.W.2d at 321. Article 22.10* does not transform a bond forfeiture proceeding from a criminal case into "a civil case." *Sellers, 790 S.W.2d at 321.*

"It is well-settled that the State's case in a bond-forfeiture proceeding consists of the bond and the judicial declaration of the forfeiture of the bond, which is the judgment nisi. Once this has been established, the defendant must then prove that one of the elements has not been complied with." *Tocher v. State, 517 S.W.2d 299, 301 (Tex. Crim. App. 1975); Spradlin, 100 S.W.3d at 377; McCluskey v. State, 64 S.W.3d 621, 623*

*(Tex. App.--Houston* [**11] *[1st Dist.] 2001, no pet.).*

By presenting the bond and the judgment nisi to the trial court, the State made a prima facie case for forfeiture of the bond. *See Alvarez v. State, 861 S.W.2d 878, 881 (Tex. Crim. App. 1992).* The burden then shifted to Kubosh, who had the burden to either (1) prove that the State did not satisfy one of the statutory requirements of the judgment nisi, or (2) raise a fact issue on his affirmative defense of exoneration. *Id. at 881*; *Hill v. State, 955 S.W.2d 96, 100-01 (Tex. Crim. App 1997).*

We conclude that the defenses listed in *rule 94 of the Texas Rules of Civil Procedure* do not apply to a bond forfeiture proceeding, and thus hold that the trial court did not err by finding that Kubosh was liable for the bail bond.

We overrule Kubosh's first issue.

## State's Failure to Comply with Discovery

In his remaining issues, Kubosh challenges the State's alleged failure to comply with his discovery requests concerning his claimed "affirmative defenses" of failure of consideration and legal excuse.

Kubosh's complaints concerning discovery all pertain to his contention that [**12] the contract was invalid under defenses recognized by the Civil Rules of Procedure, which we have rejected above. A trial court does not err by excluding evidence if the evidence does not show that the accused is entitled to the defense to which it applies. *Reed v. State, 794 S.W.2d 806, 809-11 (Tex. App.--Houston [14th Dist.] 1990, pet. ref'd).* Thus, any discovery related to equitable affirmative defenses not recognized under *article 22.13* [*161] is irrelevant. *See In re Am. Optical Corp., 988 S.W.2d 711, 713, 41 Tex. Sup. Ct. J. 1146 (Tex. 1998)* (holding that discovery requests must be reasonably tailored to include only matters relevant to the case).

We overrule Kubosh's issues concerning the trial court's discovery rulings.

## Conclusion

We affirm the judgment of the trial court.

Elsa Alcala

Justice



**VERNON P. LYLES, et. al, Appellant v. THE STATE OF TEXAS, Appellee**

**No. 1302-91**

**COURT OF CRIMINAL APPEALS OF TEXAS**

*850 S.W.2d 497*; *1993 Tex. Crim. App. LEXIS 29*

**February 3, 1993, Delivered**

**SUBSEQUENT HISTORY:** [**1] As Corrected March 8, 1993.

**PRIOR HISTORY:** Petition for Discretionary Review from the Tenth Court of Appeals. (Robertson County)

**COUNSEL:** For Appellant: Carolyn Findley Price, Arlington, Tx. G. P. (Pat) Monks, Houston, Tx.

For State: Jimmie McCullough, C. A., Franklin, Tx. Robert Huttash, State's Attorney, Austin, Tx.

**JUDGES:** En Banc. White, Judge, Clinton, Judge concurring opinion, Campbell, Judge joined by Maloney, Judge concurring in part & dissenting in part, Baird, Judge dissenting opinion

**OPINION BY:** WHITE

**OPINION**

[*498] *OPINION ON STATE'S PETITION FOR DISCRETIONARY REVIEW*

This is a criminal bail bond forfeiture case. The State petitioned this Court for review on two grounds, one of which we granted in order to determine the constitutionality of *TEX. CODE CRIM. PROC. ANN. Art. 22.16(a)*. Although we find 22.16(a) unconstitutional because it utilizes the provisions of *TEX. CODE CRIM. PROC. ANN. Art.22.16(c)*, we will reverse the Court of Appeals on other grounds.

Initially, we will address whether subsection (a) is constitutional since it was a ground on which we initially granted review. However, the ultimate disposition of this case will hinge on our prior decision in *Makeig* [**2] *v. State, 830 S.W.2d 956 (Tex. Crim. App. 1992)*, adopting the decision and reasoning of the Court of Appeals in *Makeig v. State,*

*802 S.W.2d 59* (Tex.App. - Amarillo 1990). We will therefore address Article 22.16(a) and then resolve the instant case.

This matter arose out of a bond forfeiture in the Robertson County Court. Vernon P. Lyles, a professional bondsman, was the surety on a $ 1500 bond with Thomas Earl Marks as its defendant-principal. Marks failed to appear in court on December 7, 1989, on a misdemeanor property offense and judgment nisi was entered. Marks was rearrested on December 16 and placed in the Robertson County jail. On February 7, 1990, final judgment was entered by the trial court. Respondent filed his motion to remit the full amount of the bond on March 6, 1990, along with a motion to vacate or modify the final judgment entered against the bond. The trial court denied his motions.

Respondent Lyles appealed to the Tenth Court of Appeals raising six points of error. [*499] The Court of Appeals sustained the three points which addressed remittitur of the bond and therefore reversed the judgment of the trial court in a published opinion. *Lyles v. State,* [**3] *814 S.W.2d 411* (Tex.App.-Waco 1991). The question raised in the Court of Appeals and in this Court is the constitutionality of Art. 22.16(a).

Art. 22.16(a) provides in pertinent part:

(a) After forfeiture of a bond and before the expiration of the time limits set by Subsection (c) of this article, the court shall, on written motion, remit to the surety the amount of the bond after deducting the costs of court, any reasonable costs to the county for the return of the principal, and the interest accrued on the bond amount as provided by Subsection (e) of this article if:

(1) the principal is incarcerated in the county in which the prosecution is pending;

. . .

Art. 22.16(c) provides:

(c) A final judgment may be entered against a bond not earlier than:

(1) nine months after the date the forfeiture was entered, if the offense for which the bond was given is a misdemeanor; or

(2) 18 months after the date the forfeiture was entered, if the offense for which the bond was given is a felony.

Article 22.16(a) is at issue because it is dependent upon timeframes provided for in 22.16(c). Article 22.16(c) has been held unconstitutional by this Court in *State v. Matyastik,* [**4] *811 S.W.2d 102 (Tex.Cr.App. 1991)* and *Armadillo Bail Bonds v. State, 802 S.W.2d 237 (Tex.Cr.App. 1990).*

Article 22.16(c) was first addressed by this Court in *Armadillo Bail Bonds v. State, 802 S.W.2d at 237.* Our analysis in *Armadillo Bail Bonds* began by recognizing that a violation of the separation of powers provision of the

State Constitution occurs when one branch of government unduly interferes with another branch's exercise of its constitutionally assigned powers. *Id., at 239.* Since the ability to enter final judgments is a "core power" of the judiciary, we found that the legislature unduly interfered with the exercise of this power by passing a statute which suspended the entrance of a final judgment for up to a year and a half. *Id., at 241.* Thus, the statute was found to be a violation of the separation of powers provision since it allowed the legislature to usurp a judicial function. *Id.*

In *State v. Matyastik,* this Court applied the reasoning announced in *Armadillo Bail Bonds* to find section (c)(1) of the statute unconstitutional. *State v. Matyastik, 811 S.W.2d at 102.* Where section (c)(2) addresses felonies, section (c)(1) of the statute [**5] prohibits the court from entering final judgment in a misdemeanor case until nine months after forfeiture. Because of the similar time requirement, (c)(1) was also found to be a legislatively imposed statutory restraint on a trial court's ability to enter final judgments. *Id., at 104.* The reasoning in *Armadillo Bail Bonds* was therefore extended to also hold section (c)(1) unconstitutional as a violation of the separation of powers provision of the State Constitution. *Id.*

Having found 22.16(c) unconstitutional [1], this court then considered in *Matyastik* whether Art. 22.16(a) also interfered with the court's exercise of the judicial function. *State v.*

*Matyastik, 811 S.W.2d at 104.* This issue arose because Article 22.16(a) refers to 22.16(c) in the body of the statute. Art. 22.16(a) provides in pertinent part:

After forfeiture of a bond and before the expiration of the time limits set by Subsection (c) of this article, the court shall . . . (emphasis added).

[*500] In our analysis in *Matyastik,* we were careful to note that if one part of a statute is held unconstitutional, "the remainder of the statute must be sustained if it is complete in itself [**6] and capable of being executed in accordance with the intent wholly independent of that which has been rejected." *Matyastik, 811 S.W.2d at 104,* quoting *Tussey v. State, 494 S.W.2d 866, 870 (Tex.Cr.App. 1973).* However, this Court found that subsection (a) is contingent upon the time limitations set forth in subsection (c). *Matyastik, 811 S.W.2d at 104.* Therefore, we held that the portion of subsection (a) that utilizes subsection (c) is invalid under *Article 2, Section 1 of the Texas Constitution* since subsection (a) cannot be executed or have any effect without utilizing the provisions of subsection (c). *Id.*

---

1   After the holdings in *Armadillo* and *Matyastik,* Article 22.16(c) was considered unconstitutional in its entirety. Some confusion has arisen on this issue by our adoption of the Court of Appeals decision in *Makeig v. State, 802 S.W.2d 59 (Tex.App. - Amarillo 1990).* In the opinion, there is a reference that

the 22.16(c) timeframes must expire before 22.16(d) applies. We held 22.16(c) unconstitutional in *Armadillo* and *Matyastik* and therefore 22.16(c) should not control the applicability of 22.16(d). It was not our intention to reverse these decisions by adopting *Makeig.*

[**7] This Court is now asked to determine whether subsection (a) is to be read without reference to subsection (c) [2], or, alternatively, find the entire subsection invalid. We believe that the latter is the correct interpretation. As was noted in *Matyastik,* subsection (a) is contingent upon the time limitations established in subsection (c). Subsection (a) is dependent upon subsection (c) to establish the timeframes for mandatory remittitur. Without these deadlines, remittitur of a forfeited bond would be mandatory at any time after the forfeiture because there is no "judgment" provision in subsection (a). Consequently, subsection (a) cannot be executed or have any effect without the invalid provisions. *Matyastik, 811 S.W.2d at 104.* Subsection (a) is thus void. We therefore hold that mandatory remittitur provisions of 22.16(a) are no longer valid. Remittitur may instead be done at the trial court's discretion at anytime before entry of a final judgment. [3] *TEX. CODE CRIM. PROC. ANN. Art. 22.16(d).*

2    More specifically in Article 22.16(a), the reference made by the language ". . . and before the expiration of the time limits set by Subsection (c) of this article . . ." [**8]

3    In his dissent, Judge Baird disagrees that *Matyastik* held that remittitur is now discretionary with the court at anytime prior to entry of a final judgment. Instead, he believes *Matyastik* actually stated that mandatory, rather than discretionary, remittitur may be done at anytime before entry of a final judgement. The exact language in *Matyastik* was as follows:

"Because subsection (a) cannot be executed or have any effect without utilizing the provisions of subsection (c), we hold that the portion of *Art. 22.16(a), V.A.C.C.P.*, utilizing subsection (c) is invalid under *Article 2, § 1 of the Texas Constitution.* Thus, remittitur now may be done anytime between forfeiture and entry of a final judgment."

Respectfully, we would point out that the term "mandatory" is not used in the passage. Since remittitur was mandatory by virtue of the time limitations in subsection (c), it follows that it is no longer mandatory if the time limitations are eliminated. This proposition is further supported by the use of the discretionary language "remittitur now *may* be done." In the absence of mandatory

provisions, we believe that discretionary remittitur as found in Article 22.16(d) is the logical successor.

[**9] Additional support for this holding is found in Article 22.16(d). Article 22.16(d) permits a trial court, in its discretion, to remit a bond before the entry of a final judgment. If subsection (a) is to be read without reference to the time limitations of subsection (c), the trial court would no longer have this discretion. The trial court would have to remit the amount of the bond upon written motion of the surety. Such a reading would render subsection (d) impotent. When construing statutes that appear to be in conflict, the two should be harmonized where possible. *TEX. GOV'T CODE ANN § 311.025(b)*; *Ex Parte Choice, 828 S.W.2d 5, 7 (Tex.Cr.App. 1992)*; *Lindsey v. State, 760 S.W.2d 649, 654 (Tex.Cr.App. 1988)*; *Stanfield v. State, 718 S.W.2d 734, 736 (Tex.Cr.App. 1986)*. It would therefore be improper to interpret 22.16(a) in a manner which would remove the discretion given to the trial court in Article 22.16(d).

Furthermore, a most important distinction can be made between 22.16(a) and 22.16(c) which demonstrates that discretionary remittitur should continue. Contrary to the position advocated by the dissents, *subsection (a) does not have a provision for any kind of judgment* [**10] *to be entered.* Final judgment under subsection (a) can only be entered via the reference to subsection [*501] (c), an unconstitutional provision. Alternatively, 22.16(d), even if read without reference to subsection (c), provides for entry of final judgment. Given this distinction, it is obvious that 22.16(d) should survive even though 22.16(a) is invalid.

Article 22.16(c) violates the separation of powers provision of the Texas Constitution because it imposes time limits which prevent a court from entering a final judgment. Although 22.16(a) does not provide for entry of a judgment of any kind, a reading of 22.16(a) to provide for mandatory remittitur at anytime prior to final judgement would violate the separation of powers provision. Such a reading would statutorily mandate a trial court to remit a bond at anytime prior to entry of a final judgment, thereby legislatively removing a trial court's discretion. However, enforcement of 22.16(d) does not violate the separation of powers provision since it leaves discretion in the trial court to remit a forfeited bond at anytime prior to entry of a final judgment.

We pause here to answer Judge Campbell's concerns. He argues [**11] in his dissent that if 22.16(a) is invalid because of the reference to Article 22.16(c), 22.16(d) must also be invalid because it too utilizes 22.16(c). We would distinguish 22.16(d) by pointing out that, unlike 22.16(a), 22.16(d) is a discretionary provision. Article 22.16(d) provides:

After the expiration of the time limits set by Subsection (c) of this article and before the entry of a final judgment against the bond, the court in its discretion may remit to the surety all or part of the amount of the bond after deducting the costs of court, any reasonable costs to the court for the return of the principal, and the interest accrued on the bond amount as provided by Subsection (e) of this article.

Unlike 22.16(a), 22.16(d) can be read absent the reference to 22.16(c) without a separation of powers problem that is encountered with 22.16(a). When 22.16(d) is so read, remittitur remains discretionary with the court anytime before final judgment. It does not become mandatory at any time after forfeiture as it does when 22.16(a) is read without reference to the 22.16(c) timeframes.

As we have said previously in this opinion, subsection (a) does not provide for any type of judgment [**12] to be entered. Consequently, mandatory remittitur could continue *in perpetuity* if the subsection (c) timeframes are not utilized. If any of the five conditions under 22.16(a)(1)-(5) (principal incarcerated in county in which the prosecution is pending, principal deceased, etc.) are *ever* met, the trial court would be forced to remit the bond no matter when the condition is satisfied. Given that mandatory remittitur was originally intended to occur within a limited time, we do not believe this was the intended result.

In our view, Article 22.16(a) cannot have any effect without utilizing the invalid provisions of 22.16(c). We therefore hold that Article 22.16(a) is void; however, this subsection is not controlling in the disposition of the case at bar.

We now turn to the instant case. The facts before us in this matter are almost identical to those in *Makeig v. State, 830 S.W.2d 956 (Tex.Crim.App. 1992),* adopting opinion *802 S.W.2d 59* (Tex.App. - Amarillo 1990). In *Makeig,* a judgment nisi was entered on June 19, 1989 after the principal failed to appear in court on a felony offense. *Id. at 60.* Final judgment was then entered approximately three months later. [**13] *Id. at 61.* The appellant made a motion for remittitur of a $ 50,000 bond approximately one month after final judgment was entered. *Id. at 61.* The trial court granted the appellant's motion and returned $ 25,000, less costs of suit, even though the motion was made after final judgment. *Id. at 61.*

In reviewing the remittitur, the Court of Appeals held that the trial court did not err by entering final judgment before the expiration of the time frames in Article 22.16(c) since this subsection of the statute had previously been held unconstitutional by this court. *Id. at 61-62.* Appellant also argued that the trial court erred by failing to apply the discretionary remittitur portion of the statute, Article 22.16(d). *Id. at* [*502] *62.* The Court of Appeals correctly recognized that 22.16(d) directs

discretionary remittitur when final judgment has not been entered. *Id.* Since final judgment had already been entered, the Court of Appeals held that 22.16(d) did not apply. *Id.*

The Court of Appeals found support in two areas for the trial court's decision to partially remit the bond. First, the Court of Appeals held that since the motion for remittitur had [**14] been made within 30 days of the judgment, it was within the trial court's plenary power to reform the judgment. *Tex.R.Civ.Pro. 329(b).* Additionally, the Court of Appeals held that the power to partially remit the bond was also found in *Article 22.17, TEX. CODE CRIM. PROC. ANN.* This article provides for a two year special bill of review that enables a surety to request, on equitable grounds, the reform of a final judgment and remittitur of the bond amount. Under this Article, the decision to grant or deny the bill is *entirely within the discretion of the trial court.* The request may be granted in whole or in part. Art. 22.17(a).

In the instant case, final judgment was entered on February 7, 1990. Appellant did not make a motion for remittitur until March 6, 1990. Since final judgment had already been entered, discretionary remittitur under article 22.16(d) did not apply. However, the court's decision to remit part of the bond was within its power under *Tex.R.Civ.Pro 329b* and *Art. 22.17 Tex. Code Crim. Pro.* We must now determine whether the decision to not

remit the $ 1,500 bond in the instant case was an abuse of this discretion.

In determining whether there has been an [**15] abuse of discretion, it must be determined if the court acted without reference to any guiding rules and principles, or, in other words, whether the court acted arbitrarily or unreasonably. *Makeig, 802 S.W.2d at 62*; *Montgomery v. State, 810 S.W.2d 372, 380 (Tex.Crim.App. 1990).* Article 22.17 contains no guidelines for the exercise of the court's discretion. *Makeig, 802 S.W.2d at 62.*

An abuse of discretion may exist when there is a showing of sufficient cause for the accused's failure to comply. See *Makeig, supra at 62.* However, mere subsequent appearance by the accused is not sufficient cause for complete remission of the forfeiture. *Id., at 62.* Sufficient cause is generally a showing that the party did not break his recognizance intentionally with the design of evading justice, or without a sufficient cause or reasonable excuse, such as unavoidable accident or inevitable necessity preventing his appearance. *Id., at 62-63.* Although resulting extreme hardship on the surety may be considered, a balancing consideration may be whether compensation was received by the surety for taking the risk. *Id., at 62-63.* While not seeking to punish the surety for [**16] the principal's failure to appear, the law does contemplate that such noncompliance will result in forfeiture of the bond amount. *Id.* These factors,

material to the court's decision before final judgment, continue to be pertinent while the judgment is subject to the court's plenary powers of reformation. *Id., at 63.*

In *Makeig,* the Court of Appeals found that there had not been a showing of sufficient cause or reasonable excuse for the accused's absence. *Makeig, supra at 63.* Since the trial court remitted $ 25,000, less costs, of a $ 50,000 bond, the Court of Appeals could not find an abuse of discretion. *Id.* In doing so, the Court of Appeals found the following facts important: 1) the trial court had remitted more than seven times the surety's actual costs ($ 3,475) in attempting to locate her client; 2) there had been no showing of sufficient cause for the principal's absence; 3) the principal had not been apprehended through the efforts of the surety; and, 4) the surety had received compensation for the risk it endured under the bond. *Id.*

In the instant case, the appellant/surety has not demonstrated that any costs were incurred in attempting to locate [**17] the principal. There is no evidence from the record that there was sufficient cause for the principal's absence on appearance day. Additionally, there is no evidence that [*503] the principal was apprehended as the result of the efforts of the surety. While there is no evidence of the amount of the bonding fee assessed by surety against the principal, it is unlikely that it was done free of

charge. Under these circumstances, we cannot say that it was an abuse of discretion for the trial court to deny appellant's motion to remit the $ 1,500 bond.

Since the partial remittitur was clearly within the power of the court and there was no abuse of discretion in the exercise of this power, the judgment of the Court of Appeals is reversed and the judgment of the trial court is affirmed. On the issue presented for our review, we hold Article 22.16(a) unconstitutional because it relies on the invalid provisions of 22.16(c).

WHITE, Judge

(Delivered February 3, 1993)

En Banc

**CONCUR BY:** CLINTON; CAMPBELL (In Part)

**CONCUR**

*CONCURRING OPINION ON STATE'S PETITION FOR DISCRETIONARY REVIEW*

Because Article 22.16(c)(2), V.A.A.C.P., "requires that the Judiciary refrain from exercising [**18] a part of its core power for a period of a year and a half," and thus "unduly interferes with the Judiciary's effective exercise of its constitutionally assigned power," the Court held it invalid under *Article II, § 1, Constitution of The State of Texas*, in *Armadillo Bail Bonds v. State, 802*

*S.W.2d 237, at 241 (Tex.Cr.App. 1990).*[1]

    1    Conforming to procedure prescribed in germane provisions of Chapter Twentytwo, the trial court entered judgment *nisi,* surety answered to show cause, the court found no good cause and made the judgment final -- all prior to expiration of eighteen months; surety filed a motion for new trial relying on the bar in Article 22.16(c)(2), and the trial court denied relief. The Dallas Court of Appeals affirmed the judgment on the ground that the prohibition is invalid under Article II, § 1. *Armadillo Bail Bonds, supra, at 238.* As reported in the text above, this Court agreed and affirmed the judgment of the court of appeals.

Because *Article 22.16(c)(1), V.A.C.C.P.*, "prohibits [**19] the court from entering a final judgment in such a case for a nine month period," the Court extended the reasoning and holding in *Armadillo Bail Bonds, supra*, to misdemeanor cases, and held subsection (c) (1) unconstitutional as well, in *State v. Matyastik, 811 S.W.2d 102, at 104 (Tex.Cr.App. 1991).* [2] Turning to determine "whether the same is true of Art. 22.16(a)," for the Court, Judge Miller underscored the pertinent statutory language under consideration, *viz:* "(a) After forfeiture of bond *and before the expiration of the time limits set by Subsection (c) of this article, the court shall . . . ."* First, he recalled the settled rule that "if one part of a statute is held unconstitutional, the remainder of the statute continues to be valid;" he then noted that *"subsection (a) is contingent upon the time limitations established in subsection (c), and *thus has no effect without the invalid provisions."* Drawing from a recent opinion of this Court that "the remainder of the statute must be sustained if it is complete within itself and capable of being executed in accordance with the intent wholly independent of that which has been rejected," Judge Miller concluded [**20] for the Court:

". . . Because subsection (a) cannot be executed or have any effect without utilizing the provisions of subsection (c), we *hold* that *the portion* of *Art. 22.16(a), V.A.C.C.P.*, *utilizing subsection (c) is* invalid under *article 2, § 1 of the Texas Constitution.* [note omitted]. *Thus, remittitur now may be done anytime between forfeiture and entry of a final judgment."*

*Id., at 164.* [3] While it is not free from doubt, since the Court announced at the outset [*504] that it was finding "Article 22.16(a) and (c)(1) unconstitutional," *id., at 102*, we may take the underscored sentence to mean "discretionary" remittitur, taking into account whether one or more enumerated conditions in the remainder of subsection (a) is satisfied. See also *Article 22.13, V.A.C.C.P.*

2    As in *Armadillo Bail Bonds* so also in *State v. Matyastik,* all proceedings from forfeiture of bail to grant of remittitur occurred within the time limits set by subsection (c). Unlike the outcome of proceedings in *Armadillo Bail Bonds,* however, in *State v. Matyastik, supra*, after the trial court rendered judgment *nisi,* later made the judgment final and surety moved for remittitur relying in part on Article 22.16(a)(1), the trial court *ordered remittitur in full;* the State filed a motion to vacate the order which the trial court denied. The Waco Court of Appeals found Article 22.16 *"constitutional in its entirety,"* and affirmed the judgment below. *Matyastik, supra, at 102-103.*

All emphasis here and throughout this opinion is mine unless otherwise indicated.

3    In his separate opinion Judge Campbell characterizes our holding as stated "cryptically," following "somewhat oblique discussion." Slip opinion at 2 and 3, respectively. My own view is that whatever ambiguity may be seen in the formulation is removed by the judgment of this Court, *viz:*

"The judgment of the court of appeals [affirming that of the trial court] is reversed and *the remittitur order of the trial court is vacated."*

That is to say, the court of appeals erred in upholding constitutionality of the *mandatory* remittitur provision in subsection (a), and the trial judge erred in the belief that the court was statutorily mandated to order remittitur in full before expiration of the nine month limitation.

Because we reviewed the "decision" of the court of appeals in *Makeig v. State, 802 S.W.2d 59* (Tex.App. -- Amarillo 1990), found its "reasoning is sound" and "adopt[ed] the opinion as our own without further comment" in *Makeig v. State, 830 S.W.2d 956 (Tex.Cr.App. 1992)*, perhaps without noticing that the Amarillo Court of appeals did not have whatever guidance might have been provided by our opinion in *State v. Matyastik, supra*, as the majority here seems to suggest in its opinion at 3, n. 1, we may well have "rushed to judgment." For reasons developed in the margin, however, my view is that the *Makeig* court of appeals did not implicate validity or application of Article 22.16(d) in any manner inconsistent with our prior cases, including *Matyastik.* [4]

4    In *Makeig v. State, supra*, the surety on a $ 50,000 bond was certain enough that the principal would not appear for a scheduled hearing that he spent some $ 3,000 to find and surrender him under a warrant pursuant to *Articles 17.16-17.19, V.A.C.C.P.*, but was not

successful; the trial court forfeited bail, entered judgment *nisi* in June and made the judgment final on September 8; principal was later arrested in another state and surety paid the costs to transport back to the county of prosecution September 21; principal plead guilty and was sentenced to ten years confinement; on October 5, surety moved for mandatory remittitur after forfeiture in full, less costs and interest pursuant to Article 22.16(a)(1) and (2); on November 2, the trial court granted partial remittitur in the sum of $ 25,000, less costs of suit. *Id., at 60-61*.

On appeal, as well as point of error two claiming the bond was invalid, surety contended the trial court erred in three other particulars:

First, in entering final judgment earlier than eighteen months after forfeiture, on impliedly finding Article 22.16(c)(2) unconstitutional on the strength of *Armadillo Bail Bonds v. State, 772 S.W.2d 193* (Tex.App. -- Dallas 1989). The court of appeals overruled that point on the basis of our decision in *Armadillo Bails Bonds,* supra. *Id., at 61-62*.

Third, in refusing to remit a portion of forfeited bail in accordance with Article 22.16(d) and (e), i.e., "after the expiration of the time limits set by Subsection (c) and before entry of final judgment against the bond." The court of appeals overruled that point, reasoning that since eighteen months had not expired and final judgment had already been entered before the remittitur hearing, therefore, *"by their terms,* subsections (d) and (e) were not applicable to the present circumstance, and *the court's actions cannot be judged by their provisions." Id., at 62*.

Fourth, and alternatively, in abusing its discretion by refusing to order *sufficient* remittitur. The court of appeal found that neither subsections (a) or (d) applied, and overruled that point for reasons *dehors* the statute, *viz:* the trial court retained "plenary power to reform its judgment" under *Tex.R.Civ.Pro. 329b (a), (e)* and *(g)*, and the motion or remittitur being filed timely may be treated as a special bill of review under Article 22.17, V.A.A.C.P.; on either basis, the trial court did not abuse its discretion. *Id., at 62-63*.

Therefore, in affirming the judgment below the court of appeals did not treat the constitutional viability of Article 22.16(d) and (e), although the State took the position both are invalid (Appellee's Brief on PDR, at 2).

[**23] Therefore, as I understand the legal consequences of those three decisions of this Court, the following parts of Article 22.16 have been declared unconstitutional: all but the enumerated conditions in subsection (a); [5] all of subsection (c); the portion of subsection (d) reading "After the expiration of the time limits set by Subsection (c) of this article and . . . ."

> 5    That part of the qualifying condition reading "After forfeiture of a bond" is not included in the language declared unconstitutional in *Matyastik* is of no practical moment. The issue of remittitur cannot arise until after bail is forfeited. See, e.g., Articles 22.01, 22.02, 22.10, 22.11, 22.125 and 22.14.

Accordingly, *before entry of final judgment* the trial court in its discretion may remit "all or part of the amount of the bond," after making appropriate deductions prescribed by statute. Article 22.16(d) and (e).

[*505]    In the instant cause, however, appellant did not move for remittitur until *after the judgment nisi* [**24]  *was made final.* In this situation alternative remedies noticed by the court of appeals in *Makeig v. State* become available, and the majority opinion properly addresses them and ultimately concludes the trial court did not abuse its discretion in refusing remittitur.

For those reasons I join the judgment of the Court.

CLINTON, Judge

DELIVERED: February 3, 1993

EN BANC

**DISSENT BY:** CAMPBELL (In Part); BAIRD

**DISSENT**

## CONCURRING AND DISSENTING OPINION ON STATE'S PETITION FOR DISCRETIONARY REVIEW

CAMPBELL, J.

We granted review of this cause, pursuant to Texas Rule of Appellate Procedure 200(c)(1), to determine whether the court of appeals erred in holding that the trial court erred in refusing to remit the full amount of a bond to the surety. I agree with the majority's conclusion that the court of appeals erred, but I disagree completely with the majority's reasoning.

I first review the relevant facts. Thomas Earl Marks, charged in Robertson County with a misdemeanor, failed to appear for trial on December 7, 1989. On that date the trial court rendered judgment *nisi* for the State and against Marks and his surety, Vernon Lyles, jointly and severally, in the amount [**25]  of Marks' bond. On December 16, 1989, Marks was re-arrested and placed in the Robertson County Jail. On *February 7, 1990,* the

trial court rendered final judgment against the bond. On *March 6, 1990,* Lyles filed a motion to modify or vacate the final judgment and a second motion for remittitur of the full amount of the bond under *Texas Code of Criminal Procedure article 22.16(a).* The trial court denied both motions.

The Tenth Court of Appeals subsequently reversed, holding that the trial court "should have vacated or modified its February 7, 1990, [final] judgment and granted remittitur in accordance with art. 22.16(a)." *Lyles v. State, 814 S.W.2d 411, 412* (Tex.App.-- Waco 1991). The court of appeals, citing *State v. Matyastik, 811 S.W.2d 102 (Tex.Cr.App. 1991),* reasoned first that, except for its reference to subsection (c), Article 22.16(a) remained an effective statute requiring remittitur if requested before final judgment. The court reasoned second that Lyles was entitled to remittitur under Article 22.16(a) "even though (he) *presented* his request for remittitur after final judgment because (1) his response to the (State's) motion for summary judgment made [**26] such a request and (2) at the time final judgment was entered he could have relied on the nine-month-delay provision of article 22.16(c)(1) which was declared to be unconstitutional at a later date." *Lyles v. State, 814 S.W.2d at 412* (emphasis in original).

I believe it is quite plain that the court of appeals was only half right. That is, the court of appeals was correct when it determined that Article 22.16(a)

remained an effective statute except for its reference to subsection (c). The court of appeals was surely wrong, however, when it concluded that Lyles was entitled to remittitur even though he filed his motion for remittitur *after* the trial court rendered final judgment.

Article 22.16 provides in relevant part:

(a) After forfeiture of a bond *and before the expiration of the time limits set by Subsection (c) of this article,* the court shall, on written motion, remit to the surety the amount of the bond . . . if:

(1) the principal is incarcerated in the county in which the prosecution is pending;

\* \* \*

(c) A final judgment may be entered against a bond not earlier than:

(1) nine months after the date the forfeiture was entered, if the offense [**27] for which the bond was given is a misdemeanor; or

(2) 18 months after the date the forfeiture was entered, if the offense for which the bond was given is felony.

(d) *After the expiration of the time limits set by Subsection (c) of this article and* before the entry of final judgment against the bond, the court in its discretion may remit to the surety all or part of the amount of the bond. . . .

[*506] (Emphasis added.) We have held that subsection (c) is violative of our state constitution's separation of

powers provision and is, therefore, of no effect. *State v. Matyastik, 811 S.W.2d 102*; *Armadillo Bail Bonds v. State, 802 S.W.2d 237 (Tex.Cr.App. 1990)*. We have also held, albeit cryptically, that

subsection (a) is contingent upon the time limitations established in subsection (c), and thus has no effect without the invalid provisions. Recently we stated in *[Ex parte] Jones [803 S.W.2d 712, 714 (Tex.Cr.App. 1991)]* that ". . . should part of the bill be held invalid . . . the remainder of the statute must be sustained if it is complete in itself and capable of being executed in accordance with the [legislative] intent wholly independent of that [**28] which has been rejected." Because subsection (a) cannot be executed or have any effect without utilizing the provisions of subsection (c), we hold that *the portion of Art. 22.16(a), V.A.C.C.P., utilizing subsection (c) is invalid* under *Article 2, § 1 of the Texas Constitution. Thus, remittitur now may be done anytime between forfeiture and entry of a final judgment.*

*State v. Matyastik, 811 S.W.2d at 104* (emphasis added; citation and some punctuation omitted). Given the principle of *stare decisis,* the disposition of the case at bar must certainly depend in large part on what we meant in *Matyastik.*

The majority concludes from its interpretation of *Matyastik* that subsection (a) is void *in toto* because of

its reference to subsection (c) and that remittitur is now discretionary with the trial court before final judgment under subsection (d). There are several problems with the majority's analysis, however. First, *Matyastik,* despite its somewhat oblique discussion, explicitly *held* that *only* "the portion of *Art. 22.16(a), V.A.C.C.P.,* utilizing subsection (c) is invalid." The balance of Article 22.16(a) remains valid and is not unconstitutional, [**29] at least not under any theory yet advanced by the majority. Second, there was no discussion in *Matyastik* concerning discretionary remittitur under subsection (d). Indeed, subsection (d) was never mentioned in our opinion. Third, subsection (a)'s constitutional infirmity-- its utilization of subsection (c)--applies with at least equal force to subsection (d). Thus, if subsection (a) falls because of its reference to subsection (c), then subsection (d) must surely fall as well. There is no escaping this conclusion.

In my view, we must have been referring in *Matyastik* to *mandatory* remittitur under the surviving portions of Article 22.16(a) *and* (d). This interpretation of *Matyastik* is the only one that is both coherent and gives some effect to the legislative scheme embodied in Article 22.16.

As it was originally conceived by the Legislature, Article 22.16 created a scheme in which sureties on bail bonds had *an absolute right to remittitur for a lengthy period of time after forfeiture* if one of the conditions specified in

subsection (a) was met. Following that set period of time--defined in subsection (c)--discretionary remittitur was still possible under subsection [**30] (d) if a request was made *before final judgment.* [1] Thus, the Legislature apparently believed that it was good public policy to give bailbondsmen a strong incentive to return their principals to custody before final judgment. We can still give some effect to this legislative scheme if we construe our holding in *Matyastik* to refer to mandatory remittitur. Because of the majority's failure to do so, I respectfully dissent.

> 1    I concur in the *result* reached by the majority because Lyles filed his motion to vacate the judgment and for remittitur approximately thirty days *after* the entry of final judgment.

CAMPBELL, J.

DELIVERED FEBRUARY 3, 1993

EN BANC

MALONEY, J., JOINS

*DISSENTING OPINION ON STATE'S PETITION FOR DISCRETIONARY REVIEW*

BAIRD, Judge

I respectfully dissent. As appellant aptly states, "the cardinal rule of statutory construction is to save, not destroy." Appellant's brief, pg. 11. In *State v. Matyastik, 811 S.W.2d 102, 104 (Tex.Cr.App. 1991)*, we noted, [**31]

"it is well settled that if one part of a statute is held unconstitutional, the remainder of the statute continues to be valid." Indeed, this principle of statutory construction has been codified at *Tex.* [*507] *Gov't Code Ann. § 311.032(c)* which provides:

In a statute that does not contain a provision for severability or nonseverability, if any provision of the statute or its application to any person or circumstance is held invalid, the invalidity does not affect other provisions or applications of the statute that can be given effect without the invalid provision or application, and to this end the provisions of the statute are severable.

(EDITOR'S NOTE: TEXT WITHIN THESE SYMBOLS [O> <O] IS OVERSTRUCK IN THE SOURCE.)

In *Matyastik,* we correctly applied *§ 311.032(c)* and held "the portion of *Art. 22.16(a), V.A.C.C.P.*, utilizing subsection (c) (was) invalid . . . ." *Matyastik,* 811 at 104. We then concluded, [O>without dissent,<O$ ) that mandatory remittitur could be made *"anytime between forfeiture and entry of a final judgment."* [1] *Id.*

> 1    Unless otherwise indicated, all emphasis herein is supplied by the author.

[**32]     Today, the majority, purporting to rely on *Matyastik,* concludes that without the time limits in subsection (c) "remittitur of a forfeited

bond would be mandatory *at any time after the forfeiture* because there is no judgment provision in (a). Consequently, subsection (a) cannot be executed or have any effect without the invalid provisions. Subsection (a) is thus void. We therefore hold that mandatory remittitur provisions of 22.16(a) are no longer valid. Remittitur may instead be done at the trial court's discretion at any time before entry of a final judgment [Footnote omitted]" pursuant to *Tex. Code Crim. Proc. Ann. art. 22.16(d). Lyles v. State,* S.W.2d at (Tex.Cr.App. 1992, No. 1302-91, delivered October 7, 1992), slip op. pg. 4.

To reach this holding, the majority mis-interprets *Matyastik.* As I interpret *Matyastik,* the mandatory provisions of subsection (a) were still valid "anytime between forfeiture and entry of a final judgment." *Matystik, 811 S.W.2d at 104.*

The majority justifies its holding by creating a conflict between subsections (a) and (d). The majority states "if subsection (a) is to be read without reference to the [**33] time limitations of subsection (c), the trial court would no longer have" the discretion found in subsection (d). What the majority fails to recognize is that subsection (d) also relies upon the time limits set by subsection (c). [2] Consequently, if subsection (a) is unconstitutional, subsection (d) is also unconstitutional.

2   Art. 22.16(d) provides:

After the expiration of the *time limits set by Subsection (c) of this article* and before the entry of a final judgment against the bond, the court in its discretion may remit to the surety all or part of the amount of the bond after deducting the costs of court, any reasonable costs to the county for the return of the principal, and the interest accrued on the bond amount as provided by Subsection (e) of this article.

The majority ignores the fact that, in 1987, the Legislature amended art. 22.16 to its current form, providing for both mandatory and discretionary remittitur. Obviously the Legislature did not perceive a conflict between subsections (a) [**34] and (d). Indeed, there is no such conflict; one provides for mandatory remittitur while the other provides for remittitur at the discretion of the trial court. In other words, if the bond is forfeited for a reason *other than* one provided by subsection (a), the trial judge may, at his discretion, nevertheless remit all or part of the amount of the bond under subsection (d).

The Legislature provided for mandatory remittitur to encourage the making of bonds for those incarcerated while awaiting trial. As the Court of Appeals recognized:

The legislature has considered the overcrowded condition of most jails and the state penitentiary, and determined it

to be the public policy of allow a remittitur of an appearance bond when the principal is returned to custody prior to final judgment. In making its determination, the legislature has recognized that jail and penitentiary space is critical in Texas and that the bail bond industry provided a useful service by assuming the risk of a defendant's timely appearance in court. When a defendant is released on bail bond, the potential liability that cities and counties assume while housing persons [*508] accused of crimes are eliminated [**35] as well as the financial burden for housing each prisoner. In addition, critical jail space is made available for more serious offenders.

*Lyles v. State, 814 S.W.2d 411, 412* (Tex. App.--Waco 1991).

I believe the Court of Appeals' treatment of this case was, in all respects, correct. [3]

> 3    Judge Campbell believes the court of appeals "was surely wrong, however, when it concluded that Lyles was entitled to remittitur even though he filed his motion for remittitur *after* the trial court rendered final judgment." *Lyles v. State,* S.W.2d at (Campbell, J., Concurring and Dissenting), slip op. pg. 2 (Emphasis in original.). I disagree. The record reflects the trial judge entered a judgment on February 7,

1990 and Lyles filed his motion to modify less than thirty days later, March 6, 1990. Accordingly, the judgment was *not* final under Tex. R. Civ. Proc. Ann. 329b(d), (e) and (f). *See also,* prior *Rule 329b(5)* (Judgments shall be come final after the expiration of thirty (30) days the date of rendition of judgment or order overruling an original or amended motion for new trial.) Accordingly, the judgment was not final and the remittitur was mandatory under *Matyastik.*

[**36]    Keeping in mind the "cardinal rule of statutory construction" we can save, not destroy art. 22.16. I believe, consistent with our holdings in *Armadillo Bail Bonds v. State, 802 S.W.2d 237 (Tex.Cr.App. 1990)* and *Matyastik,* art. 22.16 should be read as follows:

(a) *Anytime between forfeiture and entry of a final judgment,* $ (O>After forfeiture of a bond and before the entry of a final judgment before the expiration of the time limits set by Subsection (c) of this article,<O$ ) the court shall on written motion, remit to the surety the amount of the bond . . . .

(b) No change.

$ (O>(c) A final judgment may be entered against a bond not earlier than:

(1) nine months after the date the forfeiture was entered, if the offense for which the bond was given is a

misdemeanor, or(2) 18 months after the date the forfeiture was entered, if the offense for which the bond was given is a felony.<O$ )

(d) *Anytime between forfeiture and* $ (O>After the expiration of the time limits set by Subsection (c) of this article and before the<O$ ) entry of a final judgment against [**37] the bond. . . .

(e) No change.

Because the majority destroys rather than saves art. 22.16, I respectfully dissent.

BAIRD, Judge

(Delivered February 3, 1993)

En banc



**MIKE McKENNA d/b/a BONDMAN BAIL BONDS,
Appellant v. THE STATE OF TEXAS**

**No. PD-0053-07**

**COURT OF CRIMINAL APPEALS OF TEXAS**

***247 S.W.3d 716**; 2008 Tex. Crim. App. LEXIS 383*

**March 12, 2008, Delivered**

**NOTICE:** PUBLISH

**PRIOR HISTORY:** [**1]
ON THE STATE'S PETITION FOR DISCRETIONARY REVIEW. IN CAUSE NO. 10-05-00318-CR FROM THE TENTH COURT OF APPEALS, JOHNSON COUNTY.
*McKenna v. State, 209 S.W.3d 233, 2006 Tex. App. LEXIS 9401 (Tex. App. Waco, 2006)*

**COUNSEL:** For APPELLANT: Mike McKenna, Pro se, Fort Worth, TX.

For STATE: Lisa A. Wyatt, ASSISTANT DISTRICT ATTORNEY, Cleburne, TX; Jeffrey L. Van Horn, STATE'S ATTORNEY, Austin, TX.

**JUDGES:** HOLCOMB, J., delivered the opinion of the Court, in which KELLER, P.J., and MEYERS, PRICE, JOHNSON, KEASLER, HERVEY, and COCHRAN, JJ., joined. WOMACK, J., did not participate.

**OPINION BY:** HOLCOMB

**OPINION**

[*717] In this bail bond forfeiture case, the trial court denied the surety's request to remit a portion of the bond amount. The court of appeals later reformed the trial court's order to reflect a remittitur of 60% of the bond amount. We reverse.

On January 18, 2001, Belinda Lee Powell, charged in Johnson County with a felony drug offense, failed to appear in court for her trial. On February 13, 2001, the trial court rendered judgment nisi for the State and against Powell and her surety, Mike McKenna d/b/a Bondman Bail Bonds, jointly and severally, in the amount of Powell's bail bond, which was $ 25,000. On that same date, the trial

court ordered that a capias be issued for Powell's arrest. On March 26, 2003, at the bond forfeiture hearing, the trial court rendered a default final judgment for the State and against Powell and McKenna.

On March 22, 2005, McKenna filed a special bill of review [**2] in the trial court requesting, on equitable grounds, that the default final judgment be reformed to reflect a 95% remittitur of the bond amount. On June 27, 2005, the trial court held an evidentiary hearing on McKenna's bill. At that hearing, McKenna called one witness, [*718] Charles A. Smith, and the State called no witnesses. Smith testified that: (1) he was, at the relevant times, an employee of McKenna's; (2) after Powell failed to appear in court for her trial, he and other McKenna employees "did [their] best to get [Powell] arrested"; (3) they "searched all the places [they] thought she might be," they "contacted her sisters [and] her mother," and they publicly offered a $ 1,000 reward for information leading to her arrest; (4) on September 13 or 14, 2001, an informant telephoned their office and told them of Powell's whereabouts; (5) on September 15, 2001, he personally went to the location given by the informant, which was off County Road 801 in Johnson County, and found Powell there; (6) he immediately telephoned the Johnson County Sheriff's Office and gave them Powell's location; and (7) he telephoned the Sheriff's Office again later that day

and was "assured . . . that [Powell] [**3] had been arrested."

At the close of Smith's testimony, the trial court allowed McKenna and the State to present their arguments. McKenna argued that equity demanded "a substantial remittitur" because: (1) "Smith [had] expended substantial efforts in locating" and apprehending Powell and (2) "the State ha[d] not presented any evidence showing how [it had been] prejudiced" by the seven-month delay in apprehending Powell. The State responded that equity did not require any remittitur at all because: (1) Smith's testimony had been "sketchy at best"; (2) Smith's efforts to locate and apprehend Powell had been "minimal"; and (3) the delay in apprehending Powell had been "significant."

On July 25, 2005, the trial court issued an order denying any remittitur to McKenna. The trial court gave no explanation for its ruling.

On direct appeal, McKenna argued that the trial court's denial of remittitur had been "an abuse of discretion considering all the facts of the case, especially in view of the fact . . . that the Surety [had been] totally responsible for locating [Powell] and having her apprehended." McKenna argued, too, that "the state [had] failed to present any evidence of harm done to the [**4] public or [any] prejudice suffered by the government" as a consequence of the delay in apprehending Powell. The State counterargued that the trial court had not

abused its discretion in denying remittitur because McKenna had failed to carry his "burden [of showing] the [trial] court the equitable grounds [required] to grant the special bill of review."

The Tenth Court of Appeals, by a vote of two to one, agreed with McKenna's arguments and reformed the trial court's order to reflect a remittitur of 60% of the bond amount, i.e., $ 15,000. *McKenna v. State, 209 S.W.3d 233, 236-237 (Tex.App.-Waco 2006).* The chief justice of the court of appeals, in dissent, argued:

> "[T]he majority has placed the burden on the State to avoid a remittitur by presenting evidence. This is an erroneous placement of the burden of proof. The burden of proof is on the surety to establish that on equitable grounds a remittitur should be ordered.
>
> * * *
>
> "The hearing [on the special bill of review] focussed on McKenna's efforts to locate Powell. Evidence on this single factor was not enough to convince the trial court of the surety's equitable interest in being granted a remittitur. I find no abuse of discretion." *Id. at 238-239.*

The [**5] State later filed a petition for discretionary review, which we granted. *See Tex. R. App. Proc. 66.3(e).* In its petition and accompanying brief, the State, in essence, reiterates the arguments made by [*719] the chief justice in the court below. McKenna, in response, argues that the court of appeals "properly found . . . a clear and profound abuse of discretion based on the . . . record."

*Article 22.17(a) of the Texas Code of Criminal Procedure* provides:

> "Not later than two years after the date a final judgment is entered in a bond forfeiture proceeding, the surety on the bond may file with the court a special bill of review. A special bill of review may include a request, on equitable grounds, that the final judgment be reformed and that all or part of the bond amount be remitted to the surety, after deducting the costs of court, any reasonable costs to the county for the return of the principal, and the interest accrued on the bond amount from the date of forfeiture. The court in its discretion may grant or deny the bill in whole or in part."

Under the plain wording of the statute, a surety may request, within two years of a final judgment on a bond forfeiture, that the trial court order a [**6] remittitur of all or part of the bond amount on equitable grounds. Although the statute does not state that the surety has the burden of proof with respect to the existence of such equitable grounds, we are of the view that the surety does indeed have that burden, since the surety is the party attempting to change the status quo. This is so even though the State may have superior access to proof of certain matters. As one leading treatise explains, "The burdens of pleading and proof with regard to most facts have been and should be assigned to the [party] who generally seeks to change the present state of affairs and who therefore naturally should be expected to bear the risk of failure of proof or persuasion." K. Broun (ed.), *McCormick on Evidence* § 337 at 474 (6th ed. 2006). Our research also reveals that most or all other American jurisdictions also assign the burden of proof to the party seeking relief from a bond forfeiture. *See 8A Am. Jur. 2d Bail and Recognizance § 150* (1997); 8 C.J.S. *Bail* § 313 (2005).

Under the terms of *Article 22.17(a)*, the decision whether to grant any remittitur on equitable grounds rests within the sound discretion of the trial court. In making its decision, [**7] the trial court must keep in mind that, since the purpose of bail is to secure the accused's appearance in court, the law contemplates that the accused's nonappearance will normally result in total forfeiture of the bond amount. While keeping that fact in mind, the trial court may consider any factor bearing upon the equity of the situation, including, but not necessarily limited to, the following: (1) whether the accused's failure to appear in court was willful; (2) whether the delay caused by the accused's failure to appear in court prejudiced the State or harmed the public interest; (3) whether the surety participated in the re-arrest of the accused; (4) whether the State incurred costs or suffered inconvenience in the re-arrest of the accused; (5) whether the surety received compensation for the risk of executing the bail bond; and (6) whether the surety will suffer extreme hardship in the absence of a remittitur. *See Lyles v. State, 850 S.W.2d 497, 502 (Tex.Crim.App. 1993)*; *Gramercy Ins. Co. v. State, 834 S.W.2d 379, 381-382 (Tex.App.-San Antonio 1992, no pet.)*; *8A Am. Jur. 2d Bail and Recognizance §§ 150 & 151* (1997); 8 C.J.S. *Bail* § 290 (2005).

On this record, a reasonable trial [**8] court could have concluded that equity did not require any remittitur of the bond amount. Thus, we discern no abuse of discretion on the part of the trial court. McKenna had the burden of showing that equity required a remittitur of some or all [*720] of the bond amount, yet he presented evidence on only one of the relevant factors: his participation in the re-arrest of Powell.

McKenna, who undoubtedly received monetary compensation for his risk in executing Powell's bail bond, presented no evidence concerning the reason for her nonappearance in court, or the prejudice, costs, and inconvenience suffered (or not suffered) by the State and the public as a result of her nonappearance and the seven-month delay until she was re-arrested.

The record shows no abuse of discretion on the part of the trial court, and the court of appeals erred in holding otherwise. We reverse the judgment of the court of appeals and affirm the order of the trial court.

DELIVERED MARCH 12, 2008

PUBLISH



**Robert Mendez d/b/a A-1 Bonding Company, Surety, Appellant v. The State of Texas, Appellee**

**NO. 03-12-00200-CV**

**COURT OF APPEALS OF TEXAS, THIRD DISTRICT, AUSTIN**

*2013 Tex. App. LEXIS 13278*

**October 25, 2013, Filed**

**PRIOR HISTORY:** [*1]
FROM COUNTY COURT AT LAW NO. 1 OF CALDWELL COUNTY. NO. 5203, HONORABLE EDWARD L. JARRETT, JUDGE PRESIDING.

**DISPOSITION:** Affirmed.

**COUNSEL:** For appellee: Ms. Cassandra M. Benoist, Assistant Criminal District Attorney-Caldwell County, Lockhart, TX.

For appellant: Mr. John P. Bennett, Lockhart, TX.

**JUDGES:** Before Justices Puryear, Pemberton and Field.

**OPINION BY:** Scott K. Field

**OPINION**

**MEMORANDUM OPINION**

Robert Mendez d/b/a A-1 Bonding Company (Mendez) appeals the trial court's judgment awarding $5,000 plus court costs to the State of Texas in a bond-forfeiture suit. We will affirm the district court's judgment.

**BACKGROUND**

Suits for bond forfeiture are governed by chapter 22 of the Texas Code of Criminal Procedure. *See Tex. Code Crim. Proc. arts. 22.01-.18*. Under *article 22.02*, a bond may be forfeited when a defendant has posted bond but fails to appear in court as required. *Id. art. 22.02*. Specifically, when the defendant fails to appear within a reasonable time after called by name at the courthouse door, the trial court enters a judgment providing "that the State of Texas recover of the defendant the amount of money in which he is

bound, and of his sureties, if any, the amount of money in which they are respectively bound." *Id*. This judgment, referred to as a judgment nisi, must also state that it will be made final, unless good cause is shown for why the defendant did not appear. *Id*. At a later [*2] hearing to finalize the bond forfeiture, "[t]he essential elements of the State's cause of action . . . are the bond and the judicial declaration of the forfeiture of the bond, which is the judgment nisi." *Alvarez v. State, 861 S.W.2d 878, 880-81 (Tex. Crim. App. 1992).*

In this case, Vallery Tokola, the principal, was arrested for misdemeanor criminal trespass, and Mendez, the surety, filed a bond conditioned on Tokola's subsequent appearance. On January 7, 2010, Tokola failed to appear in court as required. On February 1, 2010, in accordance with chapter 22, the trial court issued a judgment nisi for $5,000 and declared the bond forfeited.

Upon notifying Mendez of the bond-forfeiture proceedings, the trial court conducted a hearing to finalize the judgment. At the hearing, the State entered several documents into evidence, including the judgment nisi, but did not present any testimony. Mendez testified on his own behalf regarding actions he took aimed at returning Tokola to incarceration following her failure to appear. Mendez explained that on February 5, 2011, he "lured" Tokola to his office and then called the Lockhart police so that they

could take Tokola into custody pursuant to [*3] a warrant that had issued for her arrest. However, Mendez testified that once the officers arrived, Tokola--who was visibly pregnant at the time--began complaining of stomach pain and asked to be taken to the hospital. Counsel for Mendez then presented the testimony of Sergeant Richard Torres, the supervising police officer on the scene that day. Torres testified that, upon the arrival of an ambulance and an evaluation by emergency medical personnel, he decided not to arrest Tokola. Instead, Torres released Tokola for transport to the local hospital.

At the conclusion of the hearing, Mendez asserted that he was entitled to exoneration and alternatively requested a remittitur in the full amount of the bond. The trial court later rendered judgment against Tokola and Mendez, jointly and severally, for the full amount of the bond plus costs. Upon Mendez's request, the court issued findings of fact and conclusion of law.

## STANDARD OF REVIEW

Although bond-forfeiture proceedings are criminal cases, appellate review of bond-forfeiture proceedings is governed by civil law, including the standard of review. *Tex. Code Crim. Proc. art. 44.44* (providing that "the proceeding shall be regulated by the [*4] same rules that govern civil actions where an appeal is taken"); *International Fid. Ins. Co. v. State, No. 03-09-00539-CR, 2010 Tex. App. LEXIS 8873, 2010*

*WL 4366913, at *2 n.3 (Tex. App.-- Austin Nov. 3, 2010, no pet.)* (mem. op.) (applying civil standard to review for factual and legal sufficiency).

In a bench trial, where the trial court makes findings of fact, as it did in this case, those findings of fact are the equivalent of jury answers to special issues. *Echols v. Olivarez, 85 S.W.3d 475, 477 (Tex. App.--Austin 2002, no pet.)*. This Court reviews the trial court's findings of fact for legal sufficiency and factual sufficiency of the evidence. *Seasha Pools, Inc. v. Hardister, 391 S.W.3d 635, 639 (Tex. App.--Austin 2012, no pet.)*. When, as here, a party attacks the factual sufficiency of an adverse finding on an issue on which he has the burden of proof, he must demonstrate on appeal that the adverse finding is against the great weight and preponderance of the evidence. *See Dow Chem. Co. v. Francis, 46 S.W.3d 237, 242 (Tex. 2001)* (per curiam). In conducting this review, we do not engage in our own factual review; rather, the trial judge is the "sole judge of the credibility of the witnesses and the weight to  [*5] be given their testimony." *McGalliard v. Kuhlmann, 722 S.W.2d 694, 696 (Tex. 1986)*.

## ANALYSIS

*Article 22.16 of the Code of Criminal Procedure* provides:

> (b) For other good cause shown and before the entry of a final judgment against the

bond, the court in its discretion may remit to the surety all or part of the amount of the bond after deducting the costs of court and any reasonable and necessary costs to the county for the return of the principal, and the interest accrued on the bond amount as provided by Subsection (c).

*Tex. Code Crim. Proc. art. 22.16(b)*. In two issues on appeal, Mendez challenges the trial court's failure to grant him a discretionary remittitur under *article 22.16(b)*. First, Mendez asserts that the evidence is factually insufficient to support the trial court's finding that Mendez was "advised that the San Marcos Police Department would take Defendant Vallery Tokola into custody if Defendant Robert Mendez would contact that agency and make a formal request." Second, Mendez argues that the trial court abused its discretion in failing to grant him a remittitur for "good cause" pursuant to *article 22.16(b)*. Mendez asserts that he was entitled to remittitur for all or part  [*6] of the bond because, as a result of the officers' failure to comply with their statutory duties to arrest Tokola, he was unfairly deprived of his statutory right to exoneration.[1]

1    At trial, Mendez also argued that he was entitled to exoneration.

*Article 22.13 of the Texas Code of Criminal Procedure* provides a statutory defense to forfeiture proceedings, exonerating defendants and sureties in certain limited circumstances. *See Tex. Code Crim. Proc. art. 22.13(a)(1)-(5)*. One of those circumstances is detailed in *article 22.13(a)(5)* and provides that a defendant and his sureties, if any, are exonerated from liability in a misdemeanor case when the principal becomes incarcerated "at the time of or not later than the 180th day after the date of the principal's failure to appear." *Id. art. 22.13(a)(5)*. In this case, the trial court made several findings relevant to Mendez's exoneration defense, including that Tokola "was never incarcerated as per *Article 22.13(a)(5), Texas Code of Criminal Procedure,* until October 26, 2011." On appeal, Mendez does not challenge any of these findings. Further, Mendez does not argue that, under the evidence presented, he was entitled to exoneration. Instead, [*7] Mendez argues that the inaction of the police constitutes good cause for remittitur pursuant to *article 22.16(b)* because it deprived him of an otherwise certain exoneration defense.

We first consider whether the trial court's determination that "Mendez was advised that the San Marcos Police Department would take [Tokola] into custody if Defendant Robert Mendez would contact that agency and make a formal request" is supported by factually sufficient evidence. At the hearing, the following exchange took place between Sergeant Torres and counsel for the State:

COUNSEL: And it's your understanding that [Tokola] got in the ambulance and she was taken to the hospital? I'm guessing Luling she was taken to.

TORRES: No, she was taken to San Marcos because I remember mentioning to somebody if they wanted to, they could call San Marcos. I don't remember who talked to the bonding company. They could call San Marcos, to the officer on duty at the hospital, and you [sic] once she had a doctor release, the jail could accept her then.

This is the only testimony concerning the parties' understanding regarding Tokola's custody during her transport and upon her arrival at the hospital. Torres's testimony [*8] regarding this issue is unclear, at best. To the extent the fact in dispute is relevant to Mendez's request for a remittitur, we will assume without deciding that the evidence supporting it is factually insufficient. Accordingly, we next examine whether

the trial court's denial of remittitur was an abuse of discretion, in the absence of this fact.

Mendez argues that the trial court was provided with "good cause" to remit all or part of the bond and abused its discretion in refusing Mendez's request to do so. *See id*. Mendez contends that (1) he "did everything expected of him to have [Tokola] arrested and incarcerated," and (2) "but for, the actions of [the officers], in clear violation of their statutorily imposed duties, Tokola was allowed to go free, depriving [Mendez] of his statutory right to an exoneration . . . ."

Under the terms of *article 22.16(b)*, the decision to grant or deny remittitur to the surety, in whole or in part, rests within the sound discretion of the trial court. *McKenna v. State, 247 S.W.3d 716, 719 (Tex. Crim. App. 2008)*. In making its decision, the trial court must keep in mind that the purpose of bail is to secure the accused's appearance in court; the law contemplates [*9] that the accused's nonappearance will normally result in forfeiture of the bond amount. *Id*. In addition, the trial court may consider any factor relevant to good cause, including (1) whether the accused's failure to appear in court was for good cause; (2) whether the delay caused by the accused's failure to appear in court prejudiced the State or harmed the public interest; (3) whether the surety participated in the re-arrest of the accused; (4) whether the State incurred costs or suffered inconvenience in the

re-arrest of the accused; (5) whether the surety received compensation for the risk of executing the bond; and (6) whether the surety will suffer extreme hardship in the absence of a remittitur. *Id*. An abuse of discretion occurs if the trial court acts without reference to any guiding rules and principles or, in other words, if the court acted arbitrarily or unreasonably. *Lyles v. State, 850 S.W.2d 497, 502 (Tex. Crim. App. 1993)*.

At the hearing to finalize the bond-forfeiture judgment, Mendez had the burden of showing that the circumstances entitled him to a remittitur of some or all of the bond. *See McKenna, 247 S.W.3d at 719-20*. In support of his remittitur request, Mendez [*10] presented evidence relevant to one of the factors--his efforts on February 5, 2011, to have Tokola taken into custody by police for incarceration. However, Mendez did not present any evidence of the costs he incurred in these efforts, if any. Likewise, Mendez did not present any evidence concerning the reason, if any, that Tokola failed to appear in court. In fact, the trial court found that Mendez failed to show good cause for Tokola's original failure to appear in court on January 7, 2013, and Mendez does not challenge this finding on appeal. Mendez also did not establish that his compensation for his surety services was extraordinarily low in light of the risk undertaken. Finally, Mendez did not present any evidence concerning the prejudice, costs, and inconvenience,

if any, suffered by the State and the public.

Viewing the record as a whole, we cannot conclude that the trial court's failure to find good cause for remittitur under *article 22.16(b)* is against the great weight and preponderance of the evidence. As a result, we cannot conclude that the trial court's decision to deny Mendez's request for remittitur was arbitrary or unreasonable--that is, the record shows no abuse of discretion. [*11] *See id. at 720* (concluding that trial court's denial of remittitur was not abuse of discretion where surety presented evidence of only one of the relevant factors). We overrule Mendez's first and second issues on appeal.

**CONCLUSION**

Having concluded that the trial court did not abuse its discretion, we affirm the judgment of the trial court.

Scott K. Field, Justice

Before Justices Puryear, Pemberton and Field

Affirmed

Filed: October 25, 2013



**Gaile Nixon, Individually and A/N/F/ of R.M.V., a Minor, Petitioner, v. Mr. Property Management Company, Inc. Et Al., Respondents**

**No. C-3425**

**SUPREME COURT OF TEXAS**

*690 S.W.2d 546*; *1985 Tex. LEXIS 852*; *28 Tex. Sup. J. 384*

**May 1, 1985**

**SUBSEQUENT HISTORY:** [**1] Rehearing Denied June 19, 1985.

**PRIOR HISTORY:** From Dallas County, Fifth District.

**COUNSEL:** Randall R. Moore, from Dallas, for petitioner.

Jack Pew, Jr., (Jackson, Walker, Winstead, Cantwell & Miller), from Dallas, for respondent.

**JUDGES:** Hill, C.J. Justice Spears and Justice Kilgarlin concurring. Dissenting Opinion by Justice McGee in which Justice Wallace and Gonzalez join.

**OPINION BY:** HILL

**OPINION**

[*547] This is an action for damages filed on behalf of a minor, R.M.V., against Mr. Property Management Company and Brett Davis. R.M.V. was raped in a vacant unit of the defendants' apartment complex. She was not a resident or a guest at the complex. The trial court granted Mr. Property and Brett Davis' motion for summary judgment. The court of appeals affirmed the judgment. *675 S.W.2d 585*. We reverse the judgments of the courts below and remand the cause to the trial court for a trial on the merits.

*Background*

R.M.V., age 10, resided at the Landmark Apartments. At about 7:00 p.m. on August 7, 1981, while it was still light, a young man abducted R.M.V. from a sidewalk outside the Landmark Apartments and dragged her to the Chalmette Apartments, located diagonally across the street [**2] from the Landmark Apartments. According to R.M.V.'s affidavit, her assailant took her

"directly to a vacant apartment at Chalmette Apartments." There, he raped her, put her in the closet, told her not to leave, and disappeared. There are no other known witnesses. Chalmette Apartments learned of the incident later that night when a police officer spoke to the maintenance man and the resident manager.

[*548] There was evidence concerning the unit's dilapidated condition. The responding officer, George Tilley, stated in his affidavit that: "The glass was broken from the windows and the front door was off its hinges. The apartment unit in question was empty, filthy, dirty and full of debris." In his deposition, Brett Davis, the owner of Chalmette Apartments, admitted that leaving doors off hinges and windows without panes would tend to encourage vagrants to occupy these apartments. Gene Jacobson, president of Mr. Property Management Company, stated in his deposition that one reason for securing vacant units was to prevent this type of crime from occurring. The testimony was as follows:

> Q. What is the reason why you should keep doorknobs on doors of vacant apartments?
>
> A. [**3] Numerous reasons. One, I would say, to secure -- Okay . . . .
>
> Q. Any other reason?

> A. I think there are many reasons. One of the reasons would be for the simple reason we're here.

A Dallas City Ordinance established minimum standards for landowners:

> SEC. 27-11. MINIMUM STANDARDS, RESPONSIBILITIES OF OWNER.
>
> (a) *Property standards*. An owner shall:
>
> (6) keep the doors and windows of a vacant structure or vacant portion of a structure securely closed to prevent unauthorized entry.

Revised Code of Civil and Criminal Ordinances of the City of Dallas § 27.11(a)(6).

The summary judgment evidence included a list of police incident reports concerning the Chalmette Apartments during the two years prior to the rape. Police had investigated numerous crimes committed at the complex including one attempted murder, two aggravated robberies, two aggravated assaults, sixteen apartment burglaries, four vehicle burglaries, four cases of theft,

five cases of criminal mischief, and one auto theft.

Gaile Nixon, R.M.V.'s mother and next friend, filed suit alleging that Mr. Property Management Company, Inc., and Brett Davis (manager and owner, respectively, of [**4] Chalmette Apartments) and I. V. Investment, Inc., and James R. Liddle (manager and owner, respectively, of Landmark Apartments) were liable in tort for R.M.V.'s injuries. Nixon settled with the Landmark Apartment interests. Brett Davis purchased Chalmette Apartments in March of 1981. He hired Mr. Property to manage the complex near the end of that month.

Nixon contends that Mr. Property and Brett Davis (for convenience both parties will be referred to as Mr. Property) owed R.M.V. a duty of reasonable care which duty was breached. She further alleged that such breach was a proximate cause of the rape and resulting injuries because this crime was reasonably foreseeable under all the attending circumstances.

The trial court sustained Mr. Property's motion for summary judgment and rendered judgment that Nixon take nothing. In affirming the trial court's judgment, the court of appeals held that, since R.M.V. was on Mr. Property's property without its knowledge and consent, R.M.V. was a trespasser and Mr. Property's duty toward her was no greater than not to injure her willfully, wantonly, or through gross negligence. The court also held that the condition of the apartment complex was [**5] not a proximate cause of the rape because R.M.V.'s abduction and rape were not a reasonably foreseeable consequence thereof.

*Summary Judgment*

This is an appeal from a summary judgment. The standards for reviewing a motion for summary judgment are well established. As mandated by this court, they are:

> 1. The movant for summary judgment has the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law.
>
> 2. In deciding whether there is a disputed material fact issue precluding [*549] summary judgment, evidence favorable to the non-movant will be taken as true.
>
> 3. Every reasonable inference must be indulged in favor of the non-movant and any doubts resolved in its favor.

*Montgomery v. Kennedy, 669 S.W.2d 309, 310-11 (Tex. 1984)*; *Wilcox v. St. Mary's University of San Antonio, 531 S.W.2d 589, 592-93 (Tex. 1975). See also City of Houston v. Clear Creek*

*Basin Authority, 589 S.W.2d 671 (Tex. 1979).*

## Duty

In this case, the question of what duty Mr. Property owed to R.M.V. is answered by the ordinance. This ordinance legislatively imposes a standard of conduct which we adopt [**6] to define the conduct of a reasonably prudent person. *Moughon v. Wolf, 576 S.W.2d 603, 604 (Tex. 1978)*; *Missouri Pac. R. Co. v. American Statesman, 552 S.W.2d 99, 103 (Tex. 1977)*. The unexcused violation of a statute or ordinance constitutes negligence as a matter of law if such statute or ordinance was designed to prevent injury to the class of persons to which the injured party belongs. *Id.* A reasonable interpretation of this ordinance is that it was designed to deter criminal activity by reducing the conspicuous opportunities for criminal conduct. In fact, Mr. Property's president testified that one reason vacant apartment units should be secured is to prevent this type of criminal activity. An ordinance requiring apartment owners to do their part in deterring crime is designed to prevent injury to the general public. R.M.V. falls within this class. Since the ordinance was meant to protect a larger class than invitees and licensees, and since R.M.V. committed no wrong in coming onto the property, these premise liability distinctions are irrelevant to our analysis.

Using the mandated standard for reviewing summary judgment, we conclude that a genuine issue of material [**7] fact exists as to Mr. Property's breach of duty. If the trier of fact concludes that Mr. Property violated the ordinance without a valid excuse, Mr. Property is negligent per se. This does not end our inquiry; we must still determine if there is a material fact issue on the question of proximate cause.

## Proximate Cause

A material fact issue exists in this case as to whether Mr. Property's negligence, if any, proximately caused R.M.V.'s injuries. The two elements of proximate cause are cause in fact and foreseeability. *Missouri Pac. R. Co., 552 S.W.2d at 103*.

Cause in fact denotes that the negligent act or omission was a substantial factor in bringing about the injury and without which no harm would have been incurred. *Id.* Viewing the summary judgment as we must, drawing all reasonable inferences in favor of R.M.V., we conclude that a reasonable inference exists that, but for Mr. Property's failure to comply with the ordinance regarding maintenance of its apartment complex, this crime would have never taken place. There is evidence that the assailant took R.M.V. "directly to a vacant apartment," the inference being that the assailant was acutely aware of the vacant unit's [**8] existence and embarked upon his course of criminal conduct at this particular

time and place knowing that this unit was an easily accessible place in which to perpetrate this assault in isolation.

The court of appeals misplaced its reliance on *City of Mobile v. Largay, 346 So. 2d 393 (Ala. 1977),* which had facts similar to ours. In *Largay,* the Alabama Supreme Court placed heavy emphasis on the fact that the assailant used the city's building to commit the rape only as a last resort:

> Clearly, the assailant did not even *intend* to use the building until his first plan to carry the plaintiff away was thwarted when he was unable to start her car. Only when he failed after six or seven attempts to start the car, did he resort to the unlocked cellar.

*Id. at 395* (emphasis theirs).

Finally, we turn to the question of foreseeability. Foreseeability means [*550] that the actor, as a person of ordinary intelligence, should have anticipated the dangers that his negligent act created for others. *Missouri Pac. R. Co., 552 S.W.2d at 103.* Usually, the criminal conduct of a third party is a superseding cause relieving the negligent actor from liability. [**9] However, the tort-feasor's negligence will not be excused where the criminal conduct is a foreseeable result of such negligence. Texas courts follow this rule. *See Castillo v. Sears Roebuck &*

*Co., 663 S.W.2d 60* (Tex. App. -- San Antonio 1983, writ ref'd n.r.e.); *Walkoviak v. Hilton Hotels Corp., 580 S.W.2d 623* (Tex. Civ. App. -- Houston [14th Dist.] 1979, writ ref'd n.r.e.).

The *RESTATEMENT (SECOND) OF TORTS § 448* (1965) states:

> The act of a third person in committing an intentional tort or crime is a superseding cause of harm to another resulting therefrom, although the actor's negligent conduct created a situation which afforded an opportunity to the third person to commit such a tort or crime, *unless the actor at the time of his negligent conduct realized or should have realized the likelihood that such a situation might be created, and that a third person might avail himself of the opportunity to commit such a tort or crime.* [Emphasis added.]

The evidence is replete with instances of prior violent crimes occurring at Chalmette Apartments. This record certainly provides evidence that further acts of violence were reasonably foreseeable. Evidence of [**10] specific previous crimes on or near the premises raises a fact issue on the foreseeability of criminal activity. *See e.g., Walkoviak v. Hilton Hotel Corp.*, (victim of robbery sued hotel; two robberies in the vicinity

of hotel in previous year); *Kline v. 1500 Massachusetts Ave. Apartment Corp., 141 U.S. App. D.C. 370, 439 F.2d 477 (1970)* (victim of assault sued apartment owner; 20 crimes in building in previous year); *Foster v. Winston-Salem Joint Venture, 303 N.C. 636, 281 S.E.2d 36 (1981)* (victim of assault sued mall owner; 29 crimes in mall parking lot in previous year); *Butler v. Acme Markets, Inc., 89 N.J. 270, 445 A.2d 1141 (1982)* (victim of assault sued grocery store; seven assaults in parking lot in previous year); *Graham v. M & J Corp., 424 A.2d 103 (D.C. App. 1980)* (arson victims sued duplex owner; numerous previous acts of vandalism in foyer, one prior attempted robbery, high crime area).

In *Trentacost v. Brussel, 82 N.J. 214, 412 A.2d 436 (1980)*, the New Jersey Supreme Court affirmed a jury award for an assault victim and against the apartment owner. On the issue of foreseeability, the court stated:

> There was ample evidence that criminal [**11] activity affecting the Monroe Street building was reasonably foreseeable. More than one witness testified to the high incidence of crime in the neighborhood. Plaintiff's own, unchallenged testimony related an attempted theft within the building. Against this background, the jury could readily view the absence of a lock on the front entrance -- an area outside an individual tenant's control -- as exemplifying a callous disregard for the residents' safety in violation of ordinary standards of care. Since there was sufficient evidence for concluding that the mugging was a foreseeable result of the landlord's negligence, the jury's finding of liability was warranted.

*Id. at 441.*

*Drake v. Sun Bank & Trust Co.*, a case involving a kidnap from a bank parking lot and subsequent murder, is especially instructive on this point. In *Drake, 377 So. 2d 1013* (Ct. of App., Fla. 1979), the court held that the widow failed to allege sufficient facts of previous crimes to meet the test of foreseeability, but it remanded to allow her to amend. When the case was again appealed, *400 So. 2d 569* (Ct. of App., Fla. 1981), the court said allegations that the bank was in high crime area [**12] including allegations of similar crimes on or near the facility were sufficient to state a cause of action for negligence.

Although there is no evidence that previous rapes had occurred at Chalmette Apartments, this is not a prerequisite [*551] to finding a material fact issue on foreseeability.

> *It is not required that the particular accident complained of should have*

*been foreseen*. All that is required is "that the injury be of such a *general character as might reasonably have been anticipated;* and that the injured party should be so situated with relation to the wrongful act that injury to him or to one similarly situated might reasonably have been foreseen." [Cite omitted.]

*Carey v. Pure Distributing Corp., 133 Tex. 31, 124 S.W.2d 847, 849 (1939)* (emphasis added). With a litany of prior crimes, including other violent and assaultive crime, at Chalmette Apartments, and with deposition testimony that vagrants frequented the area, a material fact question exists on the foreseeability of this crime as it relates to the proximate cause issue.

We reverse the judgments of the courts below and remand the cause to the trial court for trial on the merits.

[**13] Concurring Opinion by Justice Spears.

Concurring Opinion by Justice Kilgarlin.

Dissenting Opinion by Justice McGee in which Justice Wallace and Gonzalez join.

**CONCUR BY:** SPEARS; KILGARLIN

**CONCUR**

SPEARS, KILGARLIN

OPINION

KILGARLIN

I agree with the result reached by the court. However, I regret that the court has chosen to avoid consideration of the premise liability doctrine by opting for an easier path of relying on a city ordinance for the duty determination. Given an opportunity to render impotent one of the last vestiges of feudalism in our common law, we nevertheless succumb to the blandishments of judicial torpidity. In doing so, we carve but another modification to the already exception-ridden premise liability doctrine. Rather than relying on the happenstance of city actions and other judicially sculpted exceptions, I would cast aside doctrinal distinctions as the primary determinative of a landowner's liability and substitute a general duty of ordinary care under the circumstances.

The present law of landowner liability has its origins in the feudal period when a man's worth was measured by his property. A landowner was then sovereign within his domain and had total [**14] liberty to do with his land as he pleased. F. Bohlen, *Studies in the Law of Torts*, 163 (1926). In the nineteenth century, before tort principles were widely recognized or applied, the English judiciary grew conscious of the danger that landowner immunity posed to community safety; yet the judges were reluctant to leave the liability determination to a jury of

potential land entrants. Consequently, the judges created an entrant classification scheme to circumscribe the jury's tendencies to find landowners liable. The Industrial Revolution ushered in a greater number of accidents and the English courts began to apply emerging tort principles to the entrant categorization scheme. Marsh, *The History and Comparative Law of Invitees, Licensees and Trespassers*, 69 L.Q. Rev. 182 (1953); Recent Development, *Torts -- Abrogation of Common-Law Entrant Classes of Trespasser, Licensee, and Invitee*, 25 Vand. L. Rev. 623, 624 (1972). These classifications were introduced into the United States over one hundred years ago in *Sweeny v. Old Colony & Newport R.R., 92 Mass (10 Allen) 368 (1865).* Since that time the majority of American jurisdictions, including Texas, have incorporated [**15] the entrant categorization system into substantive tort law.

It is a system capable of producing anomalies that are at once both absurd and harsh. Just picture the court of appeals in this case groping for a designation for a ten year old girl who had been forcibly dragged off the street into an apartment complex. Then, out of obeisance to this outmoded entrant characterization doctrine, that court concluded that little Rhonda was after all a trespasser. *675 S.W.2d at 586*. As a trespasser, Mr. Property's duty to her was simply not to willfully injure her. Harsh, yes! Absurd? Substitute the facts

but a little, and assume Rhonda was a resident of Chalmette Apartments, [*552] dragged out of a hallway into a vacant apartment and thrice raped. Under such a tableau, the whole duty concept changes. Yet, but for an almost irrelevant municipal ordinance, this court would maintain such duty fictions.

The recent trend of the law, which I would join, has been away from basing a landowner's liability on his visitor's artificially determined purpose of entry. England, the progenitor of this feudal vestige, adopted the Occupiers Liability Act of 1957, which imposes upon landowners a "common [**16] duty of care" toward all visitors, excluding trespassers. 5 & 6 Eliz. 2, ch. 31 (1957). The United States has been slower to annihilate these archaic distinctions. But, in *Kermarec v. Compagnie Generale Transatlantique, 358 U.S. 625, 630, 79 S. Ct. 406, 3 L. Ed. 2d 550 (1959)*, the United States Supreme Court recognized the inadequacies of the classifications and refused to extend the system to admiralty. *Id. at 631*. The Court explained that American courts have carved numerous exceptions to the classification system to mitigate its harshness. The Court acknowledged the system's difficulties:

> Even within a single jurisdiction, the classifications and subclassifications bred by the common law have produced confusion and conflict. As

new distinctions have been spawned, older ones have become obscured. Through this semantic morass the common law has moved, unevenly and with hesitation, towards "imposing on owners and occupiers a single duty of reasonable care in all the circumstances."

*Id. at 630-31.*

Exceptions to the classification structure are rampant in the jurisdictions which still adhere to this system. *See* Note, *Tort Liability of Owners and* [**17] *Possessors of Land -- A Single Standard of Reasonable Care Under the Circumstances Towards Invitees and Licensees*, 33 Ark. L. rev. 194, 197 (1979). Michigan recognizes an exception for social guests. *Preston v. Sleziak, 16 Mich. App. 18, 167 N.W.2d 477 (1969).* Kentucky modified the traditional categories by increasing a landowner's duty to known and frequent trespassers on a limited area. *Louisville & N.R. Co. v. Spoonamore's Adm'r., 278 Ky. 673, 129 S.W.2d 175 (1939).* Texas is no different. In this state, for example, we have excepted from these categorizations attractive nuisances ( *Banker v. McLaughlin, 146 Tex. 434, 208 S.W.2d 843* [1949]); dangerous conditions obvious to the owner ( *State v. Tennison, 509 S.W.2d 560* [Tex. 1974]), and anticipated trespassers if the landowner engages in a dangerous activity ( *Gulf, C & S.F. Ry. Co. v.*

*Russell, 125 Tex. 443, 82 S.W.2d 948* [Tex. Comm'n App. 1935, opinion adopted]).

In 1968, California became the first state to eradicate common law distinctions of land entrants. That state's supreme court held that landowners would be required to exercise ordinary care under the circumstances regardless of the tort [**18] victim's classification. The California court recognized that the entrant's status could affect the liability question but it would only affect liability in determining what "ordinary care under the circumstances" required. The court reasoned:

A man's life or limb does not become less worthy of protection by the law nor a loss less worthy of compensation under the law because he has come upon the land of another without permission or with permission but without a business purpose. Reasonable people do not ordinarily vary their conduct depending upon such matters, and to focus upon the status of the injured party as a trespasser, licensee, or invitee in order to determine the question whether the landowner has a duty of care, is contrary to our modern social mores and humanitarian values. The common law rules obscure

rather than illuminate the proper considerations which should govern determination of the question of duty.

*Rowland v. Christian, 69 Cal.2d 108, 70 Cal. Rptr. 97, 443 P.2d 561, 568 (1968).*

Since *Rowland*, eight other jurisdictions have held that the invitee, licensee, trespasser categories are not determinative, [*553] and that landowners are [**19] subject to a duty of ordinary care under the circumstances. Hawaii was the first state to follow California's lead. Holding that there is no logical relationship between the entrant classifications and the exercise of reasonable care for the safety of others, Hawaii abolished the outdated trinity in *Pickard v. City and County of Honolulu, 51 Hawaii 134, 452 P.2d 445 (1969).* Colorado was the next state to institute a standard of reasonable care under the circumstances to avoid harsh results and judicial confusion. *Mile High Fence Co. v. Radovich, 175 Colo. 537, 489 P.2d 308 (1971).* The District of Columbia soon joined those states casting out the archaic troika. *Smith v. Arbaugh's Restaurant, 152 U.S. App. D.C. 86, 469 F.2d 97, cert. denied, 412 U.S. 939, 93 S. Ct. 2774, 37 L. Ed. 2d 399 (1973).* Five years later, five other states had also concluded that the entrant classification scheme was no longer viable. *See Mariorenzi v. Joseph DiPonte, Inc., 114 R.I. 294, 333 A.2d 127 (1975); Cates v. Beauregard*

*Electric Cooperative, Inc., 328 So.2d 367 (La. 1976), cert. denied, 429 U.S. 833, 97 S. Ct. 97, 50 L. Ed. 2d 98 (1976); Ouellette v. Blanchard* [**20] *, 116 N.H. 552, 364 A.2d 631 (1976); Basso v. Miller, 40 N.Y.2d 233, 386 N.Y.S.2d 564, 352 N.E.2d 868 (1976); and, Webb v. City and Borough of Sitka, 561 P.2d 731 (Alaska 1977).* Six jurisdictions have applied a uniform standard of care for invitees and licensees while excluding trespassers. *See Peterson v. Balach, 294 Minn. 161, 199 N.W.2d 639 (1972); Wood v. Camp, 284 So.2d 691 (Fla. 1973); Mounsey v. Ellard, 363 Mass. 693, 297 N.E.2d 43 (1973); Antoniewicz v. Reszczynski, 70 Wis.2d 836, 236 N.W.2d 1 (1975); O'Leary v. Coenen, 251 N.W.2d 746 (N.D. 1977); Poulin v. Colby College, 402 A.2d 846 (Me. 1979).* True, many states have rejected abandonment of premise liability standards, but only fourteen states have done so by decisions from their courts of last resort.

In casting aside the premise liability classification, the United States Court of Appeals for the District of Columbia placed heavy reliance on the decreased prestige of the landowner in our society. The court said:

We believe that the common law classifications are now equally alien to modern tort law, primarily because they establish immunities from liability which no longer [**21]

comport with accepted values and common experience. Perhaps the protection afforded to landowners by these rules was once perceived as necessary in view of the sparseness of land settlements, and the inability of owners to inspect or maintain distant holdings. The prestige and dominance of the landowning class in the nineteenth century contributed to the common law's emphasis on the economic and social importance of free use and exploitation of land over and above the personal safety of those who qualified as trespassers or licensees.

*Smith v. Arbaugh's Restaurant, Inc., 469 F.2d at 101.* That court also recognized the importance of resource allocation in our society and decided that, absent legislative action, the jury is in the best position to allocate society's resources regarding personal injury. Classifying landowner liability decisions as "moral and empirical judgments," the court reasoned that the community representatives which comprise the jury are best qualified to handle these questions. *Id. at 102.*

Resource allocation was only one of the bases for that court's destruction of the land entrant categories. The court also relied on the genius of the common

[**22] law to adapt to societal, economic and moral changes:

Legal classifications such as trespasser and licensee are judicial creations which should be cast aside when they are no longer useful as controlling tools for the jury. The principle of stare decisis was not meant to keep a stranglehold on developments which are responsive to new values, experiences, and circumstances. In our opinion, the time has come to put an end to our total reliance on these common law labels and to allow the finder of fact to focus on whether the landowner has exercised "reasonable care under all the circumstances." That standard [*554] contains the flexibility necessary to allow the jury to take account of the infinite variety of fact situations which affect the foreseeability of presence and injury, and the balance of values which determines the allocation of the costs and risks of human injury.

*Id. at 105.*

Rather than create further refinements and exceptions to the premise liability doctrine, we should abolish it. The classifications of invitee,

licensee and trespasser are judicial dinosaurs which served a purpose long ago when society's values placed great emphasis on a man's [**23] property holdings. That day is gone, and with it the public-be-damned attitude of J.P. Morgan. Today's society places a greater emphasis on human safety. In accommodating this modern trend, however, I do not advocate that trespassers who enter with an intent to commit a crime be allowed to recover and would hold that a landowner as a matter of law has no duty to such a trespasser other than as currently exists.

This case presents a perfect opportunity for casting aside one of the last remnants of a doctrine whose roots are founded in the feudal system and which has no place in our modern society. This court should follow the modern trend and abolish this antiquated doctrine. For the above reasons, I respectfully concur.

Concurring Opinion by Justice Spears.

I concur in the judgment of the court, but I would not hinge the duty owed to R.M.V. only on the ordinance. In my view Mr. Property's duty to R.M.V. should not depend solely on the existence of an ordinance or the location of the apartments within city limits.

I would be willing to carve an exception to the traditional premises liability categories of invitee, licensee, and trespasser because the categories should not be applied [**24] rigidly. Although R.M.V. entered the Chalmette apartment complex without Mr. Property's consent or knowledge, it would be manifestly unjust to classify her as a trespasser when she was dragged onto the property by a rapist. I would hold that Mr. Property must act as a reasonable prudent person in maintaining its property in a reasonably safe condition in view of all the circumstances, including the likelihood of injury to others, the seriousness of the injury, and the burden on the respective parties of avoiding the risk. By establishing a duty under these circumstances, Mr. Property would not be an insurer of its property or have to face unreasonable burdens in maintaining its property.

I am not ready to discard the traditional categories of invitee, licensee, and trespasser because they allow judicial certainty and predictable allocations of liability in most cases. Adoption of an across-the-board standard of reasonable care under the circumstances would replace a stable and established system of loss allocation with confusion and possibly inconsistent and unpredictable rules of law. I am not sure that juries can be expected to reconcile the multitude of social policies implicit [**25] in the assessment of premises liability. Without the guidance of the categories, juries would be given a free hand to impose liability without reference to the social policies underlying the categories; and, if the jury is to be instructed to consider the

former categories, we gain little or nothing by jettisoning them. *Gerchberg v. Loney, 223 Kan. 446, 576 P.2d 593, 597 (1978)*. I am not alone in this position. A clear majority of the states have refused to abandon the common-law status classifications of invitee, licensee, and trespasser. Annot., *22 A.L.R.4th 294 (1983)*.

The court has decided this case without creating a new exception to traditional premises liability categories or abandoning them in favor of a reasonable care under the circumstances test. By hinging the duty owed to R.M.V. on the ordinance, the court has not foreclosed either an exception to or abandonment of the traditional categories in the future. I would retain the categories until we can evaluate the ramifications of adopting the single standard of care in light of the results experienced by states which have adopted such a standard.

**DISSENT BY:** McGEE

**DISSENT**

 [*555] MCGEE, Justice

OPINION

There were [**26] four defendants in the trial court. The suit against Landmark Apartments and its management company has been settled. The question in this cause is whether the Chalmette Apartments and Mr. Property Management Company may be held liable for the rape of a minor originating at the Landmark Apartments, but accomplished in a vacant unit of the Chalmette Apartments. The question is answered by determining whether the alleged negligence of the Chalmette Apartments and Mr. Property was a proximate cause of the injury. I would hold that the rape of R.M.V. was not proximately caused by any act or omission of these defendants as a matter of law. Rather, the criminal conduct of an unknown person in this case was unforeseeable, and a superseding cause. Therefore, I dissent.

CAUSE IN FACT

The two elements of proximate cause are cause in fact and foreseeability. *Clark v. Waggoner, 452 S.W.2d 437, 439 (Tex. 1970)*. In *Kerby v. Abilene Christian College, 503 S.W.2d 526 (Tex. 1973)*, this court adopted a "but for" test to determine cause in fact. Under *Kerby*, the alleged negligence is not a cause in fact unless "but for the conduct the accident would not have happened." *503 S.W.2d at* [**27] *528*.

The majority's analysis of cause in fact is premised on the fact that R.M.V. was taken "directly to a vacant apartment at the Chalmette Apartments." The majority views *City of Mobile v. Largay, 346 So.2d 393 (Ala. 1977)*, as a cause in fact case. The majority states that in *Largay*, the assailant did not take Largay directly to the city museum. It is upon this basis that the majority attempts to distinguish *Largay*. I find *Largay*

indistinguishable and would follow it in the present cause.

In *Largay*, the plaintiff was abducted on a public street beside a vacant city museum. As Largay was leaving her car, an unknown man approached her, pulled a knife, and forced her back into her own car. The assailant attempted to start the car and subsequently "dragged her down the sidewalk and through an open cellar door into the vacant city museum building owned by the City of Mobile." *346 So.2d at 394*. The *Largay* court did not place "heavy emphasis" on the assailant's use of the building as a last resort. Indeed, the case did not, and could not, turn on the unknown subjective intent of the assailant. Rather, the *Largay* court based its opinion on foreseeability and [**28] held "as a matter of law, that the use of the unlocked cellar for perpetration of rape was *not* a reasonably foreseeable consequence of the City's failure to maintain the building." *346 So.2d at 395*. (Emphasis in original). Thus, the facts and reasoning of *Largay* recognize that the occurrence of the rape in the city museum was unforeseeable.

Although *Largay* is premised on foreseeability and cause in fact was not discussed, I view *Largay* as support for the position that the alleged negligence of the Chalmette Apartments was not a cause in fact of the rape. *Largay* and the case at bar are distinguished from numerous other cases in that both plaintiffs were dragged onto the premises. In *Largay*, the rapist, having failed to abduct the plaintiff or consummate the crime in the plaintiff's car, merely utilized the nearest available instrumentality. In the event that the city museum was locked, the rape may have occurred in a temporarily unoccupied automobile, business, or unfenced vacant lot.

*Largay* is squarely on point with the case at bar in that here, had the rape not occurred in a vacant unit of the Chalmette Apartments, the nearest available place of solitude [**29] would have afforded a suitable location for the crime. Had R.M.V. been abducted from a private apartment building and dragged into an unlocked city pickup truck, would the City of Dallas be liable for the rape? had R.M.V. been abducted from a city street and dragged into an unlocked private garage, would the landowner be liable for the rape? Had R.M.V. been abducted from a neighborhood store and dragged to a neighbor's backyard, would the neighbor be liable? I think not. [*556] A missing or unlocked door at the Chalmette Apartments was not a cause in fact of R.M.V.'s rape. Under the facts presented here, the criminal's fortuitous choice of venue is not sufficient to satisfy the "but for" test announced in *Kerby*.

## FORESEEABILITY

I would also hold that the rape was not a foreseeable result of the alleged failure to maintain a properly secured door on a vacant unit of the Chalmette Apartments. *RESTATEMENT*

*(SECOND) OF TORTS § 448* (1965), provides that an intentional tort or crime is not a superseding cause if "the actor at the time of his negligent conduct *realized* or *should have realized* the likelihood that such a situation might be created, and that a third person [**30] might avail himself of the opportunity to commit such a tort or crime." The majority cites *Castillo v. Sears Roebuck & Co., 663 S.W.2d 60* (Tex. App. -- San Antonio 1983, writ ref'd n.r.e.); and *Walkoviak v. Hilton Hotels Corp., 580 S.W.2d 623* (Tex. Civ. App. -- Houston [14th Dist.] 1979, writ ref'd n.r.e.), for the broad proposition that a tort-feasor's negligence is not excused in the case of foreseeable criminal conduct. I do not agree with the majority's statement that "Texas courts follow this rule," or *Restatement § 448* in a case such as this.

In *Castillo*, the plaintiffs were approached in a Sears store, told to step outside, and assaulted on the parking lot. The *Castillo* opinion was not based on *Restatement § 448*. Rather, the court focused on the duty owed to the public by a possessor of land who holds the premises open to the public for business purposes. *RESTATEMENT OF TORTS (SECOND) § 344* (1965). Indeed, the *Castillo* court expressly refused to impose liability based on *section 344*:

> It is our opinion that it would be patently unfair and unjust to impose the vague duty of *section 344, RESTATEMENT* OF TORT

(SECOND) (1966) on the shopkeepers [**31] and merchants of Texas to exercise reasonable care to discover the sudden criminal acts of unknown and unidentified persons. . . .

*663 S.W.2d at 66*. In *Walkoviak*, the plaintiff was assaulted in the parking lot of the Shamrock Hilton Hotel. The suit was premised on *Restatement § 344* and the innkeeper's alleged failure to supply adequate security protection or guards. *580 S.W.2d at 625*. *Morris v. Barnette, 553 S.W.2d 648, 649* (Tex. Civ. App. -- Texarkana, 1977, writ ref'd n.r.e.), and *Eastep v. Jack-in-the-Box, Inc., 546 S.W.2d 116* (Tex. Civ. App. -- Houston [14th Dist.] 1977, writ ref'd n.r.e.), are also both grounded on *section 344*. Our courts of appeals are split on the question of whether a landowner, under *section 344*, has a duty to foresee and guard against criminal conduct occurring on the premises. In addition, this court has never recognized the application of either *section 344* or *section 448*. Therefore, liability due to the criminal acts of unknown third persons is far from the settled rule of law which the majority suggests.

The distinction between liability based on *sections 344* and *448* is significant. Under *section 344*, the innkeeper or business [**32] owner who throws his premises open to the public has a higher duty to exercise

reasonable care because of the purpose for which the public has entered. It is a significant extension to hold that under *section 448*, a landowner may be held liable if he fails to foresee and guard against criminal attacks originating off the premises, but accomplished on the landowner's property. Indeed, *section 448* is not limited to landowners, but by its express terms applies to any negligent tortfeasor. I would refuse to apply *section 448* in this cause because, assuming that it should be adopted, the criminal attack on R.M.V. was unforeseeable as a matter of law.

Under *Restatement § 448*, liability is imposed only if the actor (1) realized, or (2) should have realized the likelihood of the commission of an intentional tort or crime by a third person. Under the facts of this cause, neither the *realized* nor *should have realized* prong of *Restatement § 448* has been met.

[*557] The first prong of *section 448* has not been met because there is no showing in the record that the Chalmette Apartments actually *realized* the possibility of a rape occurring on its premises because of its knowledge [**33] of other specific instances of crime. The president of Mr. Property stated in a deposition that he was not aware of any specific reported instances of crime in the Chalmette Apartments. Davis, the owner of Chalmette Apartments, stated that he was not aware of any criminal activity, rapes, assaults, or burglaries occurring at the Chalmette Apartments prior to the rape of R.M.V.

Neither the apartment owner nor manager had knowledge of other instances of crime from which they realized the possibility of rape. Therefore, the first prong of *Restatement § 448* cannot be the basis for liability in this cause.

Thus, the foreseeability issue in this cause is reduced to an analysis of the second prong of *Restatement § 448*. *Should* the Chalmette Apartments have realized the possibility that a young girl would be abducted off the premises, dragged into a vacant apartment, and raped?

The majority assigns "deposition testimony that vagrants frequented the area" as one of the two reasons for the existence of "a material fact question . . . on the foreseeability of this crime." I find the evidence presented in *City of Mobile v. Largay* to be much more compelling than the facts of the present [**34] cause. In *Largay*, the court stated that

there was some testimony which indicated that prior to this incident the building had been broken into on several occasions. According to other testimony, "winos" and derelicts slept in the cellar area of the building; wine and whiskey bottles littered the area in and around the building; and cars parked in the vicinity of the building had been broken into.

Photographs [demonstrated the] state of disrepair.

*346 So.2d at 394*. However, in spite of these facts, the *Largay* court held that no "reasonable inference in support of plaintiff's case on the issue of proximate cause" was established as a matter of law. *Id. at 395*. I agree with the *Largay* court that this evidence does not raise a fact issue on foreseeability.

The second reason relied on by the majority for the existence of a fact question is the occurrence of numerous instances of prior violent crime at the Chalmette Apartments. The majority states that the rape in the present cause was foreseeable because in the two years prior to the rape of R.M.V., "one attempted murder, two aggravated robberies, two aggravated assaults, sixteen apartment burglaries, [**35] four vehicle burglaries, four cases of theft, five cases of criminal mischief, and one auto theft" occurred at the Chalmette Apartments. Deposition testimony shows that the Chalmette Apartments were purchased by Davis in March of 1981. Mr. Property assumed management of the complex on March 27, 1981. Crimes which occurred prior to the purchase and assumption of management cannot possibly be imputed to these defendants so as to put them on notice of the possible rape of R.M.V. Can it be said that through the purchase of a home or building, a landowner is on notice of every crime occurring on the premises since the date of construction?

Under the majority's analysis, the owner is chargeable with such knowledge, and therefore may be held liable for a crime occurring years later on the same premises.

I view the majority opinion as unsupportable, and indeed, the majority can cite no case which supports the proposition that knowledge of crimes occurring before purchase may be imputed to the present landowner. Therefore, the majority analysis is fundamentally flawed in failing to recognize the indisputable proposition that the only crimes relevant in this cause are those occurring after [**36] the purchase of the Chalmette Apartments in March, 1981. Taken in proper context, the record reflects that the majority's "litany of prior crimes, including other violent and assaultive crime" is reduced to only one "assault," for property related burglaries, and one case of criminal mischief.

[*558] The "assault" involved a dispute between common law spouses in which the husband kicked and choked the wife, causing minor scrapes and scratches to the body. The wife refused to press charges. The case of criminal mischief involved the removal of a mailbox door. As a result of the burglaries, a total of five television sets, four stereos, two radios, one clock, and one telephone were stolen from residents of the Chalmette Apartments. With the exception of the intra-family "assault," not one of the crimes which occurred after March of 1981 was even remotely

concerned with bodily harm. All were non-assaultive, property related crimes. No rapes, murders, robberies, aggravated assaults, muggings, or other violent conduct indicating a likelihood of future personal harm occurred on the premises.

Applying the majority's own test, as set out in *Carey v. Pure Distributing Corp., 133* [**37] *Tex. 31, 35, 124 S.W.2d 847, 849 (1939)*, the "general character" of this violent crime could not "reasonably have been anticipated" as a result of property crimes or domestic disputes. Property crimes and domestic disputes are not of the same general character as a rape. Murders, rapes, aggravated assaults, assaults, robberies, or other violent crimes between non-family members are crimes of the same general character as the rape of R.M.V. If evidence of other violent crimes was included in the summary judgment proof, I might agree that a fact question for the jury would exist under *Carey*. However, there is no evidence of other crimes of the same general character as the rape of R.M.V.

We have held that the non-movant, in order to overcome a motion for summary judgment due to the nonexistence of a material fact "must present summary judgment proof when necessary to establish a fact issue." *City of Houston v. Clear Creek Basin Authority, 589 S.W.2d 671, 678 (Tex. 1979)*. It was "necessary" for the plaintiff to offer summary judgment proof in this cause establishing a fact issue on foreseeability. The plaintiff was under a duty to raise a fact issue through evidence of the [**38] existence of other crimes of the same general character as the rape of R.M.V. No such evidence was offered. Viewing the plaintiff's evidence in the light most favorable to her, I find it impossible to think that because of the occurrence of a domestic dispute and non-violent property crimes, the Chalmette Apartments should have realized the possibility of a violent rape originating off the premises, but accomplished in a vacant apartment unit. Foreseeability does not exist in this cause as a matter of law. The trial court correctly granted the motion for summary judgment filed by the Chalmette Apartments and Mr. Property.

The majority opinion sets dangerous precedent and shuns legal support in holding that the plaintiff is entitled to a jury trial. Therefore, I reject the majority's result, as well as the rationale underlying it. Under the majority opinion, the Chalmette Apartments and Mr. Property are forced to defend a lawsuit because the plaintiff has been criminally assaulted on its premises. In other cases which are similar to the present cause, the plaintiff need only offer proof of repeated incidents of shoplifting, theft, or other property crime in order to overcome a motion [**39] for summary judgment. This is the evidence offered in the present cause. The crimes need not occur at a time when the defendant owned the

property. The crimes need not be of the same general character as that perpetrated upon the plaintiff. Under the majority opinion, any crime occurring on the premises is competent summary judgment evidence. The majority opinion does great violence to our summary judgment practice under Rule 166-A and I fear the implications. In *Clear Creek*, this court stated that "the pre-1978 summary judgment rule had a chilling effect on the willingness of trial courts to utilize the intended benefits of the procedure. . . . The new rule attempts to encourage the trial court to utilize the summary judgment in appropriate cases." *589 S.W.2d at 676*. The majority opinion will discourage rather than encourage the use of summary judgments in appropriate cases such as the one [*559] before us. I cannot agree with such an analysis in the present cause. I will not agree with the majority's analysis in the many cases which will follow from it.

Not one of seven cases cited by the majority is on point or in support of its position. No case cited by the majority [**40] deals with an off-premises abduction of the plaintiff. No case cited by the majority is premised on *Restatement § 448*. No case deals with the inference of foreseeable violent crime merely because of the occurrence of prior non-violent property crimes and domestic disputes. No such cases are cited by the majority because *City of Mobile v. Largay*, the only case which can be cited, stands squarely against the

majority's position that this attack was foreseeable.

The majority does cite *Walkoviak* as an example of a case where two robberies in the vicinity of the hotel established the foreseeability of criminal activity. However, the majority overlooks additional facts presented in *Walkoviak*. The *Walkoviak* court specifically noted that because the two "victims came or were brought to the hotel for help, the hotel was then aware of facts" which gave the hotel specific knowledge of past crimes, and therefore, made the hotel aware of the likelihood of future crime on the premises. *580 S.W.2d at 626*. Thus, *Walkoviak*, as well as four other cases cited by the majority are all based on the landowner's actual knowledge of specific instances of crime in the past. *See Kline* [**41] *v. 1500 Massachusetts Avenue Apartment Corp., 141 U.S.App.D.C. 370, 439 F.2d 477, 479 (D.C. Cir. 1970)* ("The landlord had notice of these crimes and had in fact been urged by appellant Kline herself prior to the events leading to the instant appeal to take steps to secure the building."); *Foster v. Winston-Salem Joint Venture, 303 N.C. 636, 281 S.E.2d 36, 40 (1981)* ("Defendants acknowledged that these incidents had been reported and that they were aware of them."); *Trentacost v. Brussel, 82 N.J. 214, 412 A.2d 436, 439 (1980)* (plaintiff at other times "had notified the landlord of the presence of unauthorized persons in the hallways. Plaintiff claimed the defendant had promised to install a lock

on the front door . . . .") §; and *Graham v. M & J Corp., 424 A.2d 103, 105-06 (D.C. App. 1980)* ("The tenants frequently complained to the landlord about the absence of an outer door lock. They explained to the rental agent that intruders and strangers entered the foyer through the open door and committed acts of vandalism . . . [plaintiff] told the rental agent of an attempted burglary through her window."). In cases where the landowner has actual knowledge, fewer criminal [**42] acts of the same general character will suffice to make the landowner aware of the likelihood of a criminal assault. In this cause we do not have actual knowledge of criminal acts. We do not have crimes of the same general character as a rape. We have no crimes from which these defendants should have realized the possibility of rape. Therefore, these cases simply have no application in an analysis of the facts of this cause.

In *Drake v. Sun Bank & Trust Co., 400 So.2d 569* (Fla. Ct. App. -- 1981), the court merely stated that because of other similar crimes occurring on the property, the landowner should have known of the chance of an assault against a customer on the premises. *Drake* is not "instructive" on the point of foreseeability because the court did not state the number of other crimes, the frequency of occurrence, the type or general character of crimes, nor how long the criminal acts had been occurring on the property.

In *Butler v. Acme Markets, Inc., 89 N.J. 270, 445 A.2d 1141 (1982)*, the court held that an assault on the plaintiff was foreseeable when five muggings were committed during the preceding four months. However, the facts presented in *Butler* [**43] are far from the facts presented in the instant cause. The assault suffered by the plaintiff in *Butler* was of the same general character as the muggings previously occurring on the premises. Therefore, the assault in *Butler* was foreseeable because the past history of muggings made a future mugging probable and predictable, not merely conceivable or possible.

[*560] Any injury suffered by a member of our society may be said to be possible. Yet, in order for an injury to be compensable, it must to a degree be said to be the probable result of a negligent act or omission of the defendant. Indeed, the difference between an injury which to some degree is probable and one which is merely possible is the difference between liability and exoneration from liability. The facts in this cause demonstrate that it is possible for a young girl to be abducted, dragged across a public street, and raped in a vacant unit of the Chalmette Apartments. However, I would hold that this possibility was not to any degree a probable consequence of the alleged failure to secure an apartment door. The Chalmette Apartments should not have realized the likelihood of rape merely because of the occurrence [**44] of a

domestic dispute and five prior property crimes.

I would adhere to the foreseeability analysis set out by the court in *City of Mobile v. Largay, 346 So.2d 393 (Ala. 1977).* The *Largay* court held that the criminal assault was unforeseeable as a matter of law. The criminal conduct of an unknown assailant in this cause was also unforeseeable as a matter of law. The injury to R.M.V. was neither caused in fact nor a foreseeable result of the alleged negligence of these defendants. I would hold that proximate cause was disproved as a matter of law because the criminal assault by an unknown assailant was a superseding cause.

I would affirm the judgments of the trial court and court of appeals.

Dissenting Opinion in which Justices Wallace and Gonzalez join.



**SAFETY NATIONAL CASUALTY CORP., AGENT MANUEL LEYVA D/B/A ROCKY BAIL BONDS, Appellant v. THE STATE OF TEXAS**

**NO. PD-0413-07**

**COURT OF CRIMINAL APPEALS OF TEXAS**

*273 S.W.3d 157*; *2008 Tex. Crim. App. LEXIS 641*

**May 14, 2008, Delivered**

**NOTICE:** PUBLISH

**SUBSEQUENT HISTORY:** Rehearing denied by *In re Safety Nat'l Cas. Corp., 2008 Tex. Crim. App. LEXIS 1004 (Tex. Crim. App., Aug. 20, 2008)*

**PRIOR HISTORY:** [**1]
  ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW FROM THE EIGHTH COURT OF APPEALS EL PASO COUNTY.
*Safety Nat'l Cas. Corp. v. State, 225 S.W.3d 684, 2006 Tex. App. LEXIS 10305 (Tex. App. El Paso, 2006)*

**COUNSEL:** For APPELLANT: Ken W. Good, Tyler, TX.

For STATE: Arne Schonberger, ASST. COUNTY ATTORNEY, El Paso, TX; Jeffrey L. Van Horn, STATE'S ATTORNEY, Austin, TX.

**JUDGES:** MEYERS, J., delivered the opinion of the Court, in which KELLER, P.J., and PRICE, WOMACK, JOHNSON, KEASLER, HERVEY, HOLCOMB, and COCHRAN, JJ., joined. COCHRAN, J., filed a concurring opinion.

**OPINION BY:** Meyers

**OPINION**

[*158] Appellant, Safety National, sought exoneration from the forfeiture of a bond due to the incarceration of the defendant. *See Article 22.13(a)(5) of the Texas Code of Criminal Procedure.* [1] The trial court entered a judgment in favor of the State for one half the amount of the original bond and entered findings of fact concluding that *Article 22.13 (a)(5)* unconstitutionally interferes with the trial court's discretion and with the finality of judgments. [2] Appellant appealed, and the court of appeals

affirmed the judgment of the trial court. *Safety National v. State, 225 S.W.3d 684 (Tex. App.--El Paso 2006).* We granted review to consider the constitutionality of *Articles 22.13(a)(5)* and *22.16(a).* We hold that the statutes are constitutional and remand the cause to the trial court.

1  Unless otherwise specified, all future references to Articles refer to the Texas Code of Criminal Procedure.

2  The relevant  [**2] part of *Article 22.13* states:

(a) The following causes, and no other, will exonerate the defendant and his sureties, if any, from liability upon the forfeiture taken:

5. The incarceration of the principal in any jurisdiction in the United States:

(A) in the case of a misdemeanor, at the time of or not later than the 180th day after the date of the principal's failure to appear in court; or

(B) in the case of a

felony, at the time of or not later than the 270th day after the date of the principal's failure to appear in court.

**FACTS**

Appellant posted a $ 10,000 bond on behalf of Willie Guerrero, who was charged [*159] with felony theft and was due to appear for a hearing on March 25, 2004. When a Safety National employee learned that Guerrero failed to appear at the hearing, she located him and informed the court coordinator that Guerrero would appear that afternoon. Instead, the coordinator told Appellant to bring Guerrero to court the following morning. Guerrero appeared the following morning and gave the trial judge several reasons for his failure to appear at his scheduled time, including the weather, car trouble, and that he had forgotten. The trial judge was offended by Guerrero's attitude and,  [**3] as a result, entered a judgment nisi forfeiting the bond and placed Guerrero in custody. He was later released on a new bond. At the final hearing on the judgment nisi, Appellant argued that it was entitled to exoneration under *Code of Criminal Procedure Article 22.13(a)(5)* because Guerrero was

incarcerated the day after his failure to appear. The court entered a judgment for the State for $ 5,000 plus court costs and entered findings of fact and conclusions of law stating that *Article 22.13(a)(5)* is unconstitutional.

The trial court included the following in its findings of fact and conclusions of law: *Article 22.13(a)(5)* affects the timing and the finality of judgments and interferes with the core powers of the court and the administration of justice; the statute hampers the discretion of the court in controlling the time of trials and judgments because "to avoid multiple post-judgment actions, further tying up its docket, it would have to wait 9 months to enter a final judgment" and it places virtual time and amount limits out of the discretion of the court; *Article V, Sections 1* and *8, of the Texas Constitution* [3] vest power over bond forfeitures in the judicial branch and *Article 22.13(a)(5)* [**4] interferes with that power; the stated purpose of a bond is to have an orderly docket by having defendants appear on time and for sureties to assist with that-to allow a defendant to interfere with the court's docket by not showing up for trial "without forfeiture of any portion of the bond would cause future, similar behavior by the defendants in this case and by other Sureties and accused persons"; and, taking away "discretion to order payment of all or part of a bond vitiates the purpose of a bond and would create havoc with the Court's calendar,

allowing defendants to wonder [sic] in at a time and date of their own choosing."

3   *See Article V, § 1* ("The judicial power of this State shall be vested in one Supreme Court, in one Court of Criminal Appeals, in Courts of Appeals, in District Courts, in County Courts, in Commissioners Courts, in Courts of Justices of the Peace, and in such other courts as may be provided by law. The Legislature may establish such other courts as it may deem necessary and prescribe the jurisdiction and organization thereof, and may conform the jurisdiction of the district and other inferior courts thereto."); *Article V, § 8* ("District Court jurisdiction consists [**5] of exclusive, appellate, and original jurisdiction of all actions, proceedings, and remedies, except in cases where exclusive, appellate, or original jurisdiction may be conferred by this Constitution or other law on some other court, tribunal, or administrative body. District Court judges shall have the power to issue writs necessary to enforce their jurisdiction.The District Court shall have appellate jurisdiction and general supervisory control over the County Commissioners Court, with such exceptions and under such regulations as may be prescribed by law.").

Appellant appealed, arguing that the trial court's failure to exonerate was error and that the legal conclusions regarding *Article 22.13(a)(5)* were erroneous. The court of appeals overruled these arguments and considered only Appellant's argument that it was entitled to mandatory remittitur under *Article 22.16(a)* because Guerrero was released on a new bond in [*160] the case. The court of appeals held that the current version of *Article 22.16(a)* violates *Article II, section 1, of the Texas Constitution* [4] because it provides for mandatory remittitur at any time prior to final judgment if the defendant principal is released on new bail [**6] in the case or the case for which bond is given is dismissed. In doing so, the legislature has removed the trial court's discretion to remit the bond in the event new bail is given or the criminal case is dismissed. *Safety National, 225 S.W.3d 684, 691-92*.

> 4 *Article II, § 1*, discusses the Division of Powers and states, "The powers of the Government of the State of Texas shall be divided into three distinct departments, each of which shall be confided to a separate body of magistracy, to wit: Those which are Legislative to one; those which are Executive to another, and those which are Judicial to another; and no person, or collection of persons, being of one of these departments, shall exercise any power properly attached to either of the others, except in the instances herein expressly permitted."

Appellant filed a petition for discretionary review asking us to determine whether the court of appeals properly found that *article 22.16(a) of the Texas Code of Criminal Procedure* is unconstitutional based on a violation of the separation-of-powers provision in the Texas Constitution. We additionally granted review on our own motion to determine whether *article 22.13(a)(5) of the Texas Code of Criminal Procedure* is [**7] unconstitutional based on a violation of the separation-of-powers provision in the Texas Constitution.

## ARGUMENTS OF THE PARTIES

Appellant argues that *articles 22.13* and *22.16* do not order a trial court to alter a final judgment and do not tell the trial court when it can enter a final judgment. Rather, *Article 22.13* provides affirmative defenses for the surety, and *Article 22.16* sets out the limited situations wherein the surety may seek remittitur of the bond prior to final judgment. Even after final judgment, Chapter 22 allows a special procedure under which the surety may seek the return of a portion of the bond amount. *See Article 22.17*. The legislature amended Chapter 22 in 2003, removing the limitations on the trial court's ability to enter a final judgment and setting out the situations in which a bondsman is entitled to a full remittitur if the request is made while the court has jurisdiction

over the case. The time limits in *Article 22.13(a)(5)* apply to the surety, not to the trial court. They are an expiration date on the surety's ability to use the defense that the principal is incarcerated, not a mandate telling the state when to enter a judgment; thus, the time periods do [**8] not prevent the trial court from entering a final judgment at any time. *Article 22.16* also does not place time limits or restrictions on a trial court's ability to enter a final judgment. It provides for mandatory remittitur prior to the entry of the final judgment only in the limited situation of the principal being released on new bail in the case or if the case is dismissed, and for discretionary remittitur for good cause shown.

The time limits in the statutes simply place the burden on bondsmen to file a motion for remittitur while the court still has jurisdiction over the case and do not place restrictions on the court's ability to enter judgment, therefore, the statutes do not violate the separation-of-powers doctrine of the Texas Constitution. Finally, Appellant argues that the legislature has indicated an intent to reward bondsmen who assist the state in returning to custody principals who fail to appear, because the purpose of bail is to secure the presence of the accused, not to be a revenue device or to be punitive or to substitute for [*161] a fine. Without bondsmen, the court dockets would be even worse, and the state would either have to hire more officers to seek out defendants [**9] who are on bond and fail to appear or build more jails to hold those who are not released on bond.

The State argues that, through *Articles 22.13(a)(5)* and *22.16*, "the Legislature told the Court what judgment it must enter and in so doing has improperly exercised power reserved to the judicial branch of government to hear controversies and apply discretion to determine the amount of the judgment" and "by requiring a zero judgment in all cases, no matter what the circumstances, (i.e. the amount of the bond, the reason for missing court and the delay caused), the Legislature is improperly usurping a judicial function." This removes the court's power to consider facts related to the reason for the failure to appear and to enter a judgment based on those facts. Courts are also prevented by *Article 22.13(a)(5)* from entering a judgment for nine months because there is no guidance for the court concerning situations wherein a final judgment is given prior to nine months and the defendant is returned after the judgment but before the nine months have expired. This interferes with the court's ability to control its docket because the court's judgment would not actually be final until 270 days [**10] had passed since, even if final judgment were entered, it would be nullified or would have to be reformed if the defendant became incarcerated within that time period. The State claims that subsequent appearance should not exonerate a forfeiture because that

would allow defendants to keep missing hearings until there are no witnesses or evidence against him, and therefore, there should be a penalty for failure to appear at the designated time. Complete remission of the forfeiture would mean that the defendant is not really bound to appear and can create continuances at will. Because the court has the discretion to set the amount of the bail, and the purpose of a bond is to assure the fulfillment of an obligation to appear in court and to pay a penalty if that obligation is not fulfilled, the State asserts that it violates the separation-of-powers doctrine for the Legislature to make the bond unenforceable through forced exoneration and for the surety to have the same risk whether the court sets a high or low bond. As such, the Legislature has made failure to appear an offense without a penalty, which interferes with the orderly processes of the courts. The State points out that, in [**11] *Lyles v. State, 850 S.W.2d 497, 501 (Tex. Crim. App. 1993)*, this Court said that the old statute requiring mandatory remittitur at any time prior to final judgment removed a trial court's discretion. Under the same reasoning, forcing a court to enter a zero judgment against a bond also violates separation of powers.

## CASE LAW

The former version of *Article 22.16* encompassed both the issues of the principal's incarceration and the principal's release on new bail. The

legislature amended *Article 22.16* in 2003 and moved the section that addressed the principal's incarceration to *Article 22.13*. In *Armadillo Bail Bonds v. State 802 S.W.2d 237 (Tex.Cr.App.,1990)*, *State v. Matyastik, 811 S.W.2d 102 (Tex. Crim. App. 1991)*, and *Lyles,* we held that the former statute was unconstitutional.

Considering the former version of *Article 22.16*, which placed time restrictions upon when a final judgment could be entered, [5] *Armadillo* held that the restrictions [*162] on the court's right to determine when to decide a case violated the separation-of-powers provision of the Texas Constitution. We stated, "We have held repeatedly that the separation of powers provision may be violated in either of two ways. First, it [**12] is violated when one branch of government assumes, or is delegated, *to whatever degree,* a power that is more 'properly attached' to another branch. The provision is also violated when one branch *unduly* interferes with another branch so that the other branch cannot *effectively* exercise its constitutionally assigned powers." *Armadillo, 802 S.W.2d at 239* (internal citations omitted) (emphasis in original). We explained that the judicial branch has the power to hear evidence, decide issues of fact, decide questions of law, enter a final judgment on the facts and the law, and execute the final judgment or sentence, and the Legislature has authority over judicial administration, as long as it does not infringe upon the

substantive power of the judicial branch. *Id. at 239-240*. In *Matyastik,* we extended our holding in *Armadillo,* eliminating the time restrictions in *Article 22.16(c)* and determining that remittitur may occur anytime between forfeiture and the entry of a final judgment. *Matyastik, 811 S.W.2d at 104*. We considered this issue again in *Lyles v. State* and held that the mandatory remittitur provisions of *Article 22.16* are void, but because *Article 22.16(d)* allows the trial court to [**13] remit all or part of the bond at the court's discretion prior to the entry of a final judgment, that subsection does not violate the separation-of-powers. *850 S.W.2d at 501*.

5   Former *Article 22.16* stated:

(a) After forfeiture of a bond and before the expiration of the time limits set by Subsection (c) of this article, the court shall, on written motion, remit to the surety the amount of the bond after deducting the costs of court, any reasonable costs to the county for the return of the principal, and the interest accrued on the bond amount as provided by Subsection (e) of this article if:

(1) the principal is incarcerated in the county in which the prosecution is pending;

(2) the principal is incarcerated in another jurisdiction and the incarceration is verified as provided by Subsection (b) of this article;

(3) the principal is released on new bail in the case;

(4) the principal is deceased; or

(5) the case for which bond was given is dismissed.

(b) For the purposes of Subsection (a)(2) of this article, a surety may request confirmation of the incarceration of his principal by written request to the law enforcement agency of the county where prosecution is pending. A law enforcement agency [**14] in this state that receives a request for verification shall notify the court in which prosecution is pending and the surety whether or not the principal is or has been incarcerated in another jurisdiction and the date of the incarceration.

(c) A final judgment may be entered against a bond not earlier than:

(1) nine months after the date the forfeiture was entered, if the offense for which the

bond was given is a misdemeanor; or

(2) 18 months after the date the forfeiture was entered, if the offense for which the bond was given is a felony.

(d) After the expiration of the time limits set by Subsection (c) of this article and before the entry of a final judgment against the bond, the court in its discretion may remit to the surety all or part of the amount of the bond after deducting the costs of court, any reasonable costs to the county for the return of the principal, and the interest accrued on the bond amount as provided by Subsection (e) of this article.

(e) For the purposes of this article, interest accrues on the bond amount from the date of forfeiture in the same manner and at the same rate as provided for the accrual of prejudgment interest in civil cases.

## ANALYSIS

In discussing [**15] the reasons for the 2003 amendments to *Articles 22.13* and *22.16*, the Legislature stated that, "the state is more interested in having the defendant appear than in receiving forfeited bond money. Setting time limits on when bonds would be forfeited would result in more defendants ultimately appearing in [*163] court because bondsmen would have a financial incentive to produce the principal many weeks after he or she originally failed to appear in court . . . [and] would give bondsmen consistency for principals who were incarcerated, while allowing a judge to adjust the time period as needed in a particular case." SENATE COMM. ON CRIMINAL JURISPRUDENCE, BILL ANALYSIS, Tex. S.B. 1336, 78th Leg., R.S. (2003).

As we stated in *State v. Sellers, 790 S.W.2d 316, 321 (Tex. Crim. App. 1990)*, a judgment nisi alone does not authorize recovery of a bond amount by the State. A judgment nisi is a provisional judgment that is not final or absolute, but may become final. *See Article 22.14*. Nisi means "unless," so a judgment nisi is valid unless a party shows cause why it should be withdrawn. In the case before us, Appellant argues that there are two reasons that the judgment should be withdrawn. First, the [**16] defendant was incarcerated the day after his initial failure to appear, which, under *Article 22.13(a)(5)*, triggers exoneration from the forfeiture of the bond. Second, the defendant was released on new bond in the same case after he was arrested on the warrant resulting from the judgment nisi, which is a reason for remittitur prior to final judgment under *Article 22.16 (a)*.

The State reads *Article 22.13(a)(5)* to mean that the court cannot enter a final judgment for nine months because then it would have "multiple post-judgment

actions" if the defendant returned after final judgment but within nine months after his failure to appear. However, *Article 22.13* does not say that the trial court must wait until the time in subsection (a)(5) lapses to enter a final judgment. The statute does not prohibit the entry of a judgment or dictate when the judgment must be entered. In fact, *Article 22.13* says nothing about the entry of a final judgment--it simply provides the surety with a defense if the defendant is incarcerated within nine months after he fails to appear. If that term ends before the court enters a final judgment on the bond, under *Article 22.13*, the court must remit the amount of [**17] the bond.

The State also implies that *Article 22.13(a)(5)* is triggered by the defendant's incarceration, whether or not he is returned, and that he will be exonerated without ever appearing in court, stating that "*Article 22.13(a)(5)* requires a zero judgment regardless of the crime for which the defendant is arrested and without the actual return of the Defendant-Principal to the County of his prosecution." (Emphasis in Respondent's Brief on the Merits). This is simply incorrect. As specifically stated in *Article 22.13(b)*, a surety exonerated under subsection *(a)(5)* remains obligated to pay costs incurred by a county to secure the return of the principal. Similarly, the court must remit the amount of the bond under *Article 22.16* if the defendant has been given new bond *in the same case* or the case

has been dismissed. It makes sense that when a new bond is issued in a case, the old bond should be remitted; this does not mean that a defendant can be on bond somewhere else for some other case and be entitled to full remittitur. Both Articles *22.13* and *22.16* require remittitur only in specific, limited situations--situations in which the return of the defendant is certain (because the defendant [**18] is incarcerated elsewhere), the return is secured by another bond in the same case, or the return is unnecessary (because the case has been dismissed). [6]

6    We note that there are other situations in the Code of Criminal Procedure in which the legislature has limited the circumstances under which courts may provide a requested remedy. For example, in *Articles 11.07, § 4* and *11.071, § 5*, the legislature tells us under what limited conditions we may consider a subsequent application for writ of habeas corpus.

[*164]    The point of *Article 22.13(a)(5)* is that, if the defendant is incarcerated when or shortly after he failed to appear, securing his return to appear is quite easy and does not require the assistance of a bondsman. Because the county would incur the cost to transfer the defendant from another jurisdiction, *Article 22.13(b)* makes the surety liable for any costs incurred by the county to secure the return of the defendant. But the statute does not

require a court to wait nine months before entering a final judgment, and thus, does not interfere with a court's timing or finality of judgments. In this case, Guerrero was returned the day after his failure to appear and was in court prior [**19] to the forfeiture of the bond. He was placed in custody at the same time the court entered the judgment nisi forfeiting the bond. And Appellant requested remittitur under *Article 22.13* prior to the entry of final judgment. Therefore, the State's hypothetical regarding *Article 22.13* forcing the trial court to wait nine months before entering judgment does not apply to this situation.

We disagree with the State's argument that there is no guidance for the court concerning situations wherein a final judgment is given prior to nine months and the defendant is returned after the judgment but before the nine months have expired. *Article 22.17* specifically allows for a special bill of review up to two years after a final judgment has been entered, which may include a request that all or part of the forfeited bond be returned. The State is also incorrect that complete remission of the forfeiture would mean that the defendant is not really bound to appear and can create continuances at will and that the Legislature has made failure to appear an offense without a penalty. There are penalties, such as contempt and additional criminal charges, that can be pursued to punish a defendant for failure [**20] to appear, or the court can require a cash-only bond in lieu of a surety bond. *See Article 23.05(a).* And bail is not intended to be punitive or to be a revenue device. Bail bonding is a business; therefore, having to pay court costs and interest for the time during which a defendant fails to appear is incentive for the bondsman to secure the attendance of the defendant at his scheduled hearing. The surety does not have the same risk when the court sets a high bail as it has when the court sets a low one, because a high bond has higher interest for the time it takes the surety to return the defendant.

## CONCLUSION

*Articles 22.13* and *22.16* do not interfere with the trial court's ability to enter final judgment, nor do they dictate the time frame within which a trial court may enter a final judgment. The statutes do not violate the separation-of-powers doctrine and thus are not unconstitutional. The decision of the court of appeals is reversed, and the cause is remanded to the trial court.

Meyers, J.

Delivered: May 14, 2008

Publish

**CONCUR BY:** COCHRAN

**CONCUR**

COCHRAN, J., filed a concurring opinion.

OPINION

The State discusses several valid reasons why *Article 22.13*, dealing with the exoneration of a bail bond, may [**21] be a counterproductive statute that ties the hands of judges and thwarts the purpose of having a surety in the first place. Nonetheless, I agree with the majority that these deficits do not rise to the level of an unconstitutional [*165] violation of the separation-of-powers doctrine. These are matters that are best left to the Legislature and to local governments that may increase their reliance upon non-profit Pretrial Services programs. The majority aptly notes, "Bail bonding is a business[.]" [1] Indeed it is. To the extent that the interests of the bail bond business and the needs of the criminal justice system are not on the same track, local and state governments are free to make appropriate adjustments. Courts do not decide the wisdom of such laws, they decide only their constitutionality.

1  Majority Op. at 13.

I therefore join the majority opinion.

Filed: May 14, 2008

Publish



## STATE OF TEXAS, APPELLANT v. BOB MATYASTIK, ET AL., Appellees

### No. 632-90

### COURT OF CRIMINAL APPEALS OF TEXAS

### *811 S.W.2d 102*; *1991 Tex. Crim. App. LEXIS 90*

### May 8, 1991, Delivered

**PRIOR HISTORY:** [**1] Petition for Discretionary Review from the Tenth Court of Appeals; Robertson County.

**COUNSEL:** Attorney for appellant: Jimmie McCullough, D. A. & Dale Freeman, Asst. D. A., Franklin, Texas.

Attorneys for appellee: Jane Matyastik Vorwerk, Taylor, Texas, Bob Matyastik, pro se, Cameron, Texas.

Attorney for State: Robert Huttash, State's Attorney, Austin, Texas.

**JUDGES:** En Banc. Miller, Judge. Campbell, Judge, not participating.

**OPINION**

[*102] *OPINION ON STATE'S PETITION FOR DISCRETIONARY REVIEW*

This is a criminal bail bond forfeiture case. The State petitioned this Court for review on four grounds, two of which we granted, to-wit: 1) to determine whether the court of appeals erred in finding *Art. 22.16, V.A.C.C.P.,* constitutional; and 2) to determine whether the court of appeals erred in affirming the trial court's remittitur of a final judgment without a bill of review or proper appellate procedure. Because we find Art. 22.16(a) and (c)(1), V.A.C.C.P., unconstitutional we will reverse the court of appeals.

Herbert Clifton Sheeley, charged with the misdemeanor of violation of probation on an original charge of driving while intoxicated, [*103] failed to appear for [**2] trial on January 22, 1988. The trial court then rendered a judgment nisi for $ 2,500, the bond amount, against the principal, Herbert Sheeley, and Bob Matyastik and Dolores

Sheeley, sureties. On June 27, 1988, appellees filed a motion for remittitur pursuant to *Art. 22.16, V.A.C.C.P.,* alleging that the principal, Herbert Sheeley, had died on May 23, 1988, citing Art. 22.16(a)(4). Additionally, appellant requested remittitur based on the fact that the offense was a misdemeanor and less than nine months had passed since the bond forfeiture. Art. 22.16(c)(1). The trial court ordered remittitur on June 27, 1988. The State petitioned the trial court to vacate the order, which was denied.

The State appealed the order of remittitur to the Tenth Court of Appeals raising sixteen points of error. [1] The court of appeals overruled all sixteen points and affirmed the judgment of the trial court in an unpublished opinion. State v. Matyastik, et al., (Tex.App. -- Waco, No. 10-88-162-CV, delivered January 25, 1990). The critical question raised in the court of appeals and in this Court is the constitutionality of *Art. 22.16, V.A.C.C.P.* Specifically, two sections of the statute are in issue. Art. [**3] 22.16(a) provides in pertinent part:

(a) After forfeiture of a bond and before the expiration of the time limits set by Subsection (c) of this article, the court shall, on written motion, remit to the surety the amount of the bond after deducting the costs of court, any reasonable costs to the county for the return of the principal, and the interest accrued on the bond amount as provided by Subsection (e) of this article if:

. . .

(4) the principal is deceased; . . . Art. 22.16(c) provides:

(c) A final judgment may be entered against a bond not earlier than:

(1) nine months after the date the forfeiture was entered, if the offense for which the bond was given is a misdemeanor; or

(2) 18 months after the date the forfeiture was entered, if the offense for which the bond was given is a felony.

1  Points one and two asserted that the trial court erred in granting the remittitur order on June 27 because the trial court lacked jurisdiction, the judgment having become final on June 20. Points three through six alleged insufficient evidence of the death of the principal on the bond. Points seven through fourteen alleged that *Art. 22.16, V.A.C.C.P.,* was unconstitutional as a violation of the separation of powers. Points fifteen and sixteen asserted trial court error in not giving credence to the State's claim for recovery on a contract theory if the remittitur question was resolved in appellant's favor.

[**4]  The court of appeals found Art. 22.16 constitutional in its entirety. This Court, however, has since found Art. 22.16(c)(2) unconstitutional as a violation of the separation of powers provision of the Texas *Constitution.*

*TEX.CONST.art. 2, § 1.* [2] See *Armadillo Bail Bonds v. State, 802 S.W.2d 237 (Tex.Cr.App. 1990).*

[2] *Article 2, § 1 of the Texas Constitution* provides:

The powers of the Government of the State of Texas shall be divided into three distinct departments, each of which shall be confided to a separate body of magistracy, to wit: Those which are Legislative to one, those which are Executive to another, and those which are Judicial to another; and no person, or collection of persons, being of one of these departments, shall exercise any power properly attached to either of the others, except in the instances herein expressly permitted.

In *Armadillo Bail Bonds* this Court held that the statute prohibiting entry of a final judgment in a bail bond forfeiture felony case until 18 months after [**5] entry of forfeiture [Art. 22.16(c)(2) unduly interfered with the judiciary's effective exercise of its constitutionally assigned power to enter final judgments. [3] See *TEX.CONST.art. 5, § 1* (judicial power constitutionally vested in certain courts). This Court has envisioned such power to include *inter alia* the entry of a final judgment on the facts and the law and the execution of a final judgment [*104] or sentence. *Kelley v. State, 676 S.W.2d 104, 107 (Tex.Cr.App. 1984)* and cases cited therein. We reaffirmed this concept in *Armadillo Bail Bonds, 802*

*S.W.2d at 240.* In analyzing the statutory interference with the judiciary's "core power" [to enter final judgments], the Court reasoned " . . . if Article 22.16(c)(2) is valid, then the Legislature has the power to render the Judiciary impotent with respect to the entry of final judgments." *Id. at 241.*

[3] The court of appeals in *Armadillo Bail Bonds* noted that "nothing prevents the legislature from imposing an *interminable* delay in obtaining final judgment." *Armadillo Bail Bonds v. State, 772 S.W.2d 193, 197* (Tex.App. -- Dallas 1989) (emphasis supplied). See *Armadillo Bail Bonds, 802 S.W.2d at 239.*

[**6] As this Court noted, the separation of powers provision may be violated when one branch exercises power that is more appropriately connected with another branch or when one branch unduly interferes with another to the extent that the other branch cannot effectively exercise its constitutional powers. See *Armadillo Bail Bonds, 802 S.W.2d at 239* and cases cited therein. Article 22.16(c)(2) restrained the court from entering a final judgment in that case, a felony, for at least a period of 18 months, thereby interfering with the judiciary's "core power" of entering a final judgment. Thus, the Court held the statute unconstitutional because it violated the separation of powers provision of the State Constitution in that the statute

allowed the legislature to usurp a judicial function. Id.

The case *sub judice* deals with a misdemeanor and thus activates section (c)(1) of the statute, which prohibits the court from entering a final judgment in such a case for a nine month time period. Comparatively, *Armadillo Bail Bonds* was a felony case with an 18-month time restriction, while the case at bar involves a misdemeanor with a nine-month time limit. We find the reasoning with [**7] regard to section (c)(2) in *Armadillo Bail Bonds* applicable to the situation in the case at bar with regard to section (c)(1), since both sections concern a legislatively imposed statutory restraint on a trial court's ability to utilize its power to enter final judgments. We thus extend the *Armadillo Bail Bonds* ruling to apply in misdemeanor cases, and therefore hold *Art. 22.16(c)(1), V.A.C.C.P.,* unconstitutional.

Having determined that Art. 22.16(c)(1) and (2) unduly interfere with the court's exercise of the judicial function, we now examine whether the same is true of Art. 22.16(a), which provides in pertinent part: (a) After forfeiture of a bond *and before the expiration of the time limits set by Subsection (c) of this article, the court shall* . . . (emphasis added). It is well settled that if one part of a statute is held unconstitutional, the remainder of the statute continues to be valid. *Tex. Gov't Code Ann. § 311.032(c).* [4] *Ex parte Jones, 803 S.W.2d 712* (invalidity of part

of a statute does not necessarily destroy the whole act). See also *Meshell v. State, 739 S.W.2d 246 (Tex.Cr.App. 1987)* (separation of powers case discussing severability of statutes). We [**8] note that subsection (a) is contingent upon the time limitations established in subsection (c), and thus has no effect without the invalid provisions. Recently we stated in *Jones* that " . . . should part of the bill be held invalid . . . 'the remainder of the statute must be sustained if it is complete in itself and capable of being executed in accordance with the intent wholly independent of that which has been rejected.'" Id., slip op. at 2, quoting *Tussey v. State, 494 S.W.2d 866, 870 (Tex.Cr.App. 1973).* Because subsection (a) cannot be executed or have any effect without utilizing the provisions of subsection (c), we hold that the portion of *Art. 22.16(a), V.A.C.C.P.,* utilizing subsection (c) is invalid under *Article 2, § 1 of the Texas Constitution.* [5] Thus, remittitur now may be done anytime between forfeiture and entry of a final judgment. The State's first ground for review is sustained.

4   *Section 311.032(c)* of the Code Construction Act reads as follows:

(c) In a statute that does not contain a provision for severability or nonseverability, if any provision of the statute or its application to any person or circumstance is held invalid, the invalidity does not affect other provisions or applications of the statute that can

be given effect without the invalid provision or application, and to this end the provisions of the statute are severable.

[**9]

5      Although I dissented in *Armadillo Bail Bonds,* I strongly adhere to the doctrine of "stare decisis," which leads to the ruling in the instant case.

[*105]      Having decided the constitutional issue in the case at bar, we need not address the State's second ground for review. The judgment of the court of appeals is reversed and the remittitur order of the trial court is vacated.



LexisNexis (R) Texas Annotated Statutes
Copyright © 2014 by Matthew Bender & Company, Inc.
a member of the LexisNexis Group
All rights reserved.

*** This document is current through the 2013 3rd Called Session ***

CODE OF CRIMINAL PROCEDURE
TITLE 1.  CODE OF CRIMINAL PROCEDURE OF 1965
ARREST, COMMITMENT AND BAIL
CHAPTER 17.  BAIL

## Art. 17.01.  Definition of "Bail"

"Bail" is the security given by the accused that he will appear and answer before the proper court the accusation brought against him, and includes a bail bond or a personal bond.

**HISTORY:** Enacted by Acts 1965, 59th Leg., ch. 722 (S.B. 107), § 1, effective January 1, 1966.

## Art. 17.02.  Definition of "Bail Bond"

A "bail bond" is a written undertaking entered into by the defendant and the defendant's sureties for the appearance of the principal therein before a court or magistrate to answer a criminal accusation; provided, however, that the defendant on execution of the bail bond may deposit with the custodian of funds of the court in which the prosecution is pending current money of the United States in the amount of the bond in lieu of having sureties signing the same. Any cash funds deposited under this article shall be receipted for by the officer receiving the funds and, on order of the court, be refunded, after the defendant complies with the conditions of the defendant's bond, to:

(1) any person in the name of whom a receipt was issued, in the amount reflected on the face of the receipt, including the defendant if a receipt was issued to the defendant; or

(2) the defendant, if no other person is able to produce a receipt for the funds.

**HISTORY:** Enacted by Acts 1965, 59th Leg., ch. 722 (S.B. 107), § 1, effective January 1, 1966; am. Acts 2011, 82nd Leg., ch. 978 (H.B. 1658), § 1, effective September 1, 2011.

## Art. 17.08.  Requisites of a Bail Bond

A bail bond must contain the following requisites:

1. That it be made payable to "The State of Texas";

2. That the defendant and his sureties, if any, bind themselves that the defendant will appear before the proper court or magistrate to answer the accusation against him;

3. If the defendant is charged with a felony, that it state that he is charged with a felony. If the defendant is charged with a misdemeanor, that it state that he is charged with a misdemeanor;

4. That the bond be signed by name or mark by the principal and sureties, if any, each of whom shall write thereon his mailing address;

5. That the bond state the time and place, when and where the accused binds himself to appear, and the court or magistrate before whom he is to appear. The bond shall also bind the defendant to appear before any court or magistrate before whom the cause may thereafter be pending at any time when, and place where, his presence may be required under this Code or by any court or magistrate, but in no event shall the sureties be bound after such time as the defendant receives an order of deferred adjudication or is acquitted, sentenced, placed on community supervision, or dismissed from the charge;

6. The bond shall also be conditioned that the principal and sureties, if any, will pay all necessary and reasonable expenses incurred by any and all sheriffs or other peace officers in rearresting the principal in the event he fails to appear before the court or magistrate named in the bond at the time stated therein. The amount of such expense shall be in addition to the principal amount specified in the bond. The failure of any bail bond to contain the conditions specified in this paragraph shall in no manner affect the legality of any such bond, but it is intended that the sheriff or other peace officer shall look to the defendant and his sureties, if any, for expenses incurred by him, and not to the State for any fees earned by him in connection with the rearresting of an accused who has violated the conditions of his bond.

**HISTORY:** Enacted by Acts 1965, 59th Leg., ch. 722 (S.B. 107), effective January 1, 1966; am. Acts 1999, 76th Leg., ch. 1506 (S.B. 403), § 1, effective September 1, 1999.



LexisNexis (R) Texas Annotated Statutes
Copyright © 2014 by Matthew Bender & Company, Inc.
a member of the LexisNexis Group
All rights reserved.

\*\*\* This document is current through the 2013 3rd Called Session \*\*\*

CODE OF CRIMINAL PROCEDURE
TITLE 1.  CODE OF CRIMINAL PROCEDURE OF 1965
AFTER COMMITMENT OR BAIL AND BEFORE THE TRIAL
CHAPTER 22.  FORFEITURE OF BAIL

## Art. 22.10. Scire Facias Docket

When a forfeiture has been declared upon a bond, the court or clerk shall docket the case upon the scire facias or upon the civil docket, in the name of the State of Texas, as plaintiff, and the principal and his sureties, if any, as defendants; and, except as otherwise provided by this chapter, the proceedings had therein shall be governed by the same rules governing other civil suits.

**HISTORY:** Enacted by Acts 1965, 59th Leg., ch. 722 (S.B. 107), § 1, effective January 1, 1966; am. Acts 1981, 67th Leg., ch. 312 (S.B. 727), § 3, effective August 31, 1981; am. Acts 1999, 76th Leg., ch. 1506 (S.B. 403), § 4, effective September 1, 1999.

## Art. 22.13. Causes Which Will Exonerate

(a) The following causes, and no other, will exonerate the defendant and his sureties, if any, from liability upon the forfeiture taken:

1. That the bond is, for any cause, not a valid and binding undertaking in law. If it be valid and binding as to the principal, and one or more of his sureties, if any, they shall not be exonerated from liability because of its being invalid and not binding as to another surety or sureties, if any. If it be invalid and not binding as to the principal, each of the sureties, if any, shall be exonerated from liability. If it be valid and binding as to the principal, but not so as to the sureties, if any, the principal shall not be exonerated, but the sureties, if any, shall be.

2. The death of the principal before the forfeiture was taken.

3. The sickness of the principal or some uncontrollable circumstance which prevented his appearance at court, and it must, in every such case, be shown that his failure to appear arose from no fault on his part. The causes mentioned in this subdivision shall not be deemed sufficient to exonerate the principal and his sureties, if any, unless such principal appear before final judgment on the bond to answer the accusation against him, or show sufficient cause for not so appearing.

4. Failure to present an indictment or information at the first term of the court which may be held after the principal has been admitted to bail, in case where the party was bound over before indictment or information, and the prosecution has not been continued by order of the court.

5. The incarceration of the principal in any jurisdiction in the United States:

(A) in the case of a misdemeanor, at the time of or not later than the 180th day after the date of the principal's failure to appear in court; or

(B) in the case of a felony, at the time of or not later than the 270th day after the date of the principal's failure to appear in court.

(b) A surety exonerated under Subdivision 5, Subsection (a), remains obligated to pay costs of court, any reasonable and necessary costs incurred by a county to secure the return of the principal, and interest accrued on the bond amount from the date of the judgment nisi to the date of the principal's incarceration.

**HISTORY:** Enacted by Acts 1965, 59th Leg., ch. 722 (S.B. 107), § 1, effective January 1, 1966; am. Acts 2003, 78th Leg., ch. 942 (S.B. 1336), § 1, effective June 20, 2003.

## Art. 22.16. Remittitur After Forfeiture

(a) After forfeiture of a bond and before entry of a final judgment, the court shall, on written motion, remit to the surety the amount of the bond, after deducting the costs of court and any reasonable and necessary costs to the county for the return of the principal, and the interest accrued on the bond amount as provided by Subsection (c) if the principal is released on new bail in the case or the case for which bond was given is dismissed.

(b) For other good cause shown and before the entry of a final judgment against the bond, the court in its discretion may remit to the surety all or part of the amount of the bond after deducting the costs of court and any reasonable and necessary costs to the county for the return of the principal, and the interest accrued on the bond amount as provided by Subsection (c).

(c) For the purposes of this article, interest accrues on the bond amount from the date of forfeiture in the same manner and at the same rate as provided for the accrual of prejudgment interest in civil cases.

**HISTORY:** Enacted by Acts 1965, 59th Leg., ch. 722 (S.B. 107), § 1, effective January 1, 1966; am. Acts 1981, 67th Leg., ch. 312 (S.B. 727), § 5, effective August 31, 1981; am. Acts 1987, 70th Leg., ch. 1047 (S.B. 185), § 3, effective June 20, 1987; am. Acts 2003, 78th Leg., ch. 942 (S.B. 1336), § 2, effective June 20, 2003.

**Art. 22.17. Special Bill of Review**

  (a) Not later than two years after the date a final judgment is entered in a bond forfeiture proceeding, the surety on the bond may file with the court a special bill of review. A special bill of review may include a request, on equitable grounds, that the final judgment be reformed and that all or part of the bond amount be remitted to the surety, after deducting the costs of court, any reasonable costs to the county for the return of the principal, and the interest accrued on the bond amount from the date of forfeiture. The court in its discretion may grant or deny the bill in whole or in part.

  (b) For the purposes of this article, interest accrues on the bond amount from the date of:

    (1) forfeiture to the date of final judgment in the same manner and at the same rate as provided for the accrual of prejudgment interest in civil cases; and

    (2) final judgment to the date of the order for remittitur at the same rate as provided for the accrual of postjudgment interest in civil cases.

**HISTORY:** Enacted by Acts 1987, 70th Leg., ch. 1047 (S.B. 185), § 4, effective June 20, 1987.



LexisNexis (R) Texas Annotated Statutes
Copyright © 2014 by Matthew Bender & Company, Inc.
a member of the LexisNexis Group
All rights reserved.

*** This document is current through the 2013 3rd Called Session ***

CODE OF CRIMINAL PROCEDURE
TITLE 1.  CODE OF CRIMINAL PROCEDURE OF 1965
APPEAL AND WRIT OF ERROR
CHAPTER 44.  APPEAL AND WRIT OF ERROR

## Art. 44.42.  Appeal on Forfeitures

An appeal may be taken by the defendant from every final judgment rendered upon a personal bond, bail bond or bond taken for the prevention or suppression of offenses, where such judgment is for twenty dollars or more, exclusive of costs, but not otherwise.

**HISTORY:** Enacted by Acts 1965, 59th Leg., ch. 722 (S.B. 107), § 1, effective January 1, 1966.

**Art. 44.44. Rules in Forfeitures**

In the cases provided for in the two preceding Articles, the proceeding shall be regulated by the same rules that govern civil actions where an appeal is taken or a writ of error sued out.

**HISTORY:** Enacted by Acts 1965, 59th Leg., ch. 722 (S.B. 107), § 1, effective January 1, 1966.



Texas Rules
Copyright (c) 2015 by Matthew Bender & Company, Inc.
a member of the LexisNexis Group.
All rights reserved.

*** This document is current through April 8, 2015 ***

STATE RULES
TEXAS RULES OF CIVIL PROCEDURE
PART II. RULES OF PRACTICE IN DISTRICT AND COUNTY COURTS
SECTION 8. Pre-Trial Procedure

*Tex. R. Civ. P. 166a* (2015)

**Rule 166a Summary Judgment**

(a) *For Claimant.* --A party seeking to recover upon a claim, counterclaim, or cross-claim or to obtain a declaratory judgment may, at any time after the adverse party has appeared or answered, move with or without supporting affidavits for a summary judgment in his favor upon all or any part thereof. A summary judgment, interlocutory in character, may be rendered on the issue of liability alone although there is a genuine issue as to amount of damages.

(b) *For Defending Party.* --A party against whom a claim, counterclaim, or cross-claim is asserted or a declaratory judgment is sought may, at any time, move with or without supporting affidavits for a summary judgment in his favor as to all or any part thereof.

(c) *Motion and Proceedings Thereon.* --The motion for summary judgment shall state the specific grounds therefor. Except on leave of court, with notice to opposing counsel, the motion and any supporting affidavits shall be filed and served at least twenty-one days before the time specified for hearing. Except on leave of court, the adverse party, not later than seven days prior to the day of hearing may file and serve opposing affidavits or other written response. No oral testimony shall be received at the hearing. The judgment sought shall be rendered forthwith if (i) the deposition transcripts, interrogatory answers, and other discovery responses referenced or set forth in the motion or response, and (ii) the pleadings, admissions, affidavits, stipulations of the parties, and authenticated or

certified public records, if any, on file at the time of the hearing, or filed thereafter and before judgment with permission of the court, show that, except as to the amount of damages, there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law on the issues expressly set out in the motion or in an answer or any other response. Issues not expressly presented to the trial court by written motion, answer or other response shall not be considered on appeal as grounds for reversal. A summary judgment may be based on uncontroverted testimonial evidence of an interested witness, or of an expert witness as to subject matter concerning which the trier of fact must be guided solely by the opinion testimony of experts, if the evidence is clear, positive and direct, otherwise credible and free from contradictions and inconsistencies, and could have been readily controverted.

(d) *Appendices, References and Other Use of Discovery Not Otherwise on File.* --Discovery products not on file with the clerk may be used as summary judgment evidence if copies of the material, appendices containing the evidence, or a notice containing specific references to the discovery or specific references to other instruments, are filed and served on all parties together with a statement of intent to use the specified discovery as summary judgment proofs: (i) at least twenty-one days before the hearing if such proofs are to be used to support the summary judgment; or (ii) at least seven days before the hearing if such proofs are to be used to oppose the summary judgment.

(e) *Case Not Fully Adjudicated on Motion.* --If summary judgment is not rendered upon the whole case or for all the relief asked and a trial is necessary, the judge may at the hearing examine the pleadings and the evidence on file, interrogate counsel, ascertain what material fact issues exist and make an order specifying the facts that are established as a matter of law, and directing such further proceedings in the action as are just.

(f) *Form of Affidavits; Further Testimony.* --Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith. The court may permit affidavits to be supplemented or opposed by depositions or by further affidavits. Defects in the form of affidavits or attachments will not be grounds for reversal unless specifically pointed out by objection by an opposing party with opportunity, but refusal, to amend.

(g) *When Affidavits Are Unavailable.* --Should it appear from the affidavits of a party opposing the motion that he cannot for reasons stated present by affidavit

facts essential to justify his opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

(h)   *Affidavits Made in Bad Faith.* --Should it appear to the satisfaction of the court at any time that any of the affidavits presented pursuant to this rule are presented in bad faith or solely for the purpose of delay, the court shall forthwith order the party employing them to pay to the other party the amount of the reasonable expenses which the filing of the affidavits caused him to incur, including reasonable attorney's fees, and any offending party or attorney may be adjudged guilty of contempt.

(i)   *No-Evidence Motion.* --After adequate time for discovery, a party without presenting summary judgment evidence may move for summary judgment on the ground that there is no evidence of one or more essential elements of a claim or defense on which an adverse party would have the burden of proof at trial. The motion must state the elements as to which there is no evidence. The court must grant the motion unless the respondent produces summary judgment evidence raising a genuine issue of material fact.